John Heenan
Bishop & Heenan
3970 Ave. D, Suite A
Billings, Montana 59102
 (406) 839-9091
john@bishopandheenan.com

Roger Sullivan
McGarvey, Heberling, Sullivan & McGarvey, P.C.
745 South Main Street
Kalispell, Montana 59901-5341
 (406) 752-5566
rsullivan@mcgarveylaw.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

_____

| | | |
|---|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER, | ) ) ) ) | Case No. |
| Plaintiffs, | ) ) | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND CIVIL PENALTIES |
| vs. | ) ) ) | |
| PPL MONTANA LLC, AVISTA CORPORATION, PUGET SOUND ENERGY, PORTLAND GENERAL ELECTRIC COMPANY, NORTHWESTERN CORPORATION, PACIFICORP, | ) ) ) ) ) ) | (violations of the Clean Air Act, 42 U.S.C. § 7604(a)) JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

1

## INTRODUCTION

1.      This is a Complaint for injunctive and declaratory relief and civil penalties under the federal Clean Air Act, 42 U.S.C. §§ 7401–7671q.

2.      The Sierra Club and the Montana Environmental Information Center (MEIC) (collectively, "Plaintiffs") bring this citizen suit under the Clean Air Act ("CAA") against the owners and operators of the Colstrip Steam Electric Station, including PPL Montana LLC, Avista Corporation, Puget Sound Energy, Portland General Electric Company, NorthWestern Corporation, and Pacificorp (collectively, "PPL" or "Defendants"), for their past and continuing violations of the CAA, the State of Montana's federally-approved State Implementation Plan ("SIP"), and Colstrip's federally-enforceable permits. Such violations occurred at the Colstrip Steam Electric Station (hereinafter "the Colstrip plant").

3.      In summary, Defendants violated and are violating the Clean Air Act and Montana's SIP by:

   a.      Constructing, altering or modifying the Colstrip plant without complying with the permitting requirements applicable to modifications to existing air pollution sources under the Clean Air Act and the Montana SIP.

   b.      Operating the modified Colstrip plant without the permits required of modified sources under the Clean Air Act and the Montana SIP.

c.      Violating federally-enforceable air pollution permits by, among other things: submitting an erroneous certification of compliance in support of an air pollution permit application for the Colstrip plant, and failing to correct or supplement that application's erroneous compliance certification; falsely representing compliance with applicable requirements (including the Clean Air Act's Prevention of Significant Deterioration program requirements and emissions limitations); failing to submit required compliance schedules; and failing to accurately certify the accuracy, completeness and truthfulness of the information in required reports.

d.      Violating the limits on the opacity of air pollution emissions set forth in Subparts D and Da of the federal New Source Performance Standards and in air quality permits for the Colstrip plant.

## JURISDICTION AND VENUE

4.      Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a) (Clean Air Act jurisdiction). The requested relief is proper under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 7413, 7604(a).

5.      As required by 42 U.S.C. § 7604(b), on July 25, 2012, September 27, 2012, November 27, 2012 and December 1, 2012, Plaintiff sent sixty-day

notices of intent to sue for violations of the Clean Air Act set forth in this Complaint.

6.      Plaintiffs sent copies of the sixty-day notice letter to Defendants and all officers of the Montana Department of Environmental Quality ("DEQ") and the U.S. Environmental Protection Agency ("EPA") required to receive such notice by 42 U.S.C. § 7604(b) and 40 C.F.R. § 54.2.

7.      Venue is properly vested in this Court pursuant to 42 U.S.C. § 7604(c), because the Defendants' Colstrip facility is located in Rosebud County. Rosebud County is located in the District of Montana.

8.      According to the District of Montana Local Rule 3.2(b) and Mont. Code Ann. Section 25-2-124, the proper Division for this case is the Billings Division, which includes Rosebud County.  Under Section 25-2-124, the proper place of trial for the recovery of a penalty or forfeiture imposed by statute is the county where the cause or some part thereof arose.  The cause of action or some part thereof arose at the Colstrip plant in Rosebud County.

## PARTIES

9.      Sierra Club and MEIC are environmental organizations with long histories of service to the residents and communities in Montana and in the communities that are most directly affected by the Colstrip plant.

4

10.    The Sierra Club has been working to protect communities, wild places, and the planet since 1892. With 1.4 million members and supporters throughout the United States, including in Montana, the Sierra Club is the nation's largest and most influential grassroots environmental organization. The Sierra Club is dedicated to the protection and preservation of the natural and human environment and has identified the Colstrip plant as a major source of air and water pollution in the state of Montana.

11.    MEIC is a member-supported advocacy and public education organization based in Helena, Montana that works to protect and restore Montana's natural environment. Since its founding in 1973, MEIC has lobbied and litigated at the state and federal levels to prevent degradation of air and water quality and natural resources.  MEIC is also dedicated to assuring that state and federal officials comply with and fully uphold the laws of the United States that are designed to protect the environment from pollution.  Recent MEIC advocacy efforts have focused on curbing activities that contribute to global warming, including coal combustion at power plants.

12.    PPL Montana LLC is a Delaware corporation, operates the Colstrip plant, and is a co-owner of Units 1, 2, and 3.

13.    Avista Corporation is a Washington corporation and is a co-owner of Units 3 and 4.

5

14.     Puget Sound Energy is a Washington corporation and is a co-owner of all four units.

15.     Portland General Electric Company is an Oregon corporation and is a co-owner of Units 3 and 4.

16.     NorthWestern Corporation is a Montana corporation and is a co-owner of Unit 4.

17.     PacifiCorp is an Oregon corporation and is a co-owner of Units 3 and 4.

## PLAINTIFFS' INJURIES

18.     The Colstrip plant is a coal-fired plant located east of Billings, Montana.  Units 1 and 2 generate 307 net MW of electricity each, and Units 3 and 4 generate 740 net MW of electricity each. Colstrip Units 1 and 2 began commercial operation in 1975 and 1976, and Units 3 and 4 began commercial operation in 1984 and 1986. The Colstrip plant is the second largest coal-fired project west of the Mississippi, which burns12 train cars of coal every hour, one every five minutes.  As a result of burning so much coal, massive amounts of air pollution, including sulfur oxides ($SO_x$), nitrogen oxides ($NO_x$), carbon dioxide ($CO_2$), carbon monoxide (CO), mercury, and particulate matter, are released into the atmosphere. Individually and collectively these pollutants contribute to global warming, acid rain, regional haze, formation of ground level ozone or

smog, pollution of surface waters, and tiny soot particles that cross from the
lungs into the human bloodstream.

19.    The Colstrip plant is the single largest source of $SO_2$ emissions in
Montana, releasing approximately 12,000 tons of $SO_2$ in 2011.  The Colstrip
plant, alone, accounted for more than half of Montana's stationary source $SO_2$
emissions and more than five times the amount of $SO_2$ emitted from the next
highest emitting stationary source in Montana.  $SO_2$ pollution is "a medically
recognized threat to human health"; "high levels of pollution sustained for
periods of days can kill."  *Ohio Power Co. v. US EPA*, 729 F.2d 1096, 1097–98
(6th Cir. 1984).  It forms sulfates, sulfuric acid mist, and other chemical
derivatives that aggravate respiratory illness, contribute to acid deposition, fall to
earth as acid rain, and cause haze.

20.    The Colstrip plant is the largest stationary source of $NO_x$ in Montana,
releasing approximately 15,000 tons of $NO_x$ in 2011.  The plant was responsible
for more than half of $NO_x$ emissions from permitted stationary sources statewide
and emitted over ten times as much $NO_x$ as the next highest emitting stationary
source.  $NO_x$ contributes to acid rain, diminishes water quality, impairs visibility
and causes ground-level ozone, or smog, which triggers serious respiratory
problems.  $NO_x$ emissions also exacerbate atmospheric ozone depletion, and
cause eutrophication of water bodies.

21.     The Colstrip plant is also a major source of particulate matter, or "soot."  Particulate matter emissions vary in size and include fine particles ($PM_{2.5}$, or particles 2.5 micrometers or smaller in diameter) and coarse dust ($PM_{10}$, or particles less than 10 micrometers in diameter).  According to Montana's 2011 emissions data, the Colstrip plant released over 1,300 tons of $PM_{10}$ in 2011, much of which also constitutes $PM_{2.5}$.  Breathing particulate pollution causes premature death, heart attacks, strokes, birth defects, asthma attacks, lung damage, Sudden Infant Death Syndrome and low birth weight.  Particle pollution is especially dangerous for the elderly, children, and those with respiratory illnesses.  Particulate pollution also causes haze and impairs visibility and alters nutrient balances in waters and soils.

22.     The Colstrip plant's particulate matter emissions contain many toxic heavy metals, including mercury.  The plant released 105 pounds of mercury in 2011.  Mercury emissions from the Colstrip plant pollute waterways and deposit onto plants, land, and structures.  Mercury is a potent neurotoxin linked to negative biological effects on human health, including effects on fetuses, developmental delays in children, retardation, and autism.  Mercury does not dissipate in the environment; rather, it bioaccumulates in fish and wildlife populations and persists indefinitely.

8

23.     Plaintiffs' members, staff and volunteers live, work, recreate, own property, fish, hunt, study and pursue spiritual practices in the areas most immediately affected by the Colstrip plant.  The Colstrip plant's illegal air pollution injures Plaintiffs' members, staff and volunteers' aesthetic, recreational, environmental, spiritual, economic, educational and health interests in these areas.  Poor air quality injures human health, fish and wildlife, vegetation, visibility, water quality, cultural resources, and property in areas used by Plaintiffs' members.  Unless the relief requested herein is granted, the Colstrip plant's violations of the Clean Air Act will continue to injure human health, fish and wildlife, vegetation, visibility, water quality, cultural resources, and property in areas used by Plaintiffs' members.

24.     Plaintiffs' members, volunteers and staff have seen the Colstrip plant's smoke stacks and pollution leaving the stacks as they live, travel and recreate in Eastern Montana.  Plaintiffs' members, volunteers and staff find the plant, its stack, and the pollution that leaves the stack aesthetically displeasing and ugly.  Moreover, they are aware of the health and environmental impacts associated with the pollution leaving the stack and are concerned about harm to their health and the surrounding environment, including the natural resources they own, use and enjoy, caused by the Colstrip plant's pollution.

9

25.     Plaintiffs' members, volunteers and staff are concerned about the impacts of $NO_x$ emissions from the Colstrip plant on their health and the natural and cultural resources they use, own and enjoy.  They are reasonably concerned that $NO_x$ emitted from the Colstrip plant contributes to the formation of very fine particles that penetrate deeply into sensitive parts of lungs and damage health, cause premature death, breathing problems, damage lung tissue, and cause or worsen emphysema, bronchitis and heart disease.  They are also concerned because $NO_x$ forms ground-level ozone, which causes other health problems and damages plants and because $NO_x$ spoils visibility by contributing to regional haze, contributes to excess nitrogen deposition that harms plants and aquatic ecosystems, contributes to acid rain which damages plants and cultural resources, and forms compounds with common organic chemicals and ozone that are toxic, some of which cause biological mutations, such as nitrate radicals, nitroarenes, and nitrosamines.

26.     Plaintiffs' members are also reasonably concerned about the excess $NO_x$ pollution from the Colstrip plant because it can exacerbate ozone depletion in the upper atmosphere, resulting in more harmful UVA and UVB sun rays.

27.     Plaintiffs' members, volunteers and staff are reasonably concerned about the impacts of $SO_2$ emissions from the Colstrip plant on their health and the natural and cultural resources they use and enjoy.  $SO_2$ emitted from the

Colstrip plant causes a wide variety of health problems, including premature death, respiratory problems like asthma, and aggravation of heart disease. People with asthma who are active outdoors, children, the elderly and people with heart or lung disease are particularly susceptible to the health effects of $SO_2$.  $SO_2$ emitted from the Colstrip plant also degrades visibility by forming regional haze, contributes to acid rain that damages forests and crops, changes the makeup of soil and makes lakes and streams acidic and unsuitable for fish. Continued exposure to acid rain can change the natural variety of plants and animals in the ecosystem.  These effects injure Plaintiffs' members' interests in their health and the health of the places they live, work, recreate, own property, grow crops, study and pursue spiritual practices.

28.     The Colstrip plant's illegal and excessive discharges of pollution injures Plaintiffs' members' diverse interests.  These interests include, but are not limited to: 1) breathing air free from the Colstrip plant's excessive pollutant emissions, 2) eating fish free from contaminants attributable to the Colstrip plant's pollution, 3) enjoying the natural ecology of the region free from air pollution-related impacts, including hiking, and viewing and photographing plants and wildlife, 4) viewing scenery unimpaired by the plant and its pollution, or by the smog, haze, and other aesthetic damage caused (in whole or in part) by the Colstrip plant's emissions, 5) preventing excessive health care costs and

11

other economic damages caused by or contributed to by the Colstrip plant's pollutant discharges, 6) enjoying the region's cultural and spiritual resources that are susceptible to $NO_x$ and $SO_2$ pollution-related impacts, and 7) benefiting from economic resources such as crop and timber land, salmon, and winter recreation businesses that Plaintiffs reasonably fear will be adversely impacted by the Colstrip plant's pollution.  Plaintiffs' members' interests have been, and unless the relief requested herein is granted, will continue to be, adversely affected by PPL's violations of the CAA.

29.    Plaintiffs' members, staff and volunteers also suffer procedural harm from Defendants' failure to satisfy notification and approval procedures mandated by the plant's Title V permit and Montana's SIP, and failure to satisfy the PSD review requirements at the Colstrip plant.  Such a review must include, *inter alia*, analysis of, and compliance with, Best Available Control Technology ("BACT") emissions limits, demonstration that the source will not cause or contribute to a violation of the national ambient air quality standards ("NAAQS") or PSD increment, demonstration that the source will not impair visibility in federally protected parks, wilderness areas, and tribal lands and opportunities for public participation.  Defendants' failure to comply with these important obligations, which sustain the CAA's core goals, forecloses Plaintiffs and Plaintiffs' members from participating in these critical processes.

## LEGAL BACKGROUND

30.     Part C of the Clean Air Act ("Prevention of Significant Deterioration of Air Quality") requires states to adopt emission limitations and other measures as necessary to prevent significant deterioration of air quality.  42 U.S.C. §§ 7470–7492.  Central to the program is a requirement that any facility constructing or modifying, and subsequently operating a new or modified "major emitting facility," obtain and comply with a specific permit for the project.  42 U.S.C. § 7475. Additionally, the new or modified facility is subject to best available control technology ("BACT") emission limitations and must demonstrate that its emissions will not cause violations of air quality standards nor adversely impact visibility or other air quality related values of special areas such as National Parks.  42 U.S.C. § 7475(a)(1)-(5).

31.     Montana promulgated PSD program implementation regulations in 1982, which EPA approved into Montana's federally enforceable state implementation plan ("SIP") in 1983. 48 Fed. Reg. 20231 (May 5, 1983).  The State's PSD and related air quality permitting regulations are currently codified within ARM § 17, Chapter 8, Subchapters 7, 8, 10 and 11.

32.     Montana's PSD program applies to any "major stationary source," including the Colstrip plant.  ARM 17.8.801(22)(a)(i).

33.     The specific requirements within the PSD program apply to any

"major modification" at the Colstrip plant, which is defined as "any physical

change in, or change in the method of operation of [the plant] that would result

in a significant net emissions increase of any pollutant subject to regulation

under" the federal Clean Air Act. ARM § 17.8.801(20).

34.     A "significant" net emissions increase is defined as a rate of emissions

that would equal or exceed a pollutant-specific emission threshold, such as 40

tons per year for $SO_2$ or $NO_x$ and 15 tpy for $PM_{10}$.  ARM 17.8.801(28)(a).

Because EPA has not yet approved Montana's 10 tons-per-year "significant"

threshold for $PM_{2.5}$, the existing SIP controls and defines a significant emission

of $PM_{2.5}$ as "any emission rate."  ARM 17.8.801(28)(b).

35.     A "net emissions increase" is "the amount by which the sum of the

following exceeds zero: (i) any increase in actual emissions from a particular

physical change or change in the method of operation at a stationary source; and

(ii) any other increases and decreases in actual emissions at the source that are

contemporaneous with the particular change and are otherwise credible." ARM

§17.8.801(24).

36.      The definition of an emissions increase refers to "actual emissions,"

which is a term defined in different ways for different periods of time.  For the

period of time preceding a change, "actual emissions" is defined as the average

14

annual emission rate during the two years preceding the change, unless the

Montana Department of Environmental Quality determines that another two year

period is more representative of normal source operations.  ARM 17.8.801(1)(a).

37.     The "actual emissions" following a change must be estimated

because they would not have occurred at the time the PSD program applicability

is supposed to occur: prior to undertaking a physical or operational change.

Montana's implementing regulations define the post-project "actual emissions"

by providing two options for estimating such emissions: they are either the

"source-specific allowable emissions" or the "potential to emit."  ARM

17.8.801(1)(b), (c).  The choice between these two options depends on whether

the unit at issue has "begun normal operations" as of the "particular date" for

which the emissions are estimated. ARM §17.8.801(1)(c).

38.     "Allowable emissions" are the facility's emission rate "calculated

using the maximum rated capacity of the source (unless the source is subject to

federally enforceable limits which restrict the operating rate or hour of

operation, or both) and the most stringent" of federally enforceable emission

limits.  ARM 17.8.801(2).

39.     "Potential to emit," which applies when the facility is deemed not to

have begun "normal operations" in its changed form prior to determining PSD

applicability, is defined as "the maximum capacity of a stationary source to emit

a pollutant under its physical and operational design," taking into account any federally enforceable "physical or operational limitation on the capacity of the source to emit a pollutant." ARM §17.8.801(25).

40.     The PSD program also provides that any "major modification shall apply BACT for each pollutant subject to regulation under the FCAA for which it would be a significant net emissions increase at the source." ARM § 17.8.819(3).  BACT is an "emissions limitation (including a visible emissions standard) based on the maximum degree of reduction for each pollutant subject to regulation under the federal Clean Air Act," that takes various factors into account.  ARM § 17.8.801(6).

41.     In addition, the Montana PSD program prohibits any major modification from causing or contributing to a violation of the NAAQS "at any locality" downwind of the facility– unless the source provides for other emissions reduction that compensate for the adverse impact. ARM § 17.8.1004, ARM 17.8.820, and ARM 17.8.749(3).  The Montana PSD program also prohibits any major modification from causing or contributing to a violation of the maximum allowable increases over baseline concentration, also known as the "ambient air increments," in any area.  ARM 17.8.820; ARM 17.8.804.

42.     In Montana, the federally-enforceable SIP further provides that no person can install, modify, utilize or operate a facility without first obtaining a

16

Montana air quality permit.  ARM 17.8.743(1)(e) and its predecessors.  Such Montana air quality permit must include all conditions necessary to ensure compliance with the Federal and state Clean Air Acts and the rules adopted thereunder, including the PSD program.

43.    Additionally, new and modified sources in Montana must install the "maximum control capability that is technically practicable and economically feasible," which can be more stringent, but never less stringent than BACT. ARM 17.8.752(1)(a).

**Title V Permit Program**

44.    In 1990, Congress amended the Clean Air Act to, among other new requirements, establish a permit program in subchapter five ("Title V") which is designed to encompass all air pollution control requirements applicable to a source into a single "operating permit."  42 U.S.C. § 7661c(a).  It is unlawful to operate without, or in violation of, a permit issued pursuant to Title V.  42 U.S.C. § 7661(a).

45.    The EPA established requirements for state operating permit programs at 40 C.F.R. Part 70.  Montana's major source operating permit program in ARM Title 17, Chapter 8, Subchapter 12, known as a Part 70 or Title V program, was approved, effective on an interim basis on June 12, 1995, and fully approved and effective on January 22, 2001.  40 C.F.R., Part 70, Appendix A.

17

46.     Montana's Title V program provides that if an existing operating permit would prohibit a modification to, or change in operation of, a facility, then the owner or operator must have a revised air quality permit in hand prior to "commencing operation" of the modified facility, and the owner or operator has twelve months after commencing operation to apply for a revised Title V operating air permit.  ARM 17.8.1205(2)(b).

47.     Any application for a Title V operating permit or permit revision must include sufficient information to allow the permitting agency and the public to determine whether the source is in compliance with all applicable Clean Air Act requirements. ARM 17.8.1206(e), (i), & (n). All statements in the application must be true.  ARM 17.8.1207. Similarly, an incorrect or incomplete application must be revised "promptly" by the applicant.  ARM 17.8.1205(4).

48.     Pursuant to ARM 17.8.1206(6), each Title V Operating Permit application must contain a certification by the owner or operator that the source is currently in compliance with all applicable requirements, including permitting requirements. Such certifications must be signed by a responsible official, based on information and belief formed after reasonable inquiry, and must be truthful. ARM 17.8.1207.

49.     Pursuant to the Montana Title V program regulations, "for renewal, a permittee shall submit a complete air quality operating permit application to the

department not later than six months prior to the expiration of the existing permit, unless otherwise specified in that permit." ARM § 17.8.1205(2)(c).

50.     The Title V permits issued by Montana for the Colstrip plant have also required compliance with these requirements as a requirement of the permit.

### Limits on Particulate Pollution Through Opacity Limits

51.     Several limitations applicable to the Colstrip plant limit the opacity— or opaqueness—of air pollution emissions.  One of those limitations is the federal New Source Performance Standards ("NSPS") for particulate matter. Other limitations are applicable through permits issued for the plant.

52.     The NSPS are nationwide uniform technology-based standards set by EPA for classes and categories of new or modified stationary sources.  42 U.S.C. § 7411.  The Colstrip plant's boilers are subject to NSPS particulate matter limits based on the thickness or "opacity" of smoke.  The Colstrip plant is prohibited from "caus[ing] to be discharged into the atmosphere… any gases that . . . exhibit greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity."

53.     During all relevant time periods, the Title V Operating Permits for the Colstrip plant incorporated this opacity limit.   Other federally-enforceable air pollution permits for the Colstrip plant similarly prohibit the Colstrip units from

emitting particulate matter into the atmosphere exceeding opacity of 20 percent over any six-minute period.

### Enforcement Provisions

54.     The Clean Air Act provides a cause of action for "any person" to file suit against any other person who is alleged to have violated or be in violation of an emission standard or limitation under the CAA.  42 U.S.C. § 7604(a)(1).

55.     Additionally, the Act provides a separate cause of action by any person against any other person who constructs any new or modifies any existing major facility without the required permits.  42 U.S.C. § 7604(a)(3).

56.     The Plaintiffs and Defendants in this case are all "persons" within the meaning of the Clean Air Act.  42 U.S.C. § 7602(e).

57.     Each of the requirements that Plaintiffs allege Defendants to have violated constitutes an "emission standard or limitation" within the meaning of 42 U.S.C. § 7604(a)(1).  42 U.S.C. § 7604(f)(3).

58.     The Court is authorized to order injunctive relief as well as penalties in amounts up to $27,500 per day for each violation occurring before March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but before January 12, 2009, and $37,500 for each day after January 12, 2009.  28 U.S.C. § 2461; 31 U.S.C. § 3701; 40 C.F.R. Part 19.

59.     Penalties are paid to the United States Treasury, except that the Court may authorize that penalties up to $100,000 be paid into a beneficial mitigation project fund used to enhance the public health or environment.  42 U.S.C. § 7604(g)(2).

## FACTUAL BACKGROUND

60.     Defendants modified the Colstrip plant at various times since initiating operations without obtaining the required permits, without complying with required pollution control requirements, and without making the required demonstration that ambient air quality standards and air quality related values are protected.

61.     Each of the physical and operational changes set forth herein would result in significant net emission increases of sulfur dioxide, nitrogen oxide, and particulate matter (including PM, PM10, and PM2.5). These changes constitute major modifications under the CAA's Part C PSD program, 42 U.S.C. § §7411(a)(4), 7475, 7479(2)(C), and the Montana PSD Program, ARM § 17.8.801(20) and its predecessors, 40 C.F.R. §52.1370(c). These changes include:

62.     Overhauling Unit 1 in 2012 by, among other changes, replacing the economizer, the condenser, V-Bottom tubes, a generator-exciter, and 3 Induced Draft (ID) fans (or substantial portions of these components). The project also

included re-wrapping the wire on the rotor of the generator and replacing two cells of the cooling tower.

63.     Replacing the low pressure (LP) turbine on Unit 4 in 2009, which may have also included replacing the intermediate pressure (IP) turbine.

64.     Replacing the high pressure (HP) and intermediate pressure (IP) turbines on Unit 2 in 2008.

65.     Replacing the high pressure (HP) turbine on Unit 3 in 2007.

66.     Replacing the high pressure (HP) turbine on Unit 4 in 2006.

67.     Replacing the high pressure (HP) and intermediate pressure (IP) turbines on Unit 1 in 2006.

68.     Replacing the reheater assemblies on Units 1 in or about 1993 or 1994.

69.     Replacing the reheater assemblies on Units 2 in or about 1993 or 1994.

70.     Replacing the economizer on Unit 2 in or about 1992.

71.     Replacing the high pressure turbines with turbines from another utility and equipping the turbines with a unified lift capability, and replacing sections of the low pressure (LP) turbines with a "ruggedized" design at Unit 3 beginning in May 1995 and at Unit 4 beginning in March 1996.

72.     Replacing the reheater pendants and substantially all of the nose arch in Unit 3 beginning in March of 2001.

73.     Each of the foregoing constitutes a major modification for, among other pollutants, $SO_2$, NOx and particulate matter.  No air quality permit has been obtained for any of these projects, and no application was submitted to revise the Title V operating permit for any of these modifications.

74.     Each day that each modified unit operates following the modifications above, the unit emits at rates that exceed BACT for $SO_2$, NOx and particulates.

75.     Additionally, because it was a violation of the Colstrip plant's Title V permit to make a modification without applying to revise the Title V permit, and because Defendants did not identify their violation of that requirement in their annual certifications to Montana DEQ and EPA, Defendants are in continuous violation of the requirement to make accurate compliance certifications.

76.     Defendants have repeatedly violated the opacity limits set forth in 40 C.F.R. § 60.42, its Title V permit, its federally enforceable Montana air quality permits, and the 1979 PSD permit issued by EPA for Units 3 and 4.

77.     Defendants are required to submit quarterly reports of opacity emission violations to MDEQ. 40 C.F.R. §§ 75.65; 75.57(f). The table contained in Appendix A to this complaint enumerates some of the opacity limit violations reported by Defendants to Montana DEQ.  Each of these events constitutes a

23

separate violation of the NSPS standard and the air quality permits issued for the

Colstrip plant.  There are likely other opacity violations about which Defendants

have information that, upon subsequent discovery, Plaintiffs intend to raise in

this course of this matter.

## CLAIMS FOR RELIEF

### Plaintiffs' First Claim for Relief

**Overhauling Unit 1 in 2012 (replacement of economizer, condenser, V-bottom tubes, generator-exciter, and ID fans) without Obtaining a PSD Permit**

78.     Plaintiffs allege all preceding paragraphs as if set forth herein.

79.     Defendants overhauled Unit 1 in 2012 by making a number of

changes, including replacing the economizer, the condenser, V-Bottom tubes, a

generator-exciter, and 3 Induced Draft fans (or substantial portions of these

components). The project also included re-wrapping the wire on the rotor of the

generator and replacing two cells of the cooling tower, and other work

associated with these changes.

80.     The changes made to Unit 1 in 2012 would result in a  significant net

emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$),

within the meaning of the Montana PSD program.

81.     Thus, Defendants' activity at Unit 1 in 2012 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

82.     Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 1 overhaul in 2012, in violation of 42 U.S.C. § 7475 and ARM 17.8.743 and 17.8.818(1).

83.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

84.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Second Claim for Relief

**Operating Unit 1 Following the Overhaul in 2012 (replacement of economizer, condenser, V-bottom tubes, generator-exciter, and ID fans) without the Required Montana Air Quality Permit**

85.     Plaintiffs allege the preceding paragraphs as if set forth herein.

86.     Because Unit 1 was modified in 2012, Defendants are obligated to obtain a permit to thereafter operate the modified plant pursuant to ARM 17.8.743(1)(e).   Defendants failed to do so, and therefore each day that the Colstrip plant operated following the 2012 modification is a violation of that requirement.

25

87.     Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

88.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Third Claim for Relief

**Operating Unit 1 Following the Overhaul in 2012 (replacement of economizer, condenser, V-bottom tubes, generator-exciter, and ID fans) in Violation of Best Available Control Technology Limits**

89.      Plaintiffs allege the foregoing paragraphs as if set forth herein.

90.     The changes made to Unit 1 in 2012 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2012 project.

91.     Each day that Unit 1 operated after the major modification in 2012, Unit 1 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

92.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

93.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Fourth Claim for Relief

## 2009 Replacement of the Unit 4 Low Pressure (LP) Turbine and Possibly the Unit 4 Intermediate Pressure (IP) Turbine without a PSD Permit

94.      Plaintiffs allege all preceding paragraphs as if set forth herein.

95.      In 2009, Defendants undertook a project that involved replacing the Unit 4 low-pressure (LP) turbine, and possibly the Unit 4 intermediate pressure (IP) turbine.

96.      The changes made to Unit 4 in 2009 would result in a significant net emissions increase of, at least, $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

97.      Thus, Defendants' activity at Unit 4 in 2009 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

98.      Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 4 turbine replacements in 2009, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

99.      Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

100.    Plaintiffs have a cause of action for each such violation pursuant to 42

U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Fifth Claim for Relief

### Operating Unit 4 following the 2009 Replacement of the Unit 4 Low Pressure (LP) Turbine and Possibly the Unit 4 Intermediate Pressure (IP) Turbine without the Required Montana Air Quality Permit

101.    Plaintiffs allege all preceding paragraphs as if set forth herein.

102.    Because Unit 4 was modified in 2009, Defendants are obligated to

obtain a permit to thereafter operate the modified plant pursuant to ARM

17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore

each day that the modified unit operated is a violation of that requirement.

103.    Unless restrained by an order of this Court, these and similar

violations of the Montana SIP are ongoing.

104.    Plaintiffs have a cause of action for each such violation pursuant to 42

U.S.C. § 7604(a)(1).

## Plaintiffs' Sixth Claim for Relief

### Operating Unit 4 following the 2009 Replacement of the Unit 4 Low Pressure (LP) Turbine and Possibly the Unit 4 Intermediate Pressure (IP) Turbine in Violation of Best Available Control Technology Limits

105.    Plaintiffs allege all preceding paragraphs as if set forth herein.

28

106.     The modification of Unit 4 in 2009 triggered the obligation to comply with BACT for $SO_2$, NOx and particulate matter, but Defendants have not complied with such limits following the 2009 project.

107.     Each day that Unit 4 operated after the major modification in 2009, Unit 4 emitted pollution without BACT is a violation of ARM 17.8.819(3).

108.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

109.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Seventh Claim for Relief

### 2008 Replacement of the High Pressure (HP) and Intermediate Pressure (IP) Turbines on Unit 2 Without a PSD Permit

110.     Plaintiffs allege all preceding paragraphs as if set forth herein.

111.     In 2008, Defendants undertook a project that involved the replacement of the high pressure (HP) turbine and the intermediate pressure (IP) turbine at Unit 2 which would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

112.     This constituted a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

113.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 2 modification in 2008, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

114.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

115.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Eighth Claim for Relief

### Operating Unit 2 Following the 2008 Replacement of the High Pressure (HP) and Intermediate Pressure (IP) Turbines on Unit 2 Without the Required Montana Air Quality Permit

116.    Plaintiffs allege all preceding paragraphs as if set forth herein.

117.    Because Unit 2 was modified in 2008, Defendants are obligated to obtain a Montana Air Quality Permit pursuant to ARM 17.8.743(1)(e) and its predecessors to thereafter operate the modified unit.  Defendants failed to do so, and therefore each day that the unit operated after the 2008 project constitutes a violation.

118.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

119.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

<div align="center">

**Plaintiffs' Ninth Claim for Relief**

</div>

<div align="center">

**Operating Unit 2 Following the 2008 Replacement of the High Pressure (HP) and Intermediate Pressure (IP) Turbines on Unit 2 Without Complying with Best Available Control Technology Limits**

</div>

120.    Plaintiffs allege all preceding paragraphs as if set forth herein.

121.    The changes made to Unit 2 in 2008 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2008 project.

122.    Each day that Unit 2 operated after the major modification in 2008, Unit 2 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

123.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

124.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

<div align="center">

**Plaintiffs' Tenth Claim for Relief**

</div>

<div align="center">

**Replacing the High Pressure (HP) Turbine on Unit 3 in 2007 Without a PSD Permit**

</div>

125.    Plaintiffs allege all preceding paragraphs as if set forth herein.

126.    In 2007, Defendants undertook a project to replace the high pressure (HP) turbine on Unit 3.

127.    The changes to Unit 3 in 2007 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

128.    Thus, Defendants' activity at Unit 3 in 2007 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

129.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 3 HP turbine replacement in 2007, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

130.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

131.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

### Plaintiffs' Eleventh Claim for Relief

**Operating Unit 3 Following the 2007 Replacement of the High Pressure (HP) Turbine on Unit 3 Without the Required Montana Air Quality Permit**

132.    Plaintiffs allege all preceding paragraphs as if set forth herein.

133.    Because Unit 3 was modified in 2007, Defendants were required to obtain a Montana Air Quality Permit for the modification to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors. Defendants failed to do so, and therefore each day that Unit 3 operated since the 2007 modification violates that requirement.

134.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

135.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twelfth Claim for Relief

**Operating Unit 3 Following the 2007 Replacement of the High Pressure (HP) Turbine on Unit 3 Without Complying with Best Available Control Technology Limits**

136.    Plaintiffs allege all preceding paragraphs as if set forth herein.

137.    The 2007 major modification of Unit 3 triggered the obligation to comply with BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), but Defendants have not complied with such limits following the 2007 project.

138.    Each day that Unit 3 operated after the major modification in 2007, Unit 3 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

33

139.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

140.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Thirteenth Claim for Relief

### Replacing the High Pressure (HP) Turbine on Unit 4 in 2006 Without a PSD Permit

141.    Plaintiffs allege all preceding paragraphs as if set forth herein.

142.    In 2006, Defendants undertook a project to replace the high pressure (HP) turbine on Unit 4.

143.    The changes to Unit 4 in 2006 would result in a  significant net emissions increase of $NO_x$, $SO_2$, and/or particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

144.    Thus, Defendants' activity at Unit 4 in 2006 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

145.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 4 HP turbine replacement project in 2006, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

146.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

147.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Fourteenth Claim for Relief

### Operating Unit 4 Following the 2006 Replacement of the High Pressure (HP) Turbine Without the Required Montana Air Quality Permit

148.     Plaintiffs allege all preceding paragraphs as if set forth herein.

149.     Because Unit 4 was modified in 2006, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day since on which Defendants operated the Colstrip plant, Defendants violated that requirement.

150.     Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

151.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Fifteenth Claim for Relief

### Operating Unit 4 Following the 2006 Replacement of the High Pressure (HP) Turbine Without Complying with Best Available Control Technology Limits

152.     Plaintiffs allege all preceding paragraphs as if set forth herein.

35

153.    The changes made to Unit 4 in 2006 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2006 project.

154.    Each day that Unit 4 operated after the major modification in 2006, Unit 4 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

155.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

156.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Sixteenth Claim for Relief**

**Replacing the High Pressure (HP) and Intermediate Pressure (IP)
Turbines on Unit 1 in 2006 Without a PSD Permit**

157.    Plaintiffs allege all preceding paragraphs as if set forth herein.

158.    In 2006, Defendants undertook a project to replace the high pressure (HP) and intermediate pressure (IP) turbines on Unit 1 which would result in a significant net emissions increase of $NO_x$, $SO_2$, and/or particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

159.    Thus, Defendants' activity at Unit 1 in 2006 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

160.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 1 HP and IP turbine replacements in 2006, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

161.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

162.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Seventeenth Claim for Relief

### Operating Unit 1 Following the 2006 Replacement of the High Pressure (HP) and Intermediate Pressure (IP) Turbines Without the Required Montana Air Quality Permit

163.    Plaintiffs allege all preceding paragraphs as if set forth herein.

164.    Because Unit 1 was modified in 2006, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e), and its predecessors.  Defendants failed to do so, and therefore each day since Defendants have violated that requirement.

37

165.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

166.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Eighteenth Claim for Relief

### Operating Unit 1 Following the 2006 Replacement of the High Pressure (HP) and Intermediate Pressure (IP) Turbines Without Complying with Best Available Control Technology Limits

167.    Plaintiffs allege all preceding paragraphs as if set forth herein.

168.    The changes made to Unit 1 in 2006 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2006 project.

169.    Each day that Unit 1 operated after the major modification in 2006, Unit 1 emitted pollution without best BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

170.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

171.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Nineteenth Claim for Relief

### Replacing the Reheater Assemblies on Unit 1 in or about
### 1993 or 1994 Without a PSD Permit

172.    Plaintiffs allege all preceding paragraphs as if set forth herein.

173.    In or about 1993 or 1994, Defendants undertook a project to replace the reheater assemblies on Unit 1.

174.    The changes to Unit 1 in or about 1993 or 1994 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter, within the meaning of the Montana PSD program.

175.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 1 reheater assembly replacements in or about 1993 or 1994, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and 17.8.818(1) and their predecessors.

176.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

177.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Twentieth Claim for Relief

### Operating Unit 1 Following the 1993 or 1994 Replacement of the Reheater
### Assemblies on Unit 1 Without the Required Montana Air Quality Permit

178.    Plaintiffs allege all preceding paragraphs as if set forth herein.

39

179.    Because Unit 1 was modified in 1993 or 1994, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day that the unit operated since the modification in 1993 or 1994 violated that requirement.

180.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

181.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

### Plaintiffs' Twenty-First Claim for Relief

**Operating Unit 1 Following the 1993 or 1994 Replacement of the Reheater Assemblies on Unit 1 Without Complying with Best Available Control Technology Limits**

182.    Plaintiffs allege all preceding paragraphs as if set forth herein.

183.    The changes made to Unit 1 in 1993 or 1994 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 1993 or 1994 project.

184.    Each day that Unit 1 operated after the major modification in 1993 or 1994, the unit emitted pollution without BACT for $SO_2$, NOx, and particulate matter is a violation of ARM 17.8.819(3) and its predecessors.

40

185.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

186.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

### Plaintiffs' Twenty-Second Claim for Relief

**Replacing the Reheater Assemblies on Unit 2 in or about
1993 or 1994 Without a PSD Permit**

187.    Plaintiffs allege all preceding paragraphs as if set forth herein.

188.    In or about 1993 or 1994, Defendants undertook a project to replace the reheater assemblies on Unit 2.

189.    The changes to Unit 2 in or about 1993 or 1994 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter, within the meaning of the Montana PSD program.

190.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 2 reheater assembly replacements in or about 1993 or 1994, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and 17.8.818(1) and their predecessors.

191.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

192.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Twenty-Third Claim for Relief

### Operating Unit 2 Following the 1993 or 1994 Replacement of the Reheater Assemblies on Unit 2 Without the Required Montana Air Quality Permit

193.    Plaintiffs allege all preceding paragraphs as if set forth herein.

194.    Because Unit 2 was modified in 1993 or 1994, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day that the unit operated since the modification in 1993 or 1994 violated that requirement.

195.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

196.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twenty-Fourth Claim for Relief

### Operating Unit 2 Following the 1993 or 1994 Replacement of the Reheater Assemblies on Unit 2 Without Complying with Best Available Control Technology Limits

197.    Plaintiffs allege all preceding paragraphs as if set forth herein.

198.    The changes made to Unit 2 in 1993 or 1994 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 1993 or 1994 project.

199.    Each day that Unit 2 operated after the major modification in 1993 or 1994, the unit emitted pollution without BACT for $SO_2$, NOx, and particulate matter is a violation of ARM 17.8.819(3) and its predecessors.

200.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

201.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twenty-Fifth Claim for Relief

**Replacing the Economizer on Unit 2 in or about 1992 Without a PSD Permit**

202.    Plaintiffs allege all preceding paragraphs as if set forth herein.

203.    In or about 1992, Defendants undertook a project to replace the economizer on Unit 2.

204.    The changes to Unit 2 in or about 1992 would result in a  significant net emissions increase of $NO_x$, $SO_2$, and particulate matter within the meaning of the Montana PSD program.

205.    Thus, the economizer replacement was a major modification for $SO_2$, NOx, and particulate matter and potentially other pollutants.

43

206.     Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 2 economizer replacement in or about 1992, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and 17.8.818(1) and their predecessors.

207.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

208.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Twenty-Sixth Claim for Relief

### Operating Unit 2 Following the Replacement of the Economizer on Unit 2 in or About 1992 Without the Required Montana Air Quality Permit

209.     Plaintiffs allege all preceding paragraphs as if set forth herein.

210.     Because Unit 2 was modified in or about 1992, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day since on which Defendants operated the modified unit was a violation of that requirement.

211.     Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

212.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Twenty-Seventh Claim for Relief**

**Operating Unit 2 Following the Replacement of the economizer on Unit 2 in or About 1992 Without Complying with Best Available Control Technology Limits**

213.    Plaintiffs allege all preceding paragraphs as if set forth herein.

214.    The changes made to Unit 2 in or about 1992 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 1992 project.

215.    Each day that Unit 2 operated after the major modification in or about 1992, Unit 1 emitted pollution without BACT for $SO_2$, NOx, and particulate matter is a violation of ARM 17.8.819(3) and its predecessors.

216.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

217.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twenty-Eighth Claim for Relief

**Replacing the High Pressure Turbine with a Turbine from Another Utility
and Equipping the Turbine with a Unified Lift Capability, and Replacing
Sections of the Low Pressure (LP) Turbine with a "ruggedized" Design at
Unit 3 beginning in May 1995 Without a PSD Permit**

218.    Plaintiffs allege all preceding paragraphs as if set forth herein.

219.    In 1995, Defendants undertook a project at Unit 3 (beginning May
1995) to replace the high pressure (HP) turbines with a turbine from another
utility; equip the HP turbine with a unified lift capability; and replace sections of
the low pressure (LP) turbine with a "ruggedized" design.

220.    The changes to Unit 3 in 1995 would result in a  significant net
emissions increase of $NO_x$, $SO_2$, and particulate matter, within the meaning of
the Montana PSD program.

221.    Thus, Defendants' activity at Unit 3 in 1995  was a major
modification for $SO_2$, NOx, and particulate matter and potentially other
pollutants.

222.    Defendants failed to obtain an air quality permit that satisfied the
requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 3 HP and LP
project in 1995, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and
17.8.818(1) and their predecessors.

223.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

224.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

### Plaintiffs' Twenty-Ninth Claim for Relief

**Operating Unit 3 Following the Replacement of the High Pressure Turbine with a Turbine from Another Utility and Equipping the Turbine with a Unified Lift Capability, and Replacing Sections of the Low Pressure (LP) Turbine with a "ruggedized" Design at Unit 3 Beginning in May 1995 Without the Required Montana Air Quality Permit**

225.    Plaintiffs allege all preceding paragraphs as if set forth herein.

226.    Because Unit 3 was modified in 1995, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day that the modified units were operated since modification violated that requirement.

227.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

228.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Thirtieth Claim for Relief**

**Operating Unit 3 Following the Replacement of the High Pressure Turbine with a Turbine from Another Utility and Equipping the Turbine with a Unified Lift Capability, and Replacing Sections of the Low Pressure (LP) Turbine with a "ruggedized" Design at Unit 3 Beginning in May 1995 Without Complying with Best Available Control Technology Limits**

229.   Plaintiffs allege all preceding paragraphs as if set forth herein.

230.   The changes made to Unit 3 in 1995-1996 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 1995 project.

231.   Each day that Unit 3 operated after the major modification in 1995, Unit 3 emitted pollution without BACT for $SO_2$, NOx, and particulate matter is a violation of ARM 17.8.819(3) and its predecessors.

232.   Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

233.   Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Thirty-First Claim for Relief**

**Replacing the High Pressure Turbine with a Turbine from Another Utility and Equipping the Turbine with a Unified Lift Capability, and Replacing Sections of the Low Pressure (LP) Turbine with a "ruggedized" Design at Unit 4 beginning in March 1996 Without a PSD Permit**

234.   Plaintiffs allege all preceding paragraphs as if set forth herein.

235.   In  1996, Defendants undertook a project at  at Unit 4 (beginning March 1996) to replace the high pressure (HP) turbine with a turbine from another utility; equip the HP turbine with a unified lift capability; and replace sections of the low pressure (LP) turbine with a "ruggedized" design.

236.   The changes to Unit 4 in 1995-1996 would result in a  significant net emissions increase of $NO_x$, $SO_2$, and particulate matter, within the meaning of the Montana PSD program.

237.   Thus, Defendants' activity at Unit 4 in 1996 was a major modification for $SO_2$, NOx, and particulate matter and potentially other pollutants.

238.   Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 4 HP and LP project in 1996, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and 17.8.818(1) and their predecessors.

239.   Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

240.   Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

**Plaintiffs' Thirty-Second Claim for Relief**

**Operating Unit 4 Following the Replacement of the High Pressure Turbine with a Turbine from another utility and Equipping the Turbine with a Unified Lift Capability, and Replacing Sections of the Low Pressure (LP) Turbine with a "ruggedized" Design at Unit 4 Beginning in March 1996 Without the Required Montana Air Quality Permit**

241.    Plaintiffs allege all preceding paragraphs as if set forth herein.

242.    Because Unit 4 was modified in 1995-1996, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day that the modified units were operated since modification violated that requirement.

243.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

244.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Thirty-Third Claim for Relief**

**Operating Unit 4 Following the Replacement of the High Pressure Turbine with a Turbines from Another Utility and Equipping the Turbine with a Unified Lift Capability, and Replacing Sections of the Low Pressure (LP) Turbine with a "ruggedized" Design at Unit 4 Beginning in March 1996 Without Complying with Best Available Control Technology Limits**

245.    Plaintiffs allege all preceding paragraphs as if set forth herein.

246.    The changes made to Unit 4 in 1996 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 1996 project.

247.    Each day that Unit 4 operated after the major modification in 1996, Unit 4 emitted pollution without BACT for $SO_2$, NOx, and particulate matter is a violation of ARM 17.8.819(3) and its predecessors.

248.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

249.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Thirty-Fourth Claim for Relief

### Replacement of the Reheater Pendants and Substantially All of the Nose Arch in Unit 3 Beginning in March of 2001 Without a PSD Permit

250.    Plaintiffs allege all preceding paragraphs as if set forth herein.

251.    Beginning in March 2001, Defendants undertook a project to replace the reheater pendants and substantially all of the nose arch in Unit 3.

252.    The changes to Unit 3 in 2001 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

51

253.    Thus, Defendants' activity at Unit 3 in 2001 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

254.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 3 reheater pendant and nose arch replacement in 2001, in violation of 42 U.S.C. § 7475 and ARM 17.8.743 and 17.8.818(1) and their predecessors.

255.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

256.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Thirty-Fifth Claim for Relief

### Operating Unit 3 Following Replacement of the Reheater Pendants and Substantially All of the Nose Arch in Unit 3 Beginning in March of 2001 Without the Required Montana Air Quality Permit

257.    Plaintiffs allege all preceding paragraphs as if set forth herein.

258.    Because Unit 3 was modified in 2001, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operated the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day since on which they operated the modified Unit 3, Defendants violated that requirement.

259.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP are ongoing.

260.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Thirty-Sixth Claim for Relief

### Operating Unit 3 Following Replacement of the Reheater Pendants and Substantially All of the Nose Arch in Unit 3 Beginning in March of 2001 Without Complying with Best Available Control Technology Limits

261.    Plaintiffs allege all preceding paragraphs as if set forth herein.

262.    The changes made to Unit 3 in 2001 triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2001 project.

263.    Each day that Unit 3 operated after the major modification in 2001, Unit 3 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3) and its predecessors.

264.    The duty to operate in compliance with BACT emission limitations is ongoing.

265.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP are ongoing.

266.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Thirty-Seventh Claim for Relief

### Incomplete Title V Application

267.    Plaintiffs allege all preceding paragraphs as if set forth herein.

268.    Since May 17, 2011, Defendants violated the requirement to correct or supplement their Colstrip Title V application with respect to missing PSD requirements for each of the modifications identified in Claims One through Thirty-Six, above.

269.    Since May 17, 2011, Defendants violated the requirement to correct or supplement the Colstrip Title V application with respect to erroneous compliance certifications with respect to each of the modifications identified in Claims One through Thirty-Six above.

270.    Since May 17, 2011, Defendants violated the requirement to correct or supplement the Colstrip Title V application with respect to the absence of a compliance schedule with respect to each of the modifications identified in Claims One through Thirty-Six above.

271.    Each day that Defendants fail to apply for a modified permit to correct the deficiencies above constitutes a violation of ARM Title 17, Chapter 8.

272.    Each day that Defendants fail to apply for a modified permit to correct the deficiencies above constitutes a violation of Section V.K.2 of the Colstrip plant's Title V operating permits.

273.     Unless restrained by an order of this Court, these and similar violations of the Clean Air Act are ongoing.

274.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Thirty-Eighth Claim for Relief**

**Incomplete Title V Compliance Certification**

275.     Plaintiffs allege all preceding paragraphs as if set forth herein.

276.     The Title V permit for the Colstrip plant, permits OP 0513-00, OP 1187-00, and permit #OP0513–02, as amended by versions and renewals through #OP0513–08 requires compliance certifications to be submitted to Montana DEQ and EPA annually.

277.     Such certifications must be signed by a responsible official, based on information and belief formed after reasonable inquiry, and must be truthful. ARM 17.8.1207.

278.     Therefore, the certifications submitted for the Colstrip station should have identified each of the violations set forth above in claims One through Thirty-Six.

279.     None of the certifications filed identified the violations set forth above in claims One through Thirty-Six.

280.    Each day on which each an incorrect or incomplete compliance certification was filed, and each subsequent day on which each such certification was not corrected, constitutes a separate and distinct violation of Section V.B of plant's Title V permits and 42 U.S.C. § 7661a(a).

281.    Unless restrained by an order of this Court, these and similar violations of the permit and the Clean Air Act are ongoing.

282.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

### Plaintiffs' Thirty-Ninth Claim for Relief

**Emitting air pollution with prohibited opacity levels**

283.    Plaintiffs allege all preceding paragraphs as if set forth herein.

284.    As detailed in Appendix A attached to this Complaint (as well as other likely occurrences known to Defendants), on hundreds of occasions since 2007 the air emitted from the stacks at the Colstrip plant violated limits on visible emissions-expressed as limits on opacity-set forth in the applicable permits and in 40 C.F.R. §§ 60.42(b).

285.    Unless restrained by an order of this Court, these and similar violations of the Clean Air Act are ongoing.

286.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

287.    Declare that Defendants have violated and are violating the Clean Air Act;

288.    Permanently enjoin Defendants from operating the Colstrip plant except in accordance with the Clean Air Act, the Montana SIP, and all federally-enforceable air quality permits;

289.    Order Defendants to remediate the environmental damage and ongoing impacts resulting from PPL's violations;

290.    Assess civil penalties against Defendants of $32,500 per day per violation occurring through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009, pursuant to 42 U.S.C. § 7413 and 40 C.F.R. § 19.4;

291.    Order that, pursuant to 42 U.S.C. § 7604(g)(2), $100,000.00 of the civil penalties assessed against Defendants be used in beneficial mitigation projects to enhance public health and the environment in the areas where Plaintiffs' members live, work and recreate and that are adversely impacted by Defendants' illegal emissions;

292.    Retain jurisdiction of this action to ensure compliance with the

Court's Order;

293.    Award Plaintiffs their costs of litigation, including reasonable attorney

fees, pursuant to 42 U.S.C. § 7604(d); and

294.    Grant such other relief as the Court deems just and proper.


DATED this 5th day of May, 2013.

<div style="margin-left: 40%;">

For Plaintiffs,

 _/s/ John Heenan_
Attorney for Plaintiffs

/s/ Roger Sullivan
Attorney for Plaintiffs

</div>