William Bumpers (*admitted pro hac vice*)
Joshua B. Frank (*admitted pro hac vice*)
Megan H. Berge (*admitted pro hac vice*)
Christine G. Wyman (*admitted pro hac vice*)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 639-7700
Fax: (202) 639-7890
william.bumpers@bakerbotts.com
joshua.frank@bakerbotts.com
megan.berge@bakerbotts.com
christine.wyman@bakerbotts.com

**ATTORNEYS FOR DEFENDANTS**

Stephen R. Brown
Garlington, Lohn & Robinson, PLLP
350 Ryman Street
Missoula, Montana  59802
Telephone: (406) 523-2500
Fax: (406) 523-2595
srbrown@garlington.com

**ATTORNEYS FOR AVISTA CORPORATION AND PACIFICORP**

William W. Mercer
Michael P. Manning
Holland & Hart LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana  59103-0639
Telephone: (406) 252-2166
Fax: (406) 252-1669
wwmercer@hollandhart.com
mpmanning@hollandhart.com

**ATTORNEYS FOR PPL MONTANA, LLC, PUGET SOUND ENERGY AND PORTLAND GENERAL ELECTRIC COMPANY**

Stephen D. Bell
Dorsey & Whitney LLP
Millennium Building
125 Bank Street, Suite 600
Missoula, Montana  59802-4407
Telephone: (406) 721-6025
Fax: (406) 543-0863
bell.steve@dorsey.com

B. Andrew Brown (*admitted pro hac vice*)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402
Telephone: (612) 340-2600
Fax: (612) 340-2868
brown.andrew@dorsey.com

**ATTORNEYS FOR NORTHWESTERN CORPORATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER, ) ) ) ) | CV 13-32-BLG-DLC-JCL |
| Plaintiffs, ) | |
| vs. ) | |
| PPL MONTANA LLC, AVISTA CORPORATION, PUGET ) ) | |

| | |
|---|---|
| SOUND ENERGY, PORTLAND | ) |
| GENERAL ELECTRIC COMPANY, | ) |
| NORTHWESTERN | ) |
| CORPORATION, PACIFICORP, | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.    Introduction ...................................................................................1

II.   CAA Legal framework......................................................................3

    A. Prevention Of Significant Deterioration Program...........................................3

    B. Title V Operating Permits. ...............................................................4

    C. Opacity Emissions Limitations At The Colstrip Plant. ...................................5

    D. Montana Air Quality Permits. ...........................................................6

III.  Standard of Review ..........................................................................6

IV.   Summary of Argument .......................................................................8

V.    Argument......................................................................................11

    A. Plaintiffs' PSD Claims And BACT Claims Relying On Activities That
       Occurred Before 2008 Are Barred By The Statute Of Limitations............11

        1.   The Court Should Dismiss Plaintiffs' PSD Claims And BACT Claims
             Seeking Civil Penalties as Untimely Under the Applicable Five-Year
             Statute of Limitations. ........................................................11

        2.   Plaintiffs' Concurrent Claims Seeking Injunctive And Declaratory
             Relief Should Be Dismissed Under The Concurrent Remedy Doctrine.
             ..........................................................................19

    B. Plaintiffs' BACT Claims Fail To State An Independent Claim For Relief
       And Are Not Authorized Under The Citizen Suit Provision. ...................21

        1.   There Is No Independent Obligation To Comply With BACT............21

2. Plaintiffs' BACT Claims Do Not Allege A Cause Of Action Under The Citizen Suit Provision. ...............................................................23

C. Plaintiffs' Montana Air Quality Permitting Claims Fail To State A Claim Under The Montana Regulations................................................25

D. Plaintiffs' Title V Claims Fail To Allege Actionable Conduct And Are An Impermissible Collateral Attack On The Sufficiency Of Colstrip's Title V Permit...............................................................................28

1. Plaintiffs Do Not Allege Conduct That Creates Liability Under Title V Or The Montana SIP...............................................................28

2. Plaintiffs' Title V Claims Are An Impermissible Collateral Attack On The Colstrip Title V Permit...............................................30

E. Plaintiffs' Opacity Claim Is Barred By MDEQ's Diligent Prosecution. ......32

VI. Conclusion....................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
129 556 U.S. 662 (2009) ....................................................................30

*Burley v. Burlington N. & Santa Fe Ry. Co.*,
2010 WL 441537 (D. Mont. Feb. 3, 2010) ..........................................8

*Citizens for Clean Power v. Indian River Power, LLC*,
636 F. Supp. 2d 351 (D. Del. 2009) ...................................................33

*Cope v. Anderson*,
331 US. 461 (1947) ............................................................................19

*Envtl. Def., v. Duke Energy Corp.*,
549 U.S. 561 (2007) ...........................................................................14

*Fed. Election Comm'n v. Williams*,
104 F.3d 237 (9th Cir. 1996) ...............................................19, 20, 21

*Grand Canyon Trust v. Tucson Elec. Power Co.*,
391 F.3d 979 (9th Cir. 2004) ..............................................................21

*Great Basin Mine Watch v. E.P.A.*,
401 F.3d 1094 (9th Cir. 2005) ............................................................29

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987) .............................................................................33

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) ..............................................................11

*Knee Deep Cattle Co., Inc. v. Bindana Inv. Co.*,
94 F.3d 514 (9th Cir. 1996) ................................................................32

*Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*,
338 F. Supp. 2d 1129 (D. Mont. 2004) ................................................7

*Local Lodge No. 1424 v. Nat'l Labor Relations Bd.*,
362 U.S. 411 (1960) ...........................................................................30

*Maier v. Mavrinac*,
   CV 08-26-H-DWM-RKS, 2008 WL 4838419 (D. Mont. Oct. 30, 2008)...........7

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) .................................................................32

*Mont. Silversmiths, Inc. v. Taylor Brands, LLC*,
   850 F. Supp. 2d 1172 (D. Mont. 2012) ..............................................7

*N. Cal. River Watch v. Humboldt Petroleum, Inc.*,
   No. C-00-1329VRW, 2000 WL 1639524 (N.D. Cal. Oct. 30, 2000) ...............33

*Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*,
   502 F.3d 1316 (11th Cir. 2007).....................................12, 15, 16, 17, 18, 20, 21

*Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*,
   480 F.3d 410 (6th Cir. 2007) ......................................................17, 18

*Natural Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*,
   651 F.3d 1066 (9th Cir. 2011) .................................................23, 31

*Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*,
   548 F.3d 738 (9th Cir. 2008) ..................................................30, 31

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...............................................................7

*Sierra Club v. Chevron U.S.A., Inc.*,
   834 F.2d 1517 (9th Cir. 1987) ................................................................13

*Sierra Club v. Duke Energy Ind., Inc.*,
   No. 1:08-cv-437-SEB-TAB, 2010 WL 3667002 (S.D. Ind. Sept. 14,
   2010) ..........................................................................................................15

*Sierra Club v. Otter Tail*,
   615 F.3d 1008 (8th Cir. 2010) ............... 14, 15, 16, 17, 18, 19, 20, 21 22, 24, 25

*Sierra Club v. Otter Tail Corp.*,
   608 F. Supp. 2d 1120 (D. S.D. 2009) ..............................................16

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................7

*Thiel v. Veneman*,
859 F. Supp. 2d 1182 (D. Mont. 2012) ............................................................23

*Tosco Corp. v. Comtys. for a Better Env't*,
236 F.3d 495 (9th Cir. 2001) ............................................................7

*United States v. Ameren Mo.*,
No. 11-0077, 2012 WL 262655 (E.D. Mo. Jan. 27, 2012) ................................15

*United States v. Banks*,
115 F.3d 916 (11th Cir. 1997) ............................................................20

*United States v. Brotech Corp.*,
No. Civ.A. 0024-28, 2000 WL 1368023 (E.D. Pa. Sept. 19, 2000) ..................16

*United States v. Campbell*
No:95-1854, 1997 WL 258894 (E.D. Cal. March 11, 1997) ............................15

*United States v. Cinergy Corp.*,
397 F. Supp. 2d 1025 (S.D. Ind. 2005) ............................................................16

*United States v. EME Homer City Generation L.P.*,
823 F. Supp. 2d 274 (W.D. Pa. 2011) ............................................................15

*United States v. Ill. Power Co.*,
245 F. Supp. 2d 951 (S.D. Ill. 2003) ........................................................13, 16

*United States v. Louisiana-Pacific Corp.*,
682 F. Supp. 1122 (D. Colo. 1987) ............................................................16

*United States v. Midwest Generation*,
LLC, 694 F. Supp. 2d 999 (N.D. Ill. 2010) ................................................15, 22

*United States v. Murphy Oil USA, Inc.*,
143 F. Supp. 2d 1054 (W.D. Wis. 2001) ............................................................16

*United States v. S. Ind. Gas & Elec. Co.*,
No. IP 99-1692-C-M/F, 2002 WL 1760752 (S.D. Ind. July 26, 2002) .............16

*United States v. Walsh*,
8 F.3d 659 (9th Cir. 1993) ............................................................12

*United States v. Westvaco,*
   144 F. Supp. 2d 439 (D. Md. 2001) ................................................. 16

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ......................................................... 7

*Virginia v. Browner*,
   80 F.3d 869 (4th Cir. 1996) .......................................................... 5

## FEDERAL STATUTES

28 U.S.C. § 2462 ........................................................................ 11, 12

42 U.S.C. § 7409 .............................................................................. 3

42 U.S.C. § 7410 .............................................................................. 3

42 U.S.C. § 7475 ........................................................... 4, 14, 15, 17, 22

42 U.S.C. § 7604 ............................................. 2, 21, 23, 24, 30, 31, 32

42 U.S.C. § 7607 ......................................................................... 5, 31

42 U.S.C. § 7661d ....................................................................... 5, 30

42 U.S.C. § 7661a .......................................................................... 5

## FEDERAL RULES AND REGULATIONS

40 C.F.R. § 60.11 ............................................................................ 6

40 C.F.R. § 60.42 ....................................................................... 6, 34

40 C.F.R. § 70.4 .............................................................................. 5

40 C.F.R. § 70.7 .............................................................................. 5

57 Fed. Reg. 32,250 (July 21, 1992) .................................................. 4

77 Fed. Reg. 9,340 (Feb. 16, 2012) ................................................... 2

77 Fed. Reg. 57,864 (Sept. 18, 2012) ................................................ 2

Fed. R. Civ. P. 12(b)(1) .............................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................*passim*

## STATE REGULATIONS

Mont. Admin. R. 17.8.340 ................................................................6

Mont. Admin. R. 17.8.743 ............................................................6, 26

Mont. Admin. R. 17.8.801 ...............................................4, 17, 22, 25

Mont. Admin. R. 17.8.818 .................................................3, 4, 15

Mont. Admin. R. 17.8.1205 ...........................................................29

Mont. Admin. R. 17.8.1207 ...........................................................29

Mont. Admin. R. 17.8.1232 .............................................................5

Mont. Admin. R. 17.8.1233 .............................................................5

## OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1349 (3d ed.) ...........................................................................................8

## EXHIBIT INDEX

Exhibit A -  *Montana v. PPL Montana, LLC.*, No. DV-12-1546 (Mont. 13th Jud. Dist., Nov. 23, 2012)

Defendants PPL Montana, LLC, Avista Corporation, Puget Sound Energy, Inc., Portland General Electric Company, NorthWestern Corporation d/b/a/ NorthWestern Energy, and PacifiCorp (collectively "Defendants") respectfully submit this Memorandum in Support of their Partial Motion to Dismiss claims asserted by the Sierra Club and the Montana Environmental Information Center (collectively "Plaintiffs") in the Complaint filed in this action on March 6, 2013. Defendants ask the Court to dismiss claims 2, 3, 5, 6, and 8 through 38 pursuant to Federal Rule of Civil Procedure 12(b)(6) and claims 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, and 36 through 39 pursuant to Federal Rule of Civil Procedure 12(b)(1). If successful, this motion would result in the dismissal of all but three of Plaintiffs' claims – claims 1, 4, and 7.

## I.    <u>INTRODUCTION</u>

Defendants are the current owners of the Colstrip Steam Electric Station ("Colstrip" or "the Plant").[1]  Colstrip is a four-unit coal-fired generating plant that is the largest employer, taxpayer and purchaser of business services in Rosebud County. Colstrip is subject to myriad regulations and emissions limitations designed to ensure that emissions from the Plant do not cause harm to human health or the environment.  Consistent with the Clean Air Act ("CAA") and other

---

[1] Ownership interest among the co-owners varies among unit, and not every co-owner owns each unit.

initiatives, Colstrip has reduced sulfur dioxide emissions by 75% at Units 1 and 2 and 95% at Units 3 and 4, nitrogen oxides emissions by 60% at Units 1 and 2 and 80% at Units 3 and 4, mercury emissions by 85% plant-wide, and particulate matter emissions by greater than 99.5% plant-wide.  In the near future, regardless of (1) any action taken by Plaintiffs and (2) whether or not Plaintiffs' claims are dismissed, Colstrip will continue to reduce its emissions through compliance with new federal and state regulatory initiatives.[2]

Nonetheless, on March 6, 2013, Plaintiffs filed this action pursuant to CAA Section 304, 42 U.S.C. § 7604(a), as part of their campaign to force retirement of coal plants throughout the country.[3]  Plaintiffs seek substantial civil penalties, injunctive relief, and declaratory relief for alleged violations of certain provisions of the CAA, 42 U.S.C. §§ 7401-7671q, and the Montana State Implementation Plan.  Plaintiffs allege thirty-nine claims for relief based on activities at all four of the Colstrip units over the course of twenty years of operation, without any regard to the applicable five-year statute of limitations, well-settled administrative permitting procedures, or authority of the Montana Department of Environmental

---

[2] *See, e.g.*, 77 Fed. Reg. 57,864 (Sept. 18, 2012) (promulgating state and federal requirements for reducing emissions that contribute to visibility impairment); 77 Fed. Reg. 9,340 (Feb. 16, 2012) (establishing National Emission Standards for Hazardous Air Pollutants for coal-fired electric utility steam generating units).

[3] *See* Retiring Old Coal, http://www.sierraclub.org/environmentallaw/lawsuits/retiring-old-coal.aspx (last visited May 3, 2013).

Quality ("MDEQ").   All but three of Plaintiffs' 39 claims fail to meet the requirements established by Rules 12(b)(6) and 12(b)(1) and must be dismissed.

## II.   CAA LEGAL FRAMEWORK

EPA and the states share responsibility for the attainment and maintenance of national air quality goals.  EPA is responsible for establishing national ambient air quality standards ("NAAQS") for "criteria" pollutants.  42 U.S.C. § 7409(a). The states are charged with achieving these NAAQS and must develop a State Implementation Plan ("SIP") for controlling emissions from specific sources.  42 U.S.C. § 7410.

**A.     Prevention Of Significant Deterioration Program.**

The CAA's Prevention of Significant Deterioration ("PSD") program applies on a pollutant-by-pollutant basis to new and modified sources located in areas, such as Rosebud County, that are in attainment with the NAAQS.  Montana has received EPA approval of its PSD SIP provisions and the MDEQ administers, implements, and enforces the PSD program in Montana.  Compl. ¶ 31.

PSD applies only when a new major source is built or when an existing major stationary source undertakes a "major modification."  *See* Mont. Admin. R. 17.8.818(1).  A "major modification" is "any physical change in, or change in the method of operation of, a major stationary source that would result in a significant net emissions increase" of any regulated pollutant.  *Id*. at 801(20).  If a source

3

plans a "major modification," and therefore has projected that the proposed activity would cause a significant net emissions increase, PSD requires the source to seek a preconstruction permit before the modification begins.   *See* 42 U.S.C. § 7475(a)(1); Mont. Admin. R. 17.8.818(1).   As part of the permit process, MDEQ determines the Best Available Control Technology ("BACT") – an emissions limitation developed on a "case-by-case" basis that is "based on the maximum degree of reduction for each pollutant subject to regulation . . . which would be emitted," that is achievable, taking into account "energy impacts, environmental impacts, . . . and economic impacts and other costs."   Mont. Admin. R. 17.8.801(6).   Conversely, if the source does not expect the planned activity to increase net emissions above a significance level, or it is otherwise not covered by the PSD program, it does not need a PSD permit.

**B.     Title V Operating Permits.**

Title V of the CAA requires major stationary sources of air pollution to obtain operating permits that incorporate all applicable CAA requirements.  Title V establishes a procedure for federal authorization of state-run Title V permitting programs.   *See* 42 U.S.C. §§ 7661-7661f.   Title V does not impose additional requirements on sources, *see* 57 Fed. Reg. 32,250, 32,251 (July 21, 1992), but rather consolidates state and Federal emissions limitations and compliance requirements in a single document to facilitate compliance, *see* 42 U.S.C. §

7661a(a); *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996).  EPA granted interim approval of Montana's Title V program on June 12, 1995, and granted full approval on January 22, 2001.  Compl. ¶ 45.  Montana's Title V program is set forth in Subchapter 12 of the Administrative Rules of Montana. Mont. Admin. R. 17.8.1201-1234.

Consistent with the CAA, the Montana Title V program contains procedures for the issuance of a Title V permit. *See* Compl. ¶ 45; 40 C.F.R. § 70.4 (setting minimum requirements for state operating permit programs and standards for state issued permits).  A proposed Title V permit is subjected to public notice and comment, 40 C.F.R. § 70.7(h)(4); Mont. Admin. R. 17.8.1232, and then submitted to EPA for review, 42 U.S.C. § 7661d(b); Mont. Admin. R. 17.8.1233.  If EPA does not object to a proposed permit within 45 days, any person may petition the EPA Administrator to object within 60 days after expiration of the 45-day review period. 42 U.S.C. § 7661d(b)(2); Mont. Admin. R. 17.8.1233(6), (9).  Within 60 days, EPA must either grant or deny the petition.  42 U.S.C. § 7661d(b)(2).  The denial of a petition is subject to review *only* in the U.S. Court of Appeals for the circuit in which the action arose.  42 U.S.C. §§ 7607, 7661d(b)(2).

**C.    Opacity Emissions Limitations At The Colstrip Plant.**

Opacity is not a pollutant; it is a measure of the degree to which the transmittance of light is reduced by the exhaust gas of the boiler.  Opacity is

measured in percentages, with a higher percentage of opacity correlating to less light passing through.  The Colstrip Title V permit, Operating Permit #OP0513-05, Sections III.B.1 and III.C.1, states that the Plant shall not cause or authorize to be discharged into the atmosphere from Units 1-4 any visible emissions that exhibit an opacity of 20% or greater averaged over 6 consecutive minutes except for one 6-minute period per hour of not greater than 27% opacity.  40 C.F.R. § 60.42(a)(2); Mont. Admin. R. 17.8.340(3).  The opacity limits apply at all times except during periods of startup, shutdown, malfunction, and as otherwise provided in the applicable standard under 40 C.F.R. § 60.11(c).

**D.     Montana Air Quality Permits.**

Subchapter 8 of the Montana Regulations contains the substantive PSD preconstruction requirements, including the determination of BACT by MDEQ. Mont. Admin. R. 17.8.801 *et seq.*  To comply with Subchapter 8, a source planning to undertake a major modification must obtain a preconstruction permit by incorporating the substantive PSD requirements into a Montana Air Quality Permit ("MAQP") issued pursuant to Section 743(1) of the Montana Regulations.  Mont. Admin. R. 17.8.743(1).

**III.   <u>STANDARD OF REVIEW</u>**

Rule 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim for which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A claim is

subject to dismissal "if it lacks a cognizable legal theory or if it fails to plead sufficient facts." *Mont. Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1177 (D. Mont. 2012) (citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008)). To survive a motion to dismiss, "a plaintiff must do more than recite the formulaic elements of a cause of action." *Maier v. Mavrinac*, CV 08-26-H-DWM-RKS, 2008 WL 4838419, at *2 (D. Mont. Oct. 30, 2008) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A court must "presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Comtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001); *see also, Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*, 338 F. Supp. 2d 1129, 1131 (D. Mont. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, "the allegations contained in a complaint are [alleged to be] insufficient on their face to invoke federal

jurisdiction," whereas a factual challenge "disputes the truth of the allegations" themselves. *Id*. "In factual challenges to subject matter jurisdiction, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Burley v. Burlington N. & Santa Fe Ry. Co*., 2010 WL 441537, *3 (D. Mont. Feb. 3, 2010) (quoting *Thornhill Publ'g Co. v. Gen. Tel. & Elec.,* 594 F.2d 730, 733 (9th Cir. 1979)).

## IV.   <u>SUMMARY OF ARGUMENT</u>

The vast majority of Plaintiffs' claims fail to meet the threshold requirements of Rules 12(b)(6) and 12(b)(1).  Rules 12(b)(6) and 12(b)(1) were developed to discourage scattershot pleadings like Plaintiffs' and prevent parties and the courts from unnecessarily expending valuable resources in the litigation of unfounded claims. *See, e.g.,* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1349 (3d ed.) (explaining that "motions on the grounds enumerated in Rule 12(b) are likely to produce an overall savings in time and resources as well as avoid delay in the disposition of cases, thereby benefiting both the parties and the courts").  Thirty-six of Plaintiffs' claims for relief fail to meet the minimum requirements established by Rules 12(b)(6) and 12(b)(1) and must be dismissed.

Thirty-eight of Plaintiffs' thirty-nine claims for relief arise from activities that Plaintiffs have grouped into twelve alleged "modifications" undertaken between 1992 and 2012 at Colstrip.[4]   Nine of the twelve alleged modifications occurred before 2008, more than five years before Plaintiffs filed their Complaint. According to Plaintiffs, each of the alleged modifications triggered Defendants' obligation to: (1) obtain a preconstruction permit known as a PSD permit ("PSD Claims"); (2) comply with emissions limitations known as BACT ("BACT Claims"); (3) obtain a separate Montana air quality permit to operate the units ("MAQP Claims"); and (4) update the Colstrip Title V operating permit to identify these alleged modifications ("Title V Claims").   Plaintiffs' final claim alleges emissions at the Plant violated visible emissions standards – expressed as limits on opacity ("Opacity Claim").

Defendants move to dismiss all of Plaintiffs' claims that purport to arise from activities that occurred outside of the five-year statute of limitations period on two related grounds.   First, to the extent that Plaintiffs' PSD Claims and BACT Claims seeking civil penalties arise outside of the applicable statute of limitations, the Court should dismiss these claims for failure to state a claim.   Second, the

_____

[4] For each alleged modification, Plaintiffs group multiple projects undertaken during the same year.  Defendants dispute that the multiple projects within a year may be aggregated and considered a single modification under the applicable regulations, but this issue is not appropriately raised at the motion to dismiss stage. By referring to the "alleged modifications," Defendants do not concede Plaintiffs' aggregation theory.

concurrent remedy doctrine bars Plaintiffs' concurrent claims seeking equitable remedies in the form of injunctive and declaratory relief.

Defendants also move to dismiss all of Plaintiffs' BACT Claims because operation without BACT emissions limitations is not a "claim upon which relief can be granted" independent of a PSD permit obligation. Fed. R. Civ. P. 12(b)(6). These claims lack a cognizable legal theory and are subject to dismissal. Additionally, Plaintiffs' BACT Claims do not allege a violation of an "emissions standard or limitation" as defined by the CAA citizen suit provision, Section 304, and therefore fail to invoke this Court's limited jurisdiction. Thus, the Court should dismiss Plaintiffs' BACT Claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Defendants move to dismiss all of Plaintiffs' MAQP Claims. Plaintiffs misconstrue the obligations imposed by the regulations to obtain a permit to operate the alleged modifications and, therefore, fail to state a claim upon which relief can be granted.

Defendants also move to dismiss Plaintiffs' Title V Claims in their entirety because Plaintiffs fail to allege violations that are actionable under Title V and therefore lack a cognizable legal theory upon which relief can be granted. Additionally, these claims constitute an impermissible collateral attack on the Colstrip Title V permit that this Court lacks jurisdiction to hear.

10

Finally, Defendants move to dismiss Plaintiffs' claim alleging that emissions at the Colstrip Plant have violated opacity emissions standards. The CAA citizen suit provisions preclude Plaintiffs from bringing this claim because the State has the primary role for enforcing the CAA in Montana and is diligently prosecuting this matter. Accordingly, the Court lacks jurisdiction to hear this claim.

## V.   ARGUMENT

**A.   Plaintiffs' PSD Claims And BACT Claims Relying On Activities That Occurred Before 2008 Are Barred By The Statute Of Limitations.**

Plaintiffs' claims seeking penalties for their (1) PSD Claims and (2) BACT Claims are barred by the five-year statute of limitations set forth in 28 U.S.C. § 2462. The running of the statute of limitations is clear on the face of the Complaint. Plaintiffs' concurrent claims seeking injunctive and declaratory relief based on time-barred PSD and BACT Claims likewise are barred by the concurrent remedy doctrine.

> 1.   The Court Should Dismiss Plaintiffs' PSD Claims And BACT Claims Seeking Civil Penalties as Untimely Under the Applicable Five-Year Statute of Limitations.

A complaint must be dismissed under Rule 12(b)(6) where the "running of the statute is apparent on the face of the complaint." *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). PSD Claims 10, 13, 16, 19, 22, 25, 28, 31, and 34 and BACT Claims 12, 15, 18, 21, 24, 27, 30, 33, and 36 are time-barred

under the applicable five-year statute of limitations and should be dismissed under Rule 12(b)(6).

Plaintiffs' claims are governed by 28 U.S.C. § 2462, which applies where a given statute – like the CAA – contains no specific limitations period of its own. *See, e.g., United States v. Walsh,* 8 F.3d 659, 662 (9th Cir. 1993) (holding that 28 U.S.C. § 2462 is the appropriate statute of limitations for seeking civil penalties under the CAA).  Section 2462 states: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless *commenced within five years from the date when the claim first accrued*." 28 U.S.C. § 2462 (emphasis added).  Accordingly, Plaintiffs' PSD Claims and BACT Claims seeking civil penalties are subject to a five-year statute of limitations from the date when the claim first accrued.

>    a.    *Plaintiffs' PSD Claims and BACT Claims "first accrued" at the beginning of actual construction of the alleged modifications.*

A claim that a party failed to obtain a PSD preconstruction permit or to comply with a corresponding BACT emissions limitation "first accrues" when the party begins construction of the alleged modification. *See, e.g., Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*, 502 F.3d 1316, 1323 (11th Cir. 2007) ("'[A] violation of the Clean Air Act's [PSD] preconstruction permitting requirements occurs at the time of construction.'") (quotation omitted); *United*

*States v. Ill. Power Co.,* 245 F. Supp. 2d 951, 957 (S.D. Ill. 2003) (holding that "the plain language of [Section 165] demonstrates that any preconstruction violation occurs when the actual construction is commenced").

Plaintiffs filed their Complaint on March 6, 2013.  Taking into account the Ninth Circuit's 60-day tolling requirement,[5] the statute of limitations applicable to Plaintiffs' claims extends back to January 6, 2008.  Where Plaintiffs have alleged PSD Claims and BACT Claims that purportedly arise from modifications that commenced construction before this date, Plaintiffs' claims "first accrued" outside of the statute of limitations period.  *See* Compl. ¶¶ 127, 137 (10th, 12th Claims: 2007), 143, 153 (13th, 15th Claims: 2006), 158, 168 (16th, 18th Claims: 2006), 174, 183 (19th, 21st Claims: 1993 or 1994), 189, 198 (22nd, 24th Claims: 1993 or 1994), 204, 214 (25th, 27th Claims: 1992), 220, 230 (28th, 30th Claims: 1995), 236, 246 (31st, 33rd Claims: 1996), 252, 262 (34th, 36th Claims: 2001).  Accordingly, the running of the statute of limitations is clear on the face of the Complaint, and the Court should dismiss these claims.[6]  *See Sierra Club v. Otter*

---

[5] Where the federal statute of limitations is being applied to a citizen suit, as is the case here, the Ninth Circuit has held that the limitations period is tolled sixty days before the filing of the complaint to accommodate the statutorily-mandated sixty-day notice period.  *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1524 (9th Cir. 1987).

[6] For the same reasons, Plaintiffs' claim alleging violations of compliance certifications (Claim 38) and Opacity Claim (Claim 39) should be dismissed to the extent that they allege violations that occurred prior to January 6, 2008.

*Tail*, 615 F.3d 1008, 1022 (8th Cir. 2010) (dismissing claims for alleged PSD violations barred by the five-year statute of limitations).

> b.  *A violation of the PSD program occurs at the time of construction and does not continue.*

Plaintiffs improperly characterize their expired civil penalty claims as "ongoing" violations of the PSD provisions and Montana SIP.  *See, e.g.,* Compl. ¶ 130.  Under the CAA and Montana PSD regulations, a violation occurs at the time of construction and does not continue.  Thus, Plaintiffs' fanciful pleading cannot make timely their expired claims.

Section 165 of the CAA imposes *preconstruction* requirements on major emitting facilities undergoing major modifications or new construction.  42 U.S.C. § 7475 (entitled "Preconstruction requirements"); *see also Envtl. Def., v. Duke Energy Corp.,* 549 U.S. 561, 568 (2007) ("The 1977 [CAA] amendments required a PSD permit before a 'major emitting facility' could be 'constructed' in an area covered by the scheme.").  CAA Section 165 sets out PSD obligations in terms that unmistakably reflect requirements which must be satisfied *before* commencing construction. 42 U.S.C. § 7475(a)(1)-(8).  It provides that "[n]o major emitting facility . . . *may be constructed* in any area to which this part applies" unless (1) "a permit has been issued for such a proposed facility," (2) "the proposed permit has been subject to a review," and (3) "the owner or operator of such facility demonstrates" that emissions will not contribute to air pollution standards defined

14

elsewhere and compliance with other regulatory requirements.   42 U.S.C. §

7475(a)(1)-(3) (emphasis added).   Section 165 prohibits an owner/operator from

performing construction in derogation of these rules; it does not forbid operating

without a required preconstruction permit.

The Montana Regulations implement Section 165 in Montana and similarly

create a one-time obligation to satisfy preconstruction requirements *before*

construction begins.  Mont. Admin. R. 17.8.818(1) ("No major stationary source or

major modification shall begin actual construction unless" the requirements of the

PSD program are met).   Nothing in the Montana PSD regulations, as set forth in

Subchapter 8, imposes a continuing obligation for a source to obtain a

preconstruction permit after the completion of construction.  *See, generally,* Mont.

Admin. R. 17.8 Subchapter 8 (entitled *Prevention of Significant Deterioration of*

*Air Quality*).[7]

The overwhelming majority of courts addressing PSD claims have found

that PSD violations are not ongoing or continuing.[8]  While the question has not

---

[7] *Compare with,* Montana Title V Operating Permit Program, Mont. Admin. R.
17.8 Subchapter 12.

[8] *See, e.g.,* (1) *Otter Tail*, 615 F.3d 1008 (8th Cir. 2010); (2) *Nat'l Parks &
Conservation Ass'n v. Tenn. Valley Auth.*, 502 F.3d 1316 (11th Cir. 2007); (3)
*United States v. Ameren Mo.*, No. 11-0077, 2012 WL 262655 (E.D. Mo. Jan. 27,
2012); (4) *United States v. EME Homer City Generation L.P.,* 823 F. Supp. 2d 274,
287-88 (W.D. Pa. 2011); (5) *Sierra Club v. Duke Energy Ind., Inc*., No. 1:08-cv-
437-SEB-TAB, 2010 WL 3667002, *9 (S.D. Ind. Sept. 14, 2010); (6) *United States
v. Midwest Generation*, LLC, 694 F. Supp. 2d 999, 1008 (N.D. Ill. 2010); (7)

been addressed by the Ninth Circuit, the Eighth and Eleventh Circuits have examined it closely and adopted the majority position.  *See Otter Tail,* 615 F.3d 1008; *National Parks*, 502 F.3d 1316.  The Eighth Circuit's decision in *Otter Tail* is particularly relevant here.  There, in a similar case alleging PSD violations, the Eighth Circuit affirmed the dismissal of Sierra Club's claims that defendants violated the PSD program on statute of limitations grounds.  The court held that although a source may violate the PSD program by "failing to apply for PSD permits in the first place, it does not continue to do so by failing to comply with a hypothetical set of operational parameters that would have been developed through the permitting process."  *Otter Tail,* 615 F.3d at 1016.  Similarly, the Eleventh Circuit in *National Parks* held that a violation of the PSD requirements based on a party's alleged failure to obtain a preconstruction permit first accrues when the party begins construction.  *National Parks*, 502 F.3d at 1322-23 ("From [the language of CAA Section 165], it follows that violations of the preconstruction

---

*Sierra Club v. Otter Tail Corp*., 608 F. Supp. 2d 1120, 1127 (D. S.D. 2009); (8) *United States v. Cinergy Corp*., 397 F. Supp. 2d 1025, 1030 (S.D. Ind. 2005); (9) *United States v. Ill. Power Co.,* 245 F. Supp. 2d 951, 957 (S.D. Ill. 2003); (10) *United States v. S. Ind. Gas & Elec. Co.*,   No. IP 99-1692-C-M/F, 2002 WL 1760752, at *8 (S.D. Ind. July 26, 2002); (11) *United States v. Murphy Oil USA, Inc*., 143 F. Supp. 2d 1054, 1080-84 (W.D. Wis. 2001); (12) *United States v. Westvaco*, 144 F. Supp. 2d 439, 444 (D. Md. 2001); (13) *United States v. Brotech Corp*., No. Civ.A. 0024-28, 2000 WL 1368023, at *3 (E.D. Pa. Sept. 19, 2000); (14) *United States v. Campbell*, No: 95-1854, 1997 WL 258894, at *2 (E.D. Cal. March 11, 1997); (15) *United States v. Louisiana-Pacific Corp*., 682 F. Supp. 1122, 1130 (D. Colo. 1987).

permitting requirements occur at the time of construction, not on a continuing

basis") (internal citation and quotation omitted).[9]

> c.   *The obligation to apply BACT is not an ongoing requirement.*

Assuming Plaintiffs' BACT Claims are independent claims (and they are

not),[10] they are, like Plaintiffs' PSD Claims, one-time violations that first accrued

when construction began.   "[T]he obligation to apply [BACT] . . . [is] solely a

prerequisite for approval of the modification, not a condition of [a facility's] lawful

operation."   *National Parks*, 502 F.3d at 1324; *see also*, 42 U.S.C. § 7475(a)(6)

("No major emitting facility . . . may be constructed in any area to which this part

applies unless – (6) *the proposed facility* is subject to the best available control

technology") (emphasis added).   MDEQ determines what BACT is through the

PSD permitting process.   *See* Mont. Admin. R. 17.8.801(6) (defining BACT to

---

[9] The 11th Circuit also distinguished a ruling by the Sixth Circuit that PSD violations are ongoing.  *See National Parks*, 502 F.3d at 1323 (discussing *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410 (6th Cir. 2007)). The Sixth Circuit decision was based on unique Tennessee regulatory language, which requires that "[i]n the case where a source or modification was constructed without first obtaining a permit, a construction permit may be issued  . . . to establish as conditions of permit, the necessary emission limits and requirements to assure that these regulatory requirements are met."  *Nat'l Parks (6th Cir.)*, 480 F.3d at 419.   Unlike Tennessee, there is no analogous independent post-construction permitting requirement in the Montana Regulations.  *See also*, *Otter Tail*, 615 F.3d. at 1017 (finding Sierra Club's argument based on the Sixth Circuit's decision unpersuasive because "Sierra Club has pointed to no similar rule in South Dakota").

[10] *See* Section V.B, *infra*.

mean an emissions limitation that "the department. . . determines is achievable").[11]

As a result, where construction on the alleged modifications commenced prior to

January 6, 2008, Plaintiffs' related BACT Claims for civil penalties are barred by

the statute of limitations.

This Court should adopt the persuasive reasoning of the Eighth Circuit on

this point:

> While it is true that PSD permits establish emission limits and thus
> regulate operation, that does not compel the conclusion Sierra Club
> reaches.  Even though the preconstruction permitting process may
> establish obligations which continue to govern a facility's operation
> after construction, that does not necessarily mean that such parameters
> are enforceable independent of the permitting process. *See Nat'l Parks
> 11th Cir.,* 502 F.3d at 1323 ("[T]he statutory provisions governing
> preconstruction requirements ˙cannot reasonably be construed to
> mean that building or altering a machine without a permit is a
> violation that continues as long as the machine exists or is operated.'")
> (*quoting Ill. Power Co.,* 245 F. Supp. 2d at 957).

> For these reasons we conclude that the plain language of the statute
> and the regulations applicable to Otter Tail prohibited only
> modification of the Big Stone plant without a PSD permit or BACT,
> not its operation.  If Otter Tail violated the CAA's PSD provisions, it
> did so more than five years before Sierra Club brought this action.
> Accordingly, Sierra Club's claims for civil penalties for Otter Tail's

---

[11] The argument that Section 819(3) imposes an ongoing operational requirement
to comply with BACT, s*ee e.g. National Parks (6th Cir.)*, 480 F.3d at 418
(holding that the language "shall apply" created an independent ongoing obligation
to apply BACT), was explicitly rejected by the Eighth and Eleventh Circuits and it
should be rejected here.  *See Otter Tail*, 615 F.3d at 1016 ("We cannot agree with
this interpretation"); *National Parks*, 502 F.3d at 1326 n.2 ("We do not adopt that
interpretation").

alleged PSD violations are barred by the five year statute of limitations in 28 U.S.C. § 2462.

615 F.3d 1017-18.

2.   <u>Plaintiffs' Concurrent Claims Seeking Injunctive And Declaratory Relief Should Be Dismissed Under The Concurrent Remedy Doctrine.</u>

Plaintiffs seek both a legal remedy (civil penalties) and an equitable remedy (declaratory relief and injunction) for the same claims.   Compl.   ¶¶ 287-291 (requesting civil penalties, and declaratory and injunctive relief generally for all claims).   Because the statute of limitations forecloses Plaintiffs from seeking civil penalties for these claims purportedly arising from modifications that began after the expiration of the statute of limitations period, the concurrent remedy doctrine bars Plaintiffs' concurrent request for equitable relief as well.

Under the concurrent remedy doctrine, where a party's legal remedies are time-barred, the concurrent equitable claims also are time-barred.   *See Cope v. Anderson*, 331 U.S. 461, 464 (1947) ("equity will withhold relief . . . where the applicable statute of limitations would bar the concurrent legal remedy"); *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (applying *Cope*, 331 U.S. at 464).   Legal and equitable remedies are concurrent when both are "available to vindicate the same right."   *Otter Tail*, 615 F.3d at 1018 (further stating that the "great weight of authority supports" the view "that regardless of the different natures of the remedies, the doctrine applies whenever equitable relief

could be available for the same cause of action as a time barred legal remedy"); *see also Fed. Election Comm'n,* 104 F.3d at 240 (explaining that, "because the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both").

Here, Plaintiffs concurrently seek both legal and equitable relief for their PSD Claims and BACT Claims.  Because Plaintiffs rely on the same set of facts to vindicate the same set of rights, Plaintiffs' PSD Claims and BACT Claims seeking legal and equitable relief are concurrent.  *See Otter Tail*, 615 F.3d at 1019 ("'where a legal and equitable remedy exist for the same cause of action, equity will generally follow the limitations statutes'") (quoting *Roemmich v. Eagle Eye Dew, LLC*, 526 F.3d 343, 352 (8th Cir. 2008)).  Both the Eighth and Eleventh Circuits, when reviewing PSD and BACT claims identical to Plaintiffs' claims, held that the concurrent remedy was barred.  *See Otter Tail*, 615 F.3d at 1018 ("because Sierra Club's PSD civil penalty claims are barred by the statute of limitations, the equitable remedies it seeks under those causes of action are barred as well"); *National Parks*, 502 F.3d at 1327.

The limited exception to the concurrent remedy doctrine for "claims brought by the federal government in its sovereign capacity" as enforcer of environmental regulations, *United States v. Banks*, 115 F.3d 916, 919 (11th Cir. 1997), does not apply here.  Such exception is not recognized in the Ninth Circuit.  *See Fed.*

*Election Comm'n*, 104 F.3d at 240 (applying the concurrent remedy doctrine to claims brought by the Federal Election Commission).   Further, Plaintiffs are bringing this citizen suit "on [their] own behalf," 42 U.S.C. § 7604(a), and thus do not "represent the public at large in the same way the government does when it brings suit to enforce the statute," *National Parks*, 502 F.3d at 1327; *see also Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004) (applying equitable defense of laches against a "private attorney general suing under the Clean Air Act" where such a defense would not be available against the Government).   As such, Plaintiffs' concurrent equitable claims are time-barred.

**B.    Plaintiffs' BACT Claims Fail To State An Independent Claim For Relief And Are Not Authorized Under The Citizen Suit Provision.**

1.    <u>There Is No Independent Obligation To Comply With BACT</u>.

Plaintiffs' BACT Claims contend that the alleged modifications "triggered the obligation to comply with BACT emission limitations." *See e.g.,* Compl. ¶ 90. These allegations strip the BACT requirement from its statutory and regulatory context in an attempt to create a claim that does not exist; the PSD program does not "establish[] an ongoing duty to apply BACT independent of the [PSD] permitting process." *Otter Tail*, 615 F.3d at 1017.   Because there is no independent obligation to comply with BACT, Plaintiffs' BACT Claims – claims 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, and 36 – fail to state a claim upon which relief can be granted.

21

BACT is not an obligation independent of the PSD permitting program, but is instead "inextricably linked to the [PSD preconstruction] permitting process." *Otter Tail*, 615 F.3d at 1017.  CAA Section 165(a), the origin of the requirement that a source comply with BACT, clearly identifies the obligation that a source be "subject to [BACT]" as a preconstruction requirement and not as an independent obligation.  42 U.S.C. § 7475(a)(4); *see Midwest Generation*, 694 F. Supp. 2d at 1007 (holding that the "enumerated requirements in 24 U.S.C. § 7475 are not freestanding; each is a specific prerequisite to obtaining a preconstruction permit").  Under the Montana Regulations, if a source has not sought a PSD permit, then MDEQ has not made a case-by-case determination of BACT for the source.  *See* Mont. Admin. R. 178.8.801(6) (defining BACT as "an emissions limitation . . . which the department, *on a case-by-case basis . . . determines is achievable for such source or modification*") (emphasis added).  There is no obligation to apply BACT in the abstract.  *Midwest Generation*, 694 F. Supp. 2d at 1003-04.

Because BACT is not a pre-existing emissions limitation, Plaintiffs essentially claim that Defendants have failed "to comply with a hypothetical set of operational parameters that would have been developed through the permitting process."  *Otter Tail*, 615 F.3d at 1016.  Plaintiffs do not – and cannot – allege that MDEQ determined BACT for each of the activities at issue and that Defendants have failed to comply with those determinations.  As a result, Plaintiffs' BACT

22

Claims are not independently actionable, fail to state a claim and must be dismissed.

    2.    <u>Plaintiffs' BACT Claims Do Not Allege A Cause Of Action Under The Citizen Suit Provision</u>.

This Court does not have jurisdiction to hear Plaintiffs' BACT Claims because the claims are not authorized under CAA Section 304(a)(1), the "citizen suit" provision. Section 304(a)(1) authorizes citizens to bring suit to enforce the CAA only in limited circumstances. *See, e.g., Natural Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.,* 651 F.3d 1066, 1071-72 (9th Cir. 2011) (recognizing that the scope of the CAA citizen suit provision is limited). Plaintiffs' BACT Claims do not meet any of the circumstances identified in Section 304(a)(1), are therefore not properly before this Court, and should be dismissed pursuant to Rule 12(b)(1). *Thiel v. Veneman*, 859 F. Supp. 2d 1182, 1193-94 (D. Mont. 2012) (federal courts "possess only that power authorized by Constitution and statute").

Section 304(a) provides, in relevant part, that a citizen suit may be filed against any person who "is alleged to have violated . . . an emission standard or limitation under this Act." 42 U.S.C. § 7604(a)(1). For purposes of Section 304(a)(1), an "emission standard or limitation" is defined under Section 304(f) as follows:

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,

(2) a control or prohibition respecting a motor vehicle fuel or fuel additive, or

(3) any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air quality) . . .; or

(4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.

which [sic] is in effect under this Act (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

42 U.S.C. § 7604(f).  None of the statutory definitions apply to Plaintiffs' BACT Claims.

Plaintiffs rely on the definition of an "emission standard or limitation" in Section 304(f)(3) as providing jurisdiction for their BACT Claims.  *See* Compl. ¶ 57.   This definition authorizes a citizen suit for an alleged violation of any condition or requirement of a *permit*.  *See* 42 U.S.C. § 7604(f)(3).  Plaintiffs have not alleged that Defendants violated any condition of a PSD permit.  Rather, they allege that Defendants are violating a "hypothetical set of operating parameters that would have been developed through the permitting process."  *Otter Tail*, 615 F.3d at 1016.  The plain language of the CAA citizen suit provision does not authorize such an action.

The definition of an emissions standard or limitation in Section 304(f)(1) likewise does not support Plaintiffs' BACT Claims. Section 304(f)(1) provides a cause of action for claims alleging a violation of an emissions limitation. BACT is not a predetermined emissions limitation that exists outside of the PSD permitting process, but is developed for a specific source through the PSD permit application on a "case-by-case basis." *See Otter Tail*, 615 F.3d at 1011; Mont. Admin. R. 17.8.801(6) (defining BACT as an emissions limitation determined by MDEQ on a "case-by-case" basis). Section 304(f)(1) clearly requires that suit be brought for violations of an *actual* emissions standard, not a hypothetical one that the Plaintiffs believe should exist. Plaintiffs have not alleged a violation of an existing emissions limitation. Accordingly, Plaintiffs' BACT Claims do not meet the statutory definition of "emission standard or limitation."

## C.   Plaintiffs' Montana Air Quality Permitting Claims Fail To State A Claim Under The Montana Regulations.

For each alleged major modification, Plaintiffs allege that Defendants violated Section 743(1)(e) by failing to "obtain a Montana Air Quality Permit *to thereafter operate the modified unit . . . .*" *See*, *e.g.*, Compl. ¶ 242 (emphasis added). Section 743(1)(e) does not require a source to obtain a permit *to operate a modified unit*. Accordingly, the Court should dismiss Plaintiffs' MAQP Claims – claims 2, 5, 8, 11, 14, 17, 20, 23, 26, 29, 32, and 35 – under Rule 12(b)(6).

25

Section 743(1) provides that an owner/operator must obtain a MAQP before it may "construct, install, modify, or operate" certain types of sources.  *See* Mont. Admin. R. 17.8.743(1).  Subsection 743(1)(e) imposes this obligation on sources built after November 23, 1968, such as Colstrip.[12]  *See* Mont. Admin. R. 17.8.743(1)(e).  As a source built after 1968, Colstrip long-ago obtained initial permits to construct and operate; therefore, Plaintiffs here do not and cannot claim that Defendants, prior to undertaking the alleged modifications, constructed or operated Colstrip without an MAQP.  Rather, Plaintiffs allege that – in addition to the requirement to obtain a preconstruction permit for the alleged modifications as set forth in their PSD Claims – Defendants also were required to obtain a *permit to operate the modified unit* subsequent to the alleged modifications.

On its face, Section 743(1)(e) cannot be read to mean that a modification triggers a requirement to obtain a permit to *operate the modified source*.  Section 743(1)(e) requires a source to obtain a permit to construct/install the source, to modify the source, or to operate the source.  In their claims, Plaintiffs do not allege that Defendants did not obtain an MAQP to construct, modify or operate Colstrip.  Rather, they allege that Defendants did not obtain a new permit to operate the *modified* Plant, a requirement that is not found in the regulatory language.  The

---

[12] Colstrip Units 1 and 2 began commercial operation in 1975 and 1976, respectively.  Compl. ¶ 18.  Colstrip Units 3 and 4 began commercial operation in 1984 and 1986 respectively.  *Id.*  Plaintiffs have failed to allege when construction was commenced on the Colstrip Plant.  *See id.*

absence of this requirement is made clear by comparison with Section 743(1)(d).

Section 743(1)(e) applies to facilities constructed after 1968; by contrast Section

743(1)(d) applies to facilities constructed *before* 1968 which are thereafter

*modified*.   The import of this difference can be seen by reading the applicable

language from subsection (d) into the introductory language in Section 743(1).

Doing so results in an obligation that an owner/operator of a facility constructed

*before* November 23, 1968 may not operate such a facility which is modified after

that date without first obtaining an MAQP.   Thus, for facilities constructed before

1968, which may never have received a permit to operate, a modification triggers a

requirement under Section 743(d) to obtain a permit to operate the modified

facility.   In contrast, where permits to construct and operate already were obtained,

Section 743(1)(e) only requires a source to obtain a permit to modify.   Plaintiffs'

claims, as pleaded, therefore have no basis in the cited regulation and must be

dismissed.

 In the case of a major modification, as alleged by Plaintiffs, this outcome

makes sense.   A major modification in an attainment area is subject to the

substantive PSD preconstruction requirements set forth in Subchapter 8 of the

Montana Regulations.   Subchapter 8 contains no requirement to obtain a permit to

operate a plant following a modification; it only contains obligations that must be

met prior to commencing construction of a major modification.   While these

27

substantive requirements are incorporated into permits through the vehicle of an MAQP, there is nothing in Section 743(1)(e) that translates the purely preconstruction requirements of Subchapter 8 into a requirement to obtain a *permit to operate* the modified unit as alleged by Plaintiffs.  For these reasons, the Court also should dismiss Plaintiffs' MAQP Claims.

**D.  Plaintiffs' Title V Claims Fail To Allege Actionable Conduct And Are An Impermissible Collateral Attack On The Sufficiency Of Colstrip's Title V Permit.**

Plaintiffs' Title V Claims – claims 37 and 38 – should be dismissed in their entirety under Rules 12(b)(1) and 12(b)(6).  These claims recast Plaintiffs' PSD Claims and BACT Claims as an alleged failure by Defendants to (1) include PSD requirements for each of the activities identified in Claims 1 through 36 into the Colstrip Title V permit, *see* Compl. ¶ 268, and (2) report as a violation each of the activities identified in Claims 1 through 36, Compl. ¶ 278.  Plaintiffs do not allege any basis for liability under the Title V regulations, but instead seek to revise the content of the permit outside of the permitting process.  Plaintiffs' Title V Claims are an impermissible collateral attack on the sufficiency of the validly-issued Colstrip Title V permit over which this Court lacks jurisdiction.

1.  <u>Plaintiffs Do Not Allege Conduct That Creates Liability Under Title V Or The Montana SIP.</u>

Plaintiffs' Title V Claims fabricate obligations that do not exist in the Title V regulations.  The Title V regulations place the burden on the applicant to make

28

the initial determination of applicable requirements and compliance. Mont. Admin. R. 17.8.1205(1). An applicant must supplement its Title V permit application "upon becoming aware" of a deficiency in the application. *Id*. 1205(4). Similarly, the compliance certification obligation is based on the source's "belief formed after reasonable inquiry." *Id*. 1207.

Plaintiffs have not alleged that Defendants became aware of a deficiency in the Colstrip Title V permit and failed to correct the permit application; nor do Plaintiffs contend that Defendants knowingly submitted compliance certifications based on inaccurate information. Instead, Plaintiffs claim that Defendants "*should have* identified each of the [alleged] violations set forth" in the Complaint. Compl. ¶ 278 (emphasis added). But the Title V regulations do not require Defendants to identify in a permit application or report in a compliance certification *alleged* PSD violations. *See, e.g., Great Basin Mine Watch v. E.P.A.*, 401 F.3d 1094, 1099 (9th Cir. 2005) ("Title V operating permits . . . are not part of the Act's PSD program."). Defendants have satisfied the Title V obligations for Colstrip by submitting a permit application and compliance certifications reflecting their determination of all applicable requirements, *see* Compl. ¶¶ 268, 279, and have no obligation to supplement or correct this information based on Plaintiffs' alleged violations. Claims 37 and 38 are thus no more than a "'naked assertion devoid of

further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted), and the Court should dismiss them.[13]

    2.    <u>Plaintiffs' Title V Claims Are An Impermissible Collateral Attack On The Colstrip Title V Permit.</u>

Plaintiffs' Title V Claims are dressed-up challenges to the sufficiency of the Colstrip Title V permit.  The CAA and Ninth Circuit precedent prohibit such backdoor challenges to Title V permits through citizen suits.  The sufficiency of a Title V permit must be raised in the permit proceeding.  Accordingly, claims 37 and 38 must be dismissed for lack of subject matter jurisdiction.

The Ninth Circuit has conclusively determined that federal district courts have no jurisdiction to hear CAA Section 304 citizen suit challenges to Title V permits.  *See Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC,* 548 F.3d 738, 756 (9th Cir. 2008) ("a claim that the terms of [a Title V] permit are inconsistent with other requirements of the Clean Air Act . . . may not be brought in federal district court under the Act's citizen suit provision, 42 U.S.C. § 7604").  The court held that "[b]y creating in 42 U.S.C. § 7661d(b)(2) an avenue of judicial

---

[13] If Plaintiffs' Title V Claims are not entirely dismissed, then the portions of claims 37 and 38 that arise from alleged modifications that occurred before 2008 should be dismissed.  Plaintiffs' Title V Claims are wholly dependent on Plaintiffs' PSD and BACT Claims, and thus are similarly time-barred.  Plaintiffs cannot circumvent the statute of limitations by relying on time-barred claims to establish their Title V Claims.  *See Local Lodge No. 1424 v. Nat'l Labor Relations Bd.*, 362 U.S. 411, 417-18 (1960) (reliance on time-barred conduct cannot convert legal conduct into illegal conduct).

review for Title V permits that passes through 42 U.S.C. § 7607, Congress effectively foreclosed the alternative avenue of citizen suit enforcement through 42 U.S.C. § 7604." *Id.* at 755; *see also*, *Natural Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1070 (9th Cir. 2011) ("Whenever § 307 review could have been obtained, this form of judicial review is exclusive . . . and forecloses the alternative avenue of citizen suit enforcement through 42 U.S.C. § 7604[,] CAA § 304.") (quotation omitted).

Plaintiffs have attempted to manufacture what sound like procedural violations of the Title V regulations and the Colstrip Title V permit to avoid the clear limitations on the citizen suit provision. Compl. ¶¶ 267-282 (claims 37 and 38). For example, Plaintiffs allege that Defendants failed to supplement their Title V permit application to add "missing PSD requirements" and to "correct erroneous compliance certifications." *See id.* ¶¶ 268, 269. However, what Plaintiffs seek is not the enforcement of a procedural violation; rather, Plaintiffs want the Colstrip Title V permit amended to include a "compliance schedule" requiring compliance with non-existent PSD requirements based on the alleged modifications. *Id.* at ¶ 270. These allegations are no different than claiming that the Colstrip Title V permit is deficient. Plaintiffs cannot circumvent *Romoland* and challenge the sufficiency of the Colstrip Title V permit. Accordingly, the Court should dismiss Plaintiffs' Title V Claims.

**E.**      **Plaintiffs' Opacity Claim Is Barred By MDEQ's Diligent Prosecution.**

The Court lacks subject matter jurisdiction to hear Plaintiffs' Opacity Claim because MDEQ "has commenced and is diligently prosecuting" a civil action covering the claimed opacity violations.  42 U.S.C. § 7604(b); *see Knee Deep Cattle Co., Inc. v. Bindana Inv. Co.*, 94 F.3d 514 (9th Cir. 1996) (noting that diligent prosecution bar is a jurisdictional requirement).  The CAA specifies that no citizen suit "may be commenced if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order."  42 U.S.C. § 7604(b).  Colstrip is subject to a civil action brought by MDEQ and where MDEQ is seeking civil penalties and injunctive relief to compel compliance with the same standards Plaintiffs are seeking to enforce in this action.  *Montana v. PPL Mont., LLC.*, No. DV-12-1546, (Mont. 13th Jud. Dist., Nov. 23, 2012) (appended as Exhibit A hereto).[14]  Accordingly, the Court should dismiss Plaintiffs' Opacity Claim – claim 39 – under Rule 12(b)(1).

CAA citizen suits are only appropriate to fill a limited, interstitial role in enforcement, and are to supplement, *not supplant* state and federal enforcement. Citizen suits are proper only "if the Federal, State and local agencies fail to

---

[14] Where a Rule 12(b)(1) motion presents a factual challenge to subject matter jurisdiction the court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citation omitted).

exercise their enforcement responsibility." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).[15] "The relevant test to determine if a state enforcement action qualifies as diligent prosecution is whether the prosecution is 'totally unsatisfactory.'" *Citizens for Clean Power v. Indian River Power, LLC*, 636 F. Supp. 2d 351, 357 (D. Del. 2009) (quotations omitted). The court must presume the diligence of the state's prosecution of a defendant absent persuasive evidence that the state has engaged in a pattern of conduct that could be considered dilatory, collusive, or otherwise in bad faith. *See id.* (affirming dismissal for lack of jurisdiction because state enforcement was a diligent prosecution barring citizen suit); *N. Cal. River Watch v. Humboldt Petroleum, Inc.*, No. C-00-1329VRW, 2000 WL 1639524, at *2 (N.D. Cal. Oct.

---

[15] The Court in *Gwaltney of Smithfield, Ltd.* offers a hypothetical that illustrates the danger of citizens intruding on the primary role of government enforcement:

> Suppose that the Administrator identified a violator of the Act and issued a compliance order under § 309(a).  Suppose further that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective, but expensive machinery, that it otherwise would not be obliged to take.  *If citizens could file suit, months or years later, in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably.  The same might be said of the discretion of state enforcement authorities.*

484 U.S. 49, 60-61 (1987) (emphasis added).

33

30, 2000) (holding that diligent prosecution can be resolved on a motion to dismiss).

Plaintiffs' Opacity Claim is nothing more than a recitation of the self-reports Colstrip submitted to MDEQ from 2008 through 2012 in compliance with regulations governing air emissions at the Plant.  Plaintiffs allege that Appendix A to the Complaint "enumerates some of the opacity limit violations reported by Defendants to [MDEQ]."  Compl. ¶ 77.  In fact, the Appendix represents *all* reported opacity exceedances from January 2, 2008 through June 23, 2012, regardless of whether the exceedance is classified as a violation by the MDEQ rules.

MDEQ has exercised, and continues to exercise, its enforcement responsibilities in a manner that will resolve any actual controversy from the events underlying Plaintiffs' Opacity Claim.  The state action covers *all* opacity violations under 40 C.F.R. § 60.42(a)(2) and applicable permits between January 1, 2008 through November 21, 2012.  *See* MDEQ Compl. (Ex. A), *Montana*, No. DV-12-1546 ¶ 63 ("from January 1, 2008 through November 21, 2012, at least 141 violations of the opacity limits . . . have occurred at the Colstrip facility," based upon the opacity exceedance data provided by PPL Montana).  The clear and complete overlap of the "violations" included in Plaintiffs' Complaint with the MDEQ enforcement action bars Plaintiffs' Opacity Claim under the diligent

prosecution standard.  There is no role, interstitial or otherwise, for Plaintiffs' suit to play in enforcing the CAA at Colstrip.  Consequently, this Court lacks jurisdiction over Plaintiffs' Opacity Claim.

## VI.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims for relief as outlined above against Defendants.

Dated this 3rd day of May, 2013.

/s/ *William W. Mercer*
William W. Mercer
**ATTORNEYS FOR PPL MONTANA, LLC, PUGET SOUND ENERGY AND PORTLAND GENERAL ELECTRIC COMPANY**

/s/ *Stephen R. Brown*
Stephen R. Brown
**ATTORNEYS FOR AVISTA CORPORATION AND PACIFICORP**

/s/ *Stephen D. Bell*
Stephen D. Bell
**ATTORNEYS FOR NORTHWESTERN CORPORATION**

/s/ *Joshua B. Frank*
Joshua B. Frank (*admitted pro hac vice*)
**ATTORNEYS FOR DEFENDANTS**

35

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this Brief complies with the requirements of Rule 7.1(d)(2), as modified by the Court's April 29, 2013 Order.  The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch.   The total word count is 8,480 excluding caption, certificate of compliance, signature block, tables of contents and authorities, and exhibit index.   The undersigned relies on the word count of the word processing system used to prepare this document.

/s/ *William W. Mercer*
William W. Mercer