William Bumpers (*admitted pro hac vice*)
Joshua B. Frank (*admitted pro hac vice*)
Megan H. Berge (*admitted pro hac vice*)
Christine G. Wyman (*admitted pro hac vice*)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 639-7700
Fax: (202) 639-7890
william.bumpers@bakerbotts.com
joshua.frank@bakerbotts.com
megan.berge@bakerbotts.com
christine.wyman@bakerbotts.com

**ATTORNEYS FOR DEFENDANTS**

Stephen R. Brown
Garlington, Lohn & Robinson, PLLP
350 Ryman Street
Missoula, Montana  59802
Telephone:  (406) 523-2500
Fax: (406) 523-2595
srbrown@garlington.com

**ATTORNEYS FOR AVISTA CORPORATION
AND PACIFICORP**

William W. Mercer
Michael P. Manning
Holland & Hart LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana  59103-0639
Telephone:  (406) 252-2166
Fax:  (406) 252-1669
wwmercer@hollandhart.com
mpmanning@hollandhart.com

**ATTORNEYS FOR PPL MONTANA,
LLC, PUGET SOUND ENERGY AND
PORTLAND GENERAL ELECTRIC
COMPANY**

Stephen D. Bell
Dorsey & Whitney LLP
Millennium Building
125 Bank Street, Suite 600
Missoula, Montana  59802-4407
Telephone: (406) 721-6025
Fax: (406) 543-0863
bell.steve@dorsey.com

B. Andrew Brown (*admitted pro hac vice*)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402
Telephone: (612) 340-2600
Fax: (612) 340-2868
brown.andrew@dorsey.com

**ATTORNEYS FOR NORTHWESTERN
CORPORATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER, )<br>)<br>)<br>) | CV 13-32-BLG-DLC-JCL |
| Plaintiffs, )<br>) | **REPLY IN SUPPORT OF DEFENDANTS'** |
| vs. ) | **PARTIAL MOTION TO DISMISS** |

| | |
|---|---|
| PPL MONTANA LLC, AVISTA CORPORATION, PUGET | ) ) |
| SOUND ENERGY, PORTLAND GENERAL ELECTRIC COMPANY, NORTHWESTERN CORPORATION, PACIFICORP, | ) ) ) ) ) |
| Defendants. | ) ) |

# TABLE OF CONTENTS

I.   ARGUMENT ........................................................................................ 1

 A.  Plaintiffs' PSD Claims Based On Pre-2008 Activities Are Time-
     Barred. ...................................................................................... 1

  1.  The PSD Program Imposes One-Time Permitting Obligations. ...... 2

  2.  Montana's PSD Program Imposes One-Time Violations. ................ 4

 B.  Plaintiffs' BACT Claims Should Be Dismissed. ................................ 6

  1.  Operating Without BACT Is Not An Independent Violation Or
      Ongoing. ..................................................................................... 6

  2.  Plaintiffs' BACT Claims Must Be Dismissed For Lack Of
      Jurisdiction. ................................................................................ 8

 C.  Plaintiffs' Concurrent Requests For Equitable Relief Are Time-
     Barred. ...................................................................................... 9

 D.  Plaintiffs Do Not State a Claim For Relief Under The MAQP
     Regulations. ............................................................................. 13

 E.  Plaintiffs' Title V Claims Should Be Dismissed. ............................. 14

  1.  This Court Lacks Jurisdiction Over Plaintiffs' Title V Claims. ...... 14

  2.  Plaintiffs' Allegations Do Not Constitute Violations Of The
      Operating Permit. ....................................................................... 15

  3.  Plaintiffs Failed To Plead Facts Supporting Their Title V
      Allegations. ............................................................................... 18

 F.  Plaintiffs' Opacity Claim Should Be Dismissed. ............................. 19

II.  CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.*,
    968 F. Supp. 423 (E.D. Wis. 1997) ...................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 ........................................................................................................18

*Bd. of Regents v. Tomanio*,
    446 U.S. 478 (1980) ..............................................................................................2

*CleanCOALition v. TXU Power*,
    536 F.3d 469 (5th Cir. 2008) .............................................................................4, 7

*Coal. for Clean Air v. VWR Int'l, LLC*,
    1:12-CV-01569-LJO-BAM, 2013 WL 486287 (E.D. Cal. Feb. 6,
    2013) ......................................................................................................................3

*Cope v. Anderson*,
    331 U.S. 461 (1947) ..............................................................................................9

*Fed. Election Comm'n v. Williams*,
    104 F.3d 237 (9th Cir. 1996) ...........................................................................9, 13

*Idaho Conservation League v. Boer*,
    CV-04-250-S-BLW, slip op. (D. Idaho Sept. 27, 2004) .....................................3

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ...........................................................................17

*Mont. Silversmiths, Inc. v. Taylor Brands, LLC*,
    850 F. Supp. 2d 1172 (D. Mont. 2012) ...............................................................6

*Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*,
    480 F.3d 410 (6th Cir. 2007) ...............................................................................7

*Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*,
    502 F.3d 1316 (11th Cir. 2007) ....................................................5, 7, 9, 12, 13

*New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC*,
    No. 07-cv-5298, 2009 WL 3234438 (E.D. Pa. Sept. 30, 2009) .........................12

*New York v. Am. Elec. Power Serv. Corp.*,
  2:04 CV 1098, 2006 WL 1331543 (S.D. Ohio Mar. 21, 2006) ..........................4

*New York v. Niagara Mohawk Power Corp.*,
  02-CV-24S, 2003 WL 23356447 (W.D.N.Y. Dec. 31, 2003)...........................17

*Pennsylvania v. Allegheny Energy, Inc.*,
  No. Civ.A. 05-885, 2006 WL 1509061 (W.D. Pa. Apr. 19, 2006) ...................17

*Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*,
  548 F.3d 738 (9th Cir. 2008)..............................................................................15

*Russell v. Todd*,
  309 U.S. 280 (1940) ...........................................................................................10

*Saffron v. Dep't of the Navy*,
  561 F.2d 938 (D.C. Cir. 1977) ...........................................................................11

*Schneider v. California Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998)......................................................................5, 15

*Sierra Club v. Dairyland Power Co-op*,
  10-CV-303-BBC, 2010 WL 4294622 (W.D. Wis. Oct. 22, 2010) ...............3, 14

*Sierra Club v. Dayton Power & Light, Inc.*,
  No. 2:04 CV 905, 2005 WL 1972549 (S.D. Ohio Aug. 12, 2005) ...................12

*Sierra Club v. Duke Energy Indiana, Inc.*,
  2010 WL 3667002 (S.D. Ind. Sept. 14, 2010)...................................................12

*Sierra Club v. Franklin County Power of Ill., LLC*,
  546 F.3d 918 (7th Cir. 2008)................................................................................3

*Sierra Club v. Johnson*,
  541 F.3d 1257 (11th Cir. 2008).........................................................................16

*Sierra Club v. Otter Tail Power Co.*,
  615 F.3d 1008 ...........................................................................6, 9, 11, 12, 13

*Sierra Club v. Portland Gen. Elec. Co.*,
  663 F. Supp. 2d 983 (D. Ore. 2009)....................................................................3

*United States v. Am. Elec. Power Service Corp.*,
   136 F. Supp. 2d 808 (S.D. Ohio 2001) ("*AEP I*")................................................12

*United States v. Am. Elec. Power Service Corp.*,
   137 F. Supp. 2d 1060 (S.D. Ohio 2001) ("*AEP II*") ...........................................12

*United States v. Cinergy Corp.*,
   397 F. Supp. 2d 1025 (S.D. Ind. 2005) ....................................................10, 12, 13

*United States v. E. Kentucky Power Co-op., Inc.*,
   498 F. Supp. 2d 1010 (E.D. Ky. 2007).................................................................17

*United States v. EME Homer City Generation L.P.*,
   823 F. Supp. 2d 274 (W.D. Pa. 2011) .............................................2, 3, 7, 17, 18

*United States v. Louisiana Generating, LLC*,
   CIV.A 09-100-JJB-CN, 2011 WL 6012997 (M.D. La. Dec. 1,
   2011) ...................................................................................................................17

*United States v. Marine Shale Processors*,
   81 F.3d 1329 (5th Cir. 1996)..................................................................................4

*United States v. Marolf*,
   173 F.3d 1213 (9th Cir. 1999).................................................................................2

*United States v. Midwest Generation*,
   694 F. Supp. 2d 999 (N.D. Ill. 2010) ("*Midwest Gen. I*")...............................2, 4

*United States v. Midwest Generation*,
   781 F. Supp. 2d 677 (N.D. Ill. 2011) ("*Midwest Gen. II*") ...............................16

*United States v. Telluride*,
   146 F.3d 1241 (10th Cir. 1998)............................................................................10

*United States v. Trident Seafoods Corp.*,
   60 F.3d 556 (9th Cir. 1995)..................................................................................14

*Ward v. Circus Circus Casinos, Inc.*,
   473 F.3d 994 (9th Cir. 2007)..................................................................................8

**FEDERAL RULES AND STATUTES**

42 U.S.C. § 7604...........................................................................................8

Fed. R. Civ. P. 15(a) ....................................................................................8

**STATE REGULATIONS**

Mont. Admin. R. 17.8.1205....................................................................16, 18

Mont. Admin. R. 17.8.1207....................................................................16, 18

**LOCAL RULES OF PROCEDURE**

L.R. 15.1 .....................................................................................................8

## <u>EXHIBIT & APPENDIX INDEX</u>

| | |
|---|---|
| Appendix A | Chart of Defendants' Arguments For Dismissal And Applicable Claims |
| Exhibit A | Consent Decree, *Montana v. PPL Montana, LLC*, No. DV-12-1546 (Mont. 13th Jud. Dist., June 6, 2013) |

Plaintiffs have failed to articulate a legally cognizable theory and/or valid jurisdictional basis for 36 of their 39 claims.[1]  Partial Mot. to Dismiss, Dkt. No. 36, 37 ("Brief").  Defendants provided straightforward grounds for dismissing these claims based on the plain language of the applicable regulations and the statute of limitations.  In their Response, Dkt. No. 47 ("Resp."), Plaintiffs seek to avoid the express limitations on their claims by conflating requirements from various permitting programs and by petitioning the Court to allow changes to their Complaint.  Plaintiffs offer minority-view judicial opinions and inapposite policy concerns in support of their positions.  This Court should enforce the plain regulatory and statutory language and dismiss the 36 claims at issue.

## I.  ARGUMENT

### A.  Plaintiffs' PSD Claims Based On Pre-2008 Activities Are Time-Barred.

Plaintiffs concede that the five-year statute of limitations in 28 U.S.C. § 2462 applies to their civil penalty claims.  *See* Resp. at 17.  Plaintiffs seek to evade this express bar, even for PSD Claims based on repairs made 20 years ago, by converting the PSD pre-construction requirements into an

---

[1] *See* Chart of Defendants' Arguments For Dismissal And Applicable Claims (Appendix A).

operating permit program.  In so doing, Plaintiffs essentially argue for the elimination of the statute of limitations because the statute would never begin to run so long as the facility continues to operate.  The statute of limitations cannot be so easily disregarded.  *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980) ("Statutes of limitations are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered judicial system.").  Courts must enforce the "legislative judgment that … the right to be free of stale claims in time comes to prevail over the right to prosecute them."  *United States v. Marolf*, 173 F.3d 1213, 1217-18 (9th Cir. 1999) (internal citation omitted).

  1. <u>The PSD Program Imposes One-Time Permitting Obligations</u>.

  Plaintiffs admit that "if the law makes construction without a permit illegal, then the claim accrues [under § 2462] when the construction occurs." Resp. at 18.  CAA Section 165 – entitled *Preconstruction requirements* – fits that description.  "The only actual, actionable prohibition in [§ 165(a)] is that 'No major emitting facility … may be constructed.'"  *United States v. EME Homer City Generation L.P.,* 823 F. Supp. 2d 274, 287 (W.D. Pa. 2011).  "[N]othing in [§ 165] prohibits the subsequent *operation* of such facility without a permit."  *United States v. Midwest Generation*, 694 F. Supp. 2d 999, 1004 (N.D. Ill. 2010) ("*Midwest Gen. I*").  Citing this plain

language, the substantial majority of Circuit and district courts have found alleged PSD violations to accrue at construction.  *See* Brief at 15-17 and nn.8 & 9; *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 928 (7th Cir. 2008) ("[T]he last possible moment at which a [PSD preconstruction] violation occurs is when the actual construction is commenced, and not at some later point in time.") (internal citation omitted).

Plaintiffs ask this Court to adopt instead a "distinct minority view," *EME Homer City*, 823 F. Supp. 2d at 287, without providing any compelling reason to reject the majority position.  These minority decisions finding PSD violations to be continuing in nature have done so primarily to address alleged policy concerns with limiting PSD liability to preconstruction activities.[2]  *See* Resp. at 20-23; *see, e.g.*, *Sierra Club v. Dairyland Power Co-op*, 10-CV-303-BBC, 2010 WL 4294622, at *12 (W.D. Wis. Oct. 22, 2010) (incorporating the court's subjective evaluation of "the true nature" of PSD permits as "illuminate[d]" by a mix of statutory provisions and the PSD program's "overall goals"); *Sierra Club v. Portland Gen. Elec. Co.*, 663 F. Supp. 2d 983, 993 (D. Ore. 2009) (relying in part on a subjective evaluation

---

[2] Plaintiffs also improperly cite two district court cases in this Circuit that actually declined to reach this issue.  *See Idaho Conservation League v. Boer*, CV-04-250-S-BLW, slip op. at 15 (D. Idaho Sept. 27, 2004) – Resp. Ex. C.; *Coal. for Clean Air v. VWR Int'l, LLC*, 1:12-CV-01569-LJO-BAM, 2013 WL 486287 (E.D. Cal. Feb. 6, 2013).

that holding otherwise would "make[] little sense"). Plaintiffs' policy concerns cannot trump the controlling statutory provisions. Subsequent courts have criticized the minority decisions for "disregard[ing] the obvious interpretation of the regulations." *Midwest Gen. I*, 694 F. Supp. 2d at 1006; *see also New York v. Am. Elec. Power Serv. Corp.*, 2:04 CV 1098, 2006 WL 1331543, at *7 (S.D. Ohio Mar. 21, 2006) (declining to follow *American Electric Power* case cited by Plaintiffs, Resp. at 23, because construing the "narrow scheme [of the PSD program] as sweeping within its scope continuing violations … would be to turn the statute into an operating regulatory scheme").[3]

> 2.   <u>Montana's PSD Program Imposes One-Time Violations</u>.

The Montana PSD regulations provide no independent support for Plaintiffs' claims. Those regulations, contained in Subchapter 8, are by Plaintiffs' own description "modeled upon EPA regulations." Resp. at 6. Subchapter 8 establishes the same one-time obligation to satisfy preconstruction requirements before construction begins as the federal PSD

---

[3] The Fifth Circuit's decision in *United States v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir. 1996), relied on by Plaintiffs has been described by multiple courts as "inapposite" to the interpretation of PSD provisions. *See, e.g., Midwest Gen. I*, 694 F. Supp. 2d at 1006. More recently, the Fifth Circuit has explained that violations of the PSD program occur at the time of construction. *See CleanCOALition v. TXU Power*, 536 F.3d 469, 470 (5th Cir. 2008).

regulations.  *See* Brief at 15 (citing ARM 17.8.818(1) ("No major stationary source or major modification *shall begin actual construction unless*" the requirements of the PSD program are met) (emphasis added)).  Plaintiffs urge the Court to follow cases finding a continuing PSD obligation based on "the language of the regulations" in Oregon, Tennessee, North Carolina, and South Carolina, Resp. at 19; however, these cases relied on language not found in the federal provisions.  Instead, courts interpreting state PSD regulations tracking the federal provisions have found no continuing PSD obligations.  *See, e.g., Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007).

Nor can Plaintiffs rely on the separate MAQP regulations to avoid application of § 2462 to their claims under the federal or Montana *PSD regulations*.  *See* Resp. at 21.  The MAQP is merely the "permitting vehicle for the [PSD] Program," Resp. at 21; it incorporates the substantive requirements without imposing additional PSD obligations.  Plaintiffs expressly alleged PSD and MAQP violations as separate and distinct claims in their Complaint.  They cannot now collapse the two sets of claims in an effort to salvage their time-barred PSD Claims.[4]

---

[4] Moreover, Plaintiffs cannot amend their pleadings through the briefing process.  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1

**B.     Plaintiffs' BACT Claims Should Be Dismissed.**

1.     Operating Without BACT Is Not An Independent Violation Or Ongoing.

Plaintiffs' separate BACT Claims have no basis in the Montana PSD regulations and do not demonstrate a "cognizable legal theory"' under Rule 12(b)(6).  *Mont. Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1177 (D. Mont. 2012).  Plaintiffs identify a portion of ARM Section 17.8.819(3) providing that a modified facility "shall apply BACT" as the "legal foundation" for the BACT claims.  Resp. at 24.  But Plaintiffs, and the minority cases they rely upon, *id.* at 24-26, fail to read this requirement in context.  Section 819(3) (and its federal counterpart) imposes the BACT requirement on "each *proposed* emissions unit."  The Eighth and Eleventh Circuits, rejecting the reasoning of the cases cited by Plaintiffs, have appropriately described the directive to apply BACT "as requiring that BACT limits be incorporated into a facility's construction plans and PSD permits, not as establishing an ongoing duty to apply BACT independent of the permitting process."[5]  *Sierra Club v. Otter Tail Power Co.*, 615 F.3d

---

(9th Cir. 1998) (explaining that "new allegations contained in the ... opposition motion ... are irrelevant for Rule 12(b)(6) purposes).

[5] ARM Section 17.8.827(1) does not support a different interpretation.  *See* Resp. at 25-26 (noting that Sixth Circuit *National Parks* case cited a similar Tennessee provision).  Unlike the hypothetical posed in dicta by the Sixth Circuit, no permitting process has taken place for the alleged modifications.

1008, 1017; *see also Nat'l Parks*, 502 F.3d at 1324-25; *see CleanCOALition,* 536 F.3d at 477 (identifying "evidence that the facility will utilize [BACT as] preconditions for granting a preconstruction permit"); *EME Homer City,* 823 F. Supp. 2d at 287 (describing *Dairyland* as the "distinct minority view"). This conclusion is supported by the fact that BACT does not exist in the abstract, but must be determined on a case-by-case basis by the Montana Department of Environmental Quality ("MDEQ") *during the PSD permitting process*. Brief at 21-22 (citing ARM 17.8.801(6)).

Even if Plaintiffs' BACT Claims were legally cognizable, any BACT Claims based on repairs prior to 2008 would be barred by the statute of limitations. Because the determination of BACT is part of the preconstruction permitting process in Montana, any failure to implement BACT is part of an alleged one-time failure to obtain a PSD permit. The Montana PSD regulations contain no language creating a post-construction requirement to implement BACT. *See Nat'l Parks*, 502 F.3d at 1325 n.2 (distinguishing *NPCA v. TVA*, 480 F.3d 410 (6th Cir. 2007) which was based in part on Tennessee's post-construction requirements). The statute of

---

BACT requirements are not independent "applicable requirements" under Section 827(1) absent permitting. Plaintiffs' citation to ARM Section 756 (related to the MAQP) is also inapposite to Plaintiffs' BACT Claims *under the PSD regulations*. *See, e.g.*, Compl. ¶ 91.

limitations bars Plaintiffs' pre-2008 PSD Claims and their pre-2008 BACT Claims for the same reasons.

> 2.     Plaintiffs' BACT Claims Must Be Dismissed For Lack Of Jurisdiction.

Plaintiffs do not dispute that their BACT Claims, as pled in their Complaint, fail to demonstrate a basis for this Court's jurisdiction under the CAA citizen suit provisions.  Resp. at 32.  This concession is grounds for immediate dismissal under Rule 12(b)(1).  Plaintiffs' request to "amend" their pleading should be denied as procedurally and substantively flawed.

Plaintiffs' belated request violates the rules governing amendment of pleadings.  *See* Fed. R. Civ. P. 15(a); L.R. 15.1; *Ward v. Circus Circus Casinos, Inc.,* 473 F.3d 994, 1000 (9th Cir. 2007) (where motion to amend violated the local rules "the district court may in its discretion deny [the] motion on that basis alone").  Allowing Plaintiffs to revise their pleading in the midst of briefing would prejudice Defendants' ability to respond to the new claims.

Moreover, amendment would be futile because the new provision Plaintiffs cite also fails to provide jurisdiction for the BACT claims.  Section 304(f)(4) allows citizens to enforce a "standard, limitation, or schedule" that a source could be "alleged to have violated." 42 U.S.C. § 7604(a)(1), (f)(4).  Because MDEQ has not established BACT emissions limitations through a

permitting process for Colstrip, there is no applicable limitation under Section 304. *See Otter Tail*, 615 F.3d at 1016 (BACT claims allege only a violation of "a hypothetical set of operating parameters that would have been developed through the permitting process.")

## C.   Plaintiffs' Concurrent Requests For Equitable Relief Are Time-Barred.

The Ninth Circuit, following Supreme Court precedent, has endorsed the principle that claims for equitable relief, such as Plaintiffs' claims for injunctive and declaratory relief, are barred where concurrent claims for legal relief are barred by the statute of limitations. *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (citing *Cope v. Anderson*, 331 U.S. 461, 464 (1947)). Plaintiffs have failed to distinguish or discredit these controlling precedents. Where the statute of limitations bars Plaintiffs' claims for civil penalties, Plaintiffs' concurrent requests for equitable relief also are barred.

First, Plaintiffs' efforts to distinguish between a "concurrent remedy doctrine" and a "concurrent jurisdiction doctrine" are nothing more than semantics. Resp. at 27. Courts use the terms interchangeably to describe the same principle. *See, e.g.*, *Cope*, 331 U.S. at 463-64 (describing what Plaintiffs call the "concurrent jurisdiction doctrine," Resp. at 27); *Nat'l Parks*, 502 F.3d at 1326 (describing the "concurrent remedy doctrine" and

citing *Cope*); *United States v. Telluride*, 146 F.3d 1241, 1248 n.12 (10th Cir. 1998) (describing the "concurrent remedy rule"); *United States v. Cinergy Corp.*, 397 F. Supp. 2d 1025, 1032 (S.D. Ind. 2005) ("The concurrent remedy doctrine holds that 'equity will withhold its relief in such cases where the applicable statute of limitations would bar the concurrent legal remedy.'" (citing *Cope*)).

Second, Plaintiffs cannot evade controlling appellate precedent. Plaintiffs try to constrain application of the concurrent remedy doctrine to circumstances where equitable claims aid a legal right.  Resp. at 27-29.  But *Russell v. Todd*, the very case Plaintiffs rely upon, explicitly states that the statute of limitations will bar equitable relief "when the jurisdiction of the federal court is concurrent with that at law, *or* the suit is brought in aid of a legal right…." 309 U.S. 280, 289 (1940) (emphasis added).   Thus, the doctrine as articulated in *Russell* and *Cope*, and adopted in *FEC v. Williams*,[6] applies broadly to any claims for which legal and equitable jurisdiction is concurrent.

---

[6] Plaintiffs fail to distinguish *FEC v. Williams* as controlling authority in the Ninth Circuit.  *See* Resp. at 30-31 (citing two SEC decisions in Northern District of California).  Given that *Williams* based its holding on *Cope*, which has been applied by multiple Circuit courts across multiple statutory programs, there is no valid basis for limiting *Williams* to FEC cases.

Plaintiffs also misstate the standard for determining when "concurrence" exists between legal and equitable relief.  Plaintiffs contend that the determination should focus on whether the legal and equitable remedies exist independently.  Resp. at 29.  But their position ignores the "great weight of authority" based on *Cope* and *Russell* holding that remedies are concurrent when equitable and legal relief are available to vindicate the same *right*, such as when both forms of relief are sought on the same facts. *Otter Tail*, 615 F.3d at 1018-19 (citing cases from the Second, Seventh, Eighth, Tenth, Eleventh and D.C. Circuits).  The D.C. Circuit, addressing a plaintiff's wrongful discharge claims seeking both reinstatement and damages, reasoned that while the former remedy was equitable and the latter legal, there was "in fact but a single right and a single default involved." *Saffron v. Dep't of the Navy*, 561 F.2d 938, 943-44 (D.C. Cir. 1977) (internal citation omitted).  The court found such circumstances to be "the kind of parallelism that demonstrates applicability of the concurrency rule."  *Id.* at 943 (citing *Russell*, 309 U.S. at 291).[7]   Plaintiffs request injunctive,

---

[7] Plaintiffs place great weight on the discussion of concurrency in *Federal Fed. Election Comm'n v. Christian Coal.*, 965 F. Supp. 66, 71-72 (D.D.C. 1997).  *See* Resp. at 28, 29.  But the opinion in *Christian Coalition* is flawed and of questionable legal validity.  The court's examination of the nature of legal and equitable remedies, as opposed to whether the remedies vindicate the same right, directly contradicts the D.C. Circuit's holding in *Saffron* without even noting that direct precedent.

declaratory, and legal relief based on the same set of facts in an attempt to vindicate the same legal right under the CAA. The requested equitable relief is thus barred as concurrent with the legal remedies subject to the statute of limitations. *See Otter Tail*, 615 F.3d at 1019; *Nat'l Parks*, 502 F.3d at 1327.

Third, courts that have applied the correct concurrency standard in the CAA context, including the Eighth and Eleventh Circuits, have found equitable relief to be precluded where claims for civil penalties are time-barred. *See Otter Tail*, 615 F.3d at 1018-19; *Nat'l Parks*, 502 F.3d at 1326-27; *Sierra Club v. Duke Energy Indiana, Inc.*, 2010 WL 3667002 at *9-10 (S.D. Ind. Sept. 14, 2010). By contrast, many of the decisions relied upon by Plaintiffs impose a "novel" concurrency test focusing on the "purposes" of the relief that is not based on *Cope*, *Russell*, or their progeny.[8] *Nat'l Parks*, 502 F.3d at 1327. Other cases cited by Plaintiffs refused to bar equitable relief claims brought by the government. *See United States v. Am.*

---

[8] *New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC*, No. 07-cv-5298, 2009 WL 3234438 at *12 (E.D. Pa. Sept. 30, 2009); *Cinergy*, 397 F. Supp. 2d at 1032; *Sierra Club v. Dayton Power & Light, Inc.*, No. 2:04 CV 905, 2005 WL 1972549 at *4 (S.D. Ohio Aug. 12, 2005); *United States v. Am. Elec. Power Service Corp.*, 137 F. Supp. 2d 1060, 1068 (S.D. Ohio 2001) ("*AEP II*"). The latter three cases rely on a single district court opinion that denied dismissal of citizen suit claims for injunctive relief under the Resource Conservation and Recovery Act ("RCRA"), not the CAA, because all claims under RCRA are equitable and not legal. *A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.*, 968 F. Supp. 423, 429 (E.D. Wis. 1997).

*Elec. Power Service Corp.*, 136 F. Supp. 2d 808, 811 (S.D. Ohio 2001) ("*AEP I*"); *Cinergy*, 397 F. Supp. 2d at 1032.  The Ninth Circuit recognizes no such exception, as demonstrated by its application of the doctrine in *Williams*.  104 F.3d at 240. Moreover, such an exception would not apply equally to citizen suit plaintiffs.  *Nat'l Parks*, 502 F.3d at 1327.

**D.   Plaintiffs Do Not State a Claim For Relief Under The MAQP Regulations.**

In response to Defendants' plain text reading of the MAQP regulations precluding the MAQP Claims, Plaintiffs advance an ipse dixit interpretation of Section 743(1).  According to Plaintiffs, because Section 743(1) includes the words "modify" and "operate," a permit for a modification must "become the permit necessary for operation of that facility." Resp. at 15.  Thus, without any support in the regulatory text, Plaintiffs create out of whole cloth an obligation to obtain a permit to *operate a modification*.  Section 743(1)(e) contains no such obligation.  *See* Brief at 25-28.  Further, the fact that a MAQP "'may include requirements for the construction and subsequent operation'" of a source, Resp. at 16 (quoting ARM 17.8.740(9)), does not make such operating requirements enforceable outside of the permitting process.  *See, e.g., Otter Tail*, 615 F.3d at 1017.

The 2004 MDEQ correspondence cited by Plaintiffs, Dkt. No. 47-2, does not affect the interpretation of the applicable provisions.   The Thompson-River Co-Gen ("TRC") situation was inherently different from the facts alleged in the Complaint – it was a new facility that was constructed differently than permitted.  *See id.* at 1 ("TRC has constructed a different facility than what is currently contained in [its MAQP].").   In contrast, Colstrip has been operating pursuant to its validly issued MAQP. Further, the correspondence merely reflects MDEQ's enforcement position under specific (and different) circumstances rather than a promulgated regulatory interpretation.  *See United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995) ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position.").

**E.     Plaintiffs' Title V Claims Should Be Dismissed.**

1.     This Court Lacks Jurisdiction Over Plaintiffs' Title V Claims.

Notwithstanding their arguments to the contrary, the wording of Plaintiffs' Title V claims and the relief sought demonstrate that their claims are challenges *to the adequacy* of the existing Colstrip permit based on the absence of a compliance plan with which Defendants could certify compliance.  *See* Brief at 31 (citing Compl. ¶¶ 268-70); *see also, Dairyland*,

2010 WL 4294622, at *17 ("To the extent that plaintiff is challenging defendant's submission of allegedly incomplete permit applications that resulted in defective Title V permits…plaintiff was required to utilize the process set forth in § 7661d.")  Plaintiffs concede, Resp. at 36, that the CAA and Ninth Circuit precedent preclude such collateral challenges, in any form, through a citizen suit enforcement action.  *See Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 755-56 (9th Cir. 2008).   These claims therefore must be dismissed.

> 2. <u>Plaintiffs' Allegations Do Not Constitute Violations Of The Operating Permit</u>.

Plaintiffs identify in their Complaint two sets of alleged violations comprising their Title V claims: failure to (1) supplement the Title V permit application, *see* Compl. ¶¶ 267-274; and (2) submit complete compliance certifications, *see* Compl. ¶¶ 275-282.   Plaintiffs attempt to add a third allegation in their Response, at 33: failure to seek a new Title V permit or revision when changes made to the facility allegedly required a MAQP.[9] None of these allegations identify terms or conditions of the Colstrip operating permit that have been violated.[10]

---

[9] This allegation is raised for the first time in Plaintiffs' Response Brief and should be not considered.  *See Schneider*, 151 F.3d at 1197 n.1.

[10] The permit incorporates by reference the Montana Title V permitting regulations.  *See* Title V Permit  at 45 (Resp. Ex. A, Dkt. 47-1).

The relevant Montana Title V regulations require only that a source (1) submit an updated permit application upon "becoming aware of such failure or incorrect submittal," ARM 17.8.1205(4); (2) submit compliance certifications "based on information and belief formed after reasonable inquiry," ARM 17.8.1207; Title V Permit at 39 (Condition V.B.1); and (3) apply for a new operating permit or permit revision after obtaining a preconstruction permit for a major modification.   ARM 17.8.1205(2)(b). The regulations impose no duty to take these actions merely because a third party alleges that past projects constitute major modifications requiring preconstruction permits.  *See United States v. Midwest Generation*, 781 F. Supp. 2d 677, 690 (N.D. Ill. 2011) ("*Midwest Gen. II*") (finding no obligation to update operating permit unless a preconstruction permit is issued); *Sierra Club v. Johnson*, 541 F.3d 1257, 1267-69 (11th Cir. 2008) (rejecting Sierra Club's "attempt to elevate … the initiation of a civil enforcement action to the level of a final resolution of the PSD issue" that would trigger requirements to update an operating permit); *see also* ARM 17.8.1205(2)(b) (requiring application for Title V permit revision within 12 months *after* commencement of operation following permitted construction). Defendants have submitted an application, obtained a Title V permit, and submitted compliance certifications for Colstrip.  No more is required under

the regulations.  Plaintiffs have failed to articulate Title V claims based on "sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The cases cited by Plaintiffs do not validate their Title V claims. Most rely on the holding in *Pennsylvania v. Allegheny Energy, Inc.*, No. Civ.A. 05-885, 2006 WL 1509061, at *9 (W.D. Pa. Apr. 19, 2006), which the Western District of Pennsylvania recently disclaimed in *EME Homer City*, 823 F. Supp. 2d at 293 n.15 ("Subsequent developments in the law, both procedural and substantive, convince the Court that this decision is no longer correct."). The *Louisiana Generating* and *East Kentucky Power* cases cited by Plaintiffs, Resp. at 35, share this flaw, and also are inapposite because they relied on EPA's (not citizen-plaintiffs') broad enforcement authority. *See United States v. Louisiana Generating, LLC*, CIV.A 09-100-JJB-CN, 2011 WL 6012997, at *14 (M.D. La. Dec. 1, 2011); *United States v. E. Kentucky Power Co-op., Inc.*, 498 F. Supp. 2d 1010, 1018 (E.D. Ky. 2007).  The court in *New York v. Niagara Mohawk Power Corp.*, 02-CV-24S, 2003 WL 23356447 (W.D.N.Y. Dec. 31, 2003), did not consider whether Title V permit requirements can exist independently of PSD permit requirements.

17

3.   <u>Plaintiffs Failed To Plead Facts Supporting Their Title V Allegations</u>.

Plaintiffs failed to plead the specific conduct by Defendants that would be necessary to demonstrate the violations they allege.  An obligation to supplement an application under Section 17.8.1205(4) is triggered only if the applicant becomes aware that the permit application is deficient. Plaintiffs made no *factual* allegations that Defendants had "becom[e] aware" that their permit application was deficient.  ARM 17.8.1205(4).  Further, the Montana regulations require that compliance certifications be "based on information and belief formed after reasonable inquiry."  ARM 17.8.1207. Plaintiffs made no *factual* allegation that Defendants' certifications were not based on "information and belief formed after reasonable inquiry."

Instead, the Title V claims rest entirely on Plaintiffs' legal conclusion that certain historic projects triggered preconstruction permitting obligations. Only by *assuming* major modifications occurred can Plaintiffs allege a failure to supplement or to correctly certify compliance.[11]   Such legal conclusions couched as factual allegations do not "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiffs merely

---

[11] Even if Plaintiffs prevail on their PSD and BACT Claims, such a result does not lead to an automatic Title V violation.  *See EME Homer City.*,  823 F. Supp. at 293.

attribute as many "violations" as possible to the same underlying conduct in an effort to avoid dismissal.

**F.    Plaintiffs' Opacity Claim Should Be Dismissed.**

Plaintiffs concede that their Opacity Claim should be dismissed.  *See* Resp. at 37-38.   The only question is whether dismissal should be with prejudice.   Because MDEQ has diligently prosecuted the same opacity violations claimed by Plaintiffs, *see* Brief at 32-35, and has fully resolved all such alleged violations by consent decree,[12] this Court should dismiss the allegations in the Opacity Claim with prejudice.

## II.    <u>CONCLUSION</u>

For the reasons set forth above and in its Partial Motion to Dismiss, Defendants respectfully request that their motion be granted and Plaintiffs' claims be dismissed with prejudice.

---

[12] On June 6, 2013, subsequent to submission of Defendants' Motion, the Montana court signed a consent decree ("CD") between MDEQ and Defendants that resolves all opacity allegations.  *See* CD (Exhibit A).  The CD "covers all violations from January 1, 2008 to the present." CD at 8. The CD imposes substantial penalties and injunctive relief to remedy the violations.

Dated this 21st day of June, 2013.

/s/ William W. Mercer
William W. Mercer
**ATTORNEY FOR PPL MONTANA, LLC, PUGET SOUND ENERGY AND PORTLAND GENERAL ELECTRIC COMPANY**


/s/ Stephen R. Brown
Stephen R. Brown
**ATTORNEY FOR AVISTA CORPORATION AND PACIFICORP**


/s/ Stephen D. Bell
Stephen D. Bell
**ATTORNEY FOR NORTHWESTERN CORPORATION**


/s/ Joshua B. Frank
Joshua B. Frank (*admitted pro hac vice*)
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this memorandum complies with the requirements of Rule 7.1(d)(2) as modified by the Court's April 29, 2013 Order. The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch. The total word count is 4,249 excluding caption, certificate of compliance, signature block, tables of contents and authorities, and exhibit index. The undersigned relies on the word count of the word processing system used to prepare this document.

/s/ *William W. Mercer*
William W. Mercer