John Heenan
Bishop & Heenan
3970 Avenue D, Suite A
Billings, Montana    59102
(406) 839-9091
john@bishopandheenan.com

Roger Sullivan
McGarvey, Heberling, Sullivan
      & McGarvey, P.C.
745 South Main Street
Kalispell, Montana   59901-5341
(406) 752-5566
RSullivan@McGarveyLaw.com

George E. Hays (*admitted pro hac vice*)
236 West Portal Avenue, #110
San Francisco, CA   94127
(415) 566-5414
georgehays@mindspring.com

David C. Bender (*admitted pro hac vice*)
McGillivray Westerberg & Bender LLC
211 S. Paterson Street, Ste 320
Madison, WI    53703
(608) 310−3560
bender@mwbattorneys.com

Aubrey E. Baldwin (*admitted pro hac vice*)
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR 97219
Office: (503) 768-6929
abaldwin@lclark.edu

Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br><br>       Plaintiffs,<br><br>  v.<br><br>PPL MONTANA LLC, AVISTA CORP., PUGET SOUND ENERGY, PORTLAND GENERAL ELECTRIC CO., NORTHWESTERN CORP., and PACIFICORP,<br><br>      Defendants. | Case No. 1:13-cv-00032-DLC-JCL<br><br>AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND CIVIL PENALTIES<br><br>(violations of the Clean Air Act, 42 U.S.C. § 7604(a)) |

**INTRODUCTION**

1.      This is an Amended Complaint for injunctive and declaratory relief and civil penalties under the federal Clean Air Act, 42 U.S.C. §§ 7401–7671q. The original Complaint was filed in this case on March 6, 2013.  To date, the Defendants have not answered.

2.      Plaintiffs request for a jury in the original complaint is hereby withdrawn.

3.      The Sierra Club and the Montana Environmental Information Center (MEIC) (collectively, "Plaintiffs") bring this citizen suit under the Clean Air Act ("CAA") against the owners and operators of the Colstrip Steam Electric Station, including PPL Montana LLC, Avista Corporation, Puget Sound Energy, Portland General Electric Company, NorthWestern Corporation, and Pacificorp (collectively, "PPL" or "Defendants"), for their past and continuing violations of the CAA, the State of Montana's federally-approved State Implementation Plan ("SIP"), and Colstrip's federally-enforceable permits. Such violations occurred at the Colstrip Steam Electric Station (hereinafter "the Colstrip plant").

4.      In summary, Defendants violated and are violating the Clean Air Act and Montana's SIP by:

2

a.　　Constructing, altering or modifying the Colstrip plant without complying with the permitting requirements applicable to modifications to existing air pollution sources under the Clean Air Act and the Montana SIP;

b.　　Operating the modified Colstrip plant without the permits required of modified sources under the Clean Air Act and the Montana SIP; and

c.　　Operating the modified Colstrip plant with the emission limitation known as Best Available Control Technology.

## JURISDICTION AND VENUE

5.　　Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a) (Clean Air Act jurisdiction). The requested relief is proper under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 7413, 7604(a).

6.　　To the extent required by 42 U.S.C. § 7604(b), Plaintiff sent sixty-day notices of intent to sue for violations of the Clean Air Act set forth in this Complaint on July 25, 2012, September 27, 2012, November 27, 2012, December 1, 2012, and July 27, 2013.

7.　　Plaintiffs sent copies of the sixty-day notice letters to Defendants and all officers of the Montana Department of Environmental Quality ("DEQ") and

the U.S. Environmental Protection Agency ("EPA") required to receive such notice by 42 U.S.C. § 7604(b) and 40 C.F.R. § 54.2.

8.     Venue is properly vested in this Court pursuant to 42 U.S.C. § 7604(c), because the Defendants' Colstrip facility is located in Rosebud County. Rosebud County is located in the District of Montana.

9.     According to the District of Montana Local Rule 3.2(b) and Mont. Code Ann. Section 25-2-124, the proper Division for this case is the Billings Division, which includes Rosebud County.  Under Section 25-2-124, the proper place of trial for the recovery of a penalty or forfeiture imposed by statute is the county where the cause or some part thereof arose.  The cause of action or some part thereof arose at the Colstrip plant in Rosebud County.

## PARTIES

10.     Sierra Club and MEIC are environmental organizations with long histories of service to the residents and communities in Montana and in the communities that are most directly affected by the Colstrip plant.

11.     The Sierra Club has been working to protect communities, wild places, and the planet since 1892. With 1.4 million members and supporters throughout the United States, including in Montana, the Sierra Club is the nation's largest and most influential grassroots environmental organization. The Sierra Club is dedicated to the protection and preservation of the natural and

human environment and has identified the Colstrip plant as a major source of air and water pollution in the state of Montana.

12.     MEIC is a member-supported advocacy and public education organization based in Helena, Montana that works to protect and restore Montana's natural environment. Since its founding in 1973, MEIC has lobbied and litigated at the state and federal levels to prevent degradation of air and water quality and natural resources.  MEIC is also dedicated to assuring that state and federal officials comply with and fully uphold the laws of the United States that are designed to protect the environment from pollution.  Recent MEIC advocacy efforts have focused on curbing activities that contribute to global warming, including coal combustion at power plants.

13.     PPL Montana LLC is a Delaware corporation, operates the Colstrip plant, and is a co-owner of Units 1, 2, and 3.

14.     Avista Corporation is a Washington corporation and is a co-owner of Units 3 and 4.

15.     Puget Sound Energy is a Washington corporation and is a co-owner of all four units.

16.     Portland General Electric Company is an Oregon corporation and is a co-owner of Units 3 and 4.

17.     NorthWestern Corporation is a Montana corporation and is a co-owner of Unit 4.

18.     PacifiCorp is an Oregon corporation and is a co-owner of Units 3 and 4.

## PLAINTIFFS' INJURIES

19.     The Colstrip plant is a coal-fired plant located east of Billings, Montana.  Units 1 and 2 generate 307 net MW of electricity each, and Units 3 and 4 generate 740 net MW of electricity each. Colstrip Units 1 and 2 began commercial operation in 1975 and 1976, and Units 3 and 4 began commercial operation in 1984 and 1986. The Colstrip plant is the second largest coal-fired project west of the Mississippi, which burns12 train cars of coal every hour, one every five minutes.  As a result of burning so much coal, massive amounts of air pollution, including sulfur oxides ($SO_x$), nitrogen oxides ($NO_x$), carbon dioxide ($CO_2$), carbon monoxide (CO), mercury, and particulate matter, are released into the atmosphere. Individually and collectively these pollutants contribute to global warming, acid rain, regional haze, formation of ground level ozone or smog, pollution of surface waters, and tiny soot particles that cross from the lungs into the human bloodstream.

20.     The Colstrip plant is the single largest source of $SO_2$ emissions in Montana, releasing approximately 12,000 tons of $SO_2$ in 2011.  The Colstrip

6

plant, alone, accounted for more than half of Montana's stationary source $SO_2$ emissions and more than five times the amount of $SO_2$ emitted from the next highest emitting stationary source in Montana. $SO_2$ pollution is "a medically recognized threat to human health"; "high levels of pollution sustained for periods of days can kill." *Ohio Power Co. v. US EPA*, 729 F.2d 1096, 1097–98 (6th Cir. 1984). It forms sulfates, sulfuric acid mist, and other chemical derivatives that aggravate respiratory illness, contribute to acid deposition, fall to earth as acid rain, and cause haze.

21.     The Colstrip plant is the largest stationary source of $NO_x$ in Montana, releasing approximately 15,000 tons of $NO_x$ in 2011. The plant was responsible for more than half of $NO_x$ emissions from permitted stationary sources statewide and emitted over ten times as much $NO_x$ as the next highest emitting stationary source. $NO_x$ contributes to acid rain, diminishes water quality, impairs visibility and causes ground-level ozone, or smog, which triggers serious respiratory problems. $NO_x$ emissions also exacerbate atmospheric ozone depletion, and cause eutrophication of water bodies.

22.     The Colstrip plant is also a major source of particulate matter, or "soot." Particulate matter emissions vary in size and include fine particles ($PM_{2.5}$, or particles 2.5 micrometers or smaller in diameter) and coarse dust ($PM_{10}$, or particles less than 10 micrometers in diameter). According to

7

Montana's 2011 emissions data, the Colstrip plant released over 1,300 tons of $PM_{10}$ in 2011, much of which also constitutes $PM_{2.5}$.  Breathing particulate pollution causes premature death, heart attacks, strokes, birth defects, asthma attacks, lung damage, Sudden Infant Death Syndrome and low birth weight. Particle pollution is especially dangerous for the elderly, children, and those with respiratory illnesses.  Particulate pollution also causes haze and impairs visibility and alters nutrient balances in waters and soils.

23.    The Colstrip plant's particulate matter emissions contain many toxic heavy metals, including mercury.  The plant released 105 pounds of mercury in 2011.  Mercury emissions from the Colstrip plant pollute waterways and deposit onto plants, land, and structures.  Mercury is a potent neurotoxin linked to negative biological effects on human health, including effects on fetuses, developmental delays in children, retardation, and autism.  Mercury does not dissipate in the environment; rather, it bioaccumulates in fish and wildlife populations and persists indefinitely.

24.    Plaintiffs' members, staff and volunteers live, work, recreate, own property, fish, hunt, study and pursue spiritual practices in the areas most immediately affected by the Colstrip plant.  The Colstrip plant's illegal air pollution injures Plaintiffs' members, staff and volunteers' aesthetic, recreational, environmental, spiritual, economic, educational and health interests

8

in these areas.  Poor air quality injures human health, fish and wildlife, vegetation, visibility, water quality, cultural resources, and property in areas used by Plaintiffs' members.  Unless the relief requested herein is granted, the Colstrip plant's violations of the Clean Air Act will continue to injure human health, fish and wildlife, vegetation, visibility, water quality, cultural resources, and property in areas used by Plaintiffs' members.

25.   Plaintiffs' members, volunteers and staff have seen the Colstrip plant's smoke stacks and pollution leaving the stacks as they live, travel and recreate in Eastern Montana.  Plaintiffs' members, volunteers and staff find the plant, its stack, and the pollution that leaves the stack aesthetically displeasing and ugly.  Moreover, they are aware of the health and environmental impacts associated with the pollution leaving the stack and are concerned about harm to their health and the surrounding environment, including the natural resources they own, use and enjoy, caused by the Colstrip plant's pollution.

26.   Plaintiffs' members, volunteers and staff are concerned about the impacts of $NO_x$ emissions from the Colstrip plant on their health and the natural and cultural resources they use, own and enjoy.  They are reasonably concerned that $NO_x$ emitted from the Colstrip plant contributes to the formation of very fine particles that penetrate deeply into sensitive parts of lungs and damage health, cause premature death, breathing problems, damage lung tissue, and cause or

worsen emphysema, bronchitis and heart disease.  They are also concerned because $NO_x$ forms ground-level ozone, which causes other health problems and damages plants and because $NO_x$ spoils visibility by contributing to regional haze, contributes to excess nitrogen deposition that harms plants and aquatic ecosystems, contributes to acid rain which damages plants and cultural resources, and forms compounds with common organic chemicals and ozone that are toxic, some of which cause biological mutations, such as nitrate radicals, nitroarenes, and nitrosamines.

27.     Plaintiffs' members are also reasonably concerned about the excess $NO_x$ pollution from the Colstrip plant because it can exacerbate ozone depletion in the upper atmosphere, resulting in more harmful UVA and UVB sun rays.

28.     Plaintiffs' members, volunteers and staff are reasonably concerned about the impacts of $SO_2$ emissions from the Colstrip plant on their health and the natural and cultural resources they use and enjoy.  $SO_2$ emitted from the Colstrip plant causes a wide variety of health problems, including premature death, respiratory problems like asthma, and aggravation of heart disease. People with asthma who are active outdoors, children, the elderly and people with heart or lung disease are particularly susceptible to the health effects of $SO_2$.  $SO_2$ emitted from the Colstrip plant also degrades visibility by forming regional haze, contributes to acid rain that damages forests and crops, changes

10

the makeup of soil and makes lakes and streams acidic and unsuitable for fish.

Continued exposure to acid rain can change the natural variety of plants and

animals in the ecosystem.  These effects injure Plaintiffs' members' interests in

their health and the health of the places they live, work, recreate, own property,

grow crops, study and pursue spiritual practices.

29.    The Colstrip plant's illegal and excessive discharges of pollution

injure Plaintiffs' members' diverse interests.  These interests include, but are not

limited to: 1) breathing air free from the Colstrip plant's excessive pollutant

emissions, 2) eating fish free from contaminants attributable to the Colstrip

plant's pollution, 3) enjoying the natural ecology of the region free from air

pollution-related impacts, including hiking, and viewing and photographing

plants and wildlife, 4) viewing scenery unimpaired by the plant and its pollution,

or by the smog, haze, and other aesthetic damage caused (in whole or in part) by

the Colstrip plant's emissions, 5) preventing excessive health care costs and

other economic damages caused by or contributed to by the Colstrip plant's

pollutant discharges, 6) enjoying the region's cultural and spiritual resources that

are susceptible to $NO_x$ and $SO_2$ pollution-related impacts, and 7) benefiting from

economic resources such as crop and timber land, salmon, and winter recreation

businesses that Plaintiffs reasonably fear will be adversely impacted by the

Colstrip plant's pollution.  Plaintiffs' members' interests have been, and unless

11

the relief requested herein is granted, will continue to be, adversely affected by

PPL's violations of the CAA.

30.     Plaintiffs' members, staff and volunteers also suffer procedural harm

from Defendants' failure to satisfy notification and approval procedures

mandated by the plant's Title V permit and Montana's SIP, and failure to satisfy

the PSD review requirements at the Colstrip plant.  Such a review must include,

*inter alia*, analysis of, and compliance with, Best Available Control Technology

("BACT") emissions limits, demonstration that the source will not cause or

contribute to a violation of the national ambient air quality standards

("NAAQS") or PSD increment, demonstration that the source will not impair

visibility in federally protected parks, wilderness areas, and tribal lands and

opportunities for public participation.  Defendants' failure to comply with these

important obligations, which sustain the CAA's core goals, forecloses Plaintiffs

and Plaintiffs' members from participating in these critical processes.

## LEGAL BACKGROUND

31.     Part C of the Clean Air Act ("Prevention of Significant Deterioration

of Air Quality") requires states to adopt emission limitations and other measures

as necessary to prevent significant deterioration of air quality.  42 U.S.C. §§

7470–7492.  Central to the program is a requirement that any facility

constructing or modifying, and subsequently operating a new or modified

"major emitting facility," obtain and comply with a specific permit for the project.  42 U.S.C. § 7475. Additionally, the new or modified facility is subject to best available control technology ("BACT") emission limitations and must demonstrate that its emissions will not cause violations of air quality standards nor adversely impact visibility or other air quality related values of special areas such as National Parks.  42 U.S.C. § 7475(a)(1)-(5).

32.     Montana promulgated PSD program implementation regulations in 1982, which EPA approved into Montana's federally enforceable state implementation plan ("SIP") in 1983. 48 Fed. Reg. 20231 (May 5, 1983).  The State's PSD and related air quality permitting regulations are currently codified within ARM § 17, Chapter 8, Subchapters 7, 8, 10 and 11.

33.     Montana's PSD program applies to any "major stationary source," including the Colstrip plant.  ARM 17.8.801(22)(a)(i).

34.     The specific requirements within the PSD program apply to any "major modification" at the Colstrip plant, which is defined as "any physical change in, or change in the method of operation of [the plant] that would result in a significant net emissions increase of any pollutant subject to regulation under" the federal Clean Air Act. ARM § 17.8.801(20).

35.     A "significant" net emissions increase is defined as a rate of emissions that would equal or exceed a pollutant-specific emission threshold, such as 40

13

tons per year for $SO_2$ or $NO_x$ and 15 tpy for $PM_{10}$.  ARM 17.8.801(28)(a).

Because EPA has not yet approved Montana's 10 tons-per-year "significant"

threshold for $PM_{2.5}$, the existing SIP controls and defines a significant emission

of $PM_{2.5}$ as "any emission rate."  ARM 17.8.801(28)(b).

36.    A "net emissions increase" is "the amount by which the sum of the

following exceeds zero: (i) any increase in actual emissions from a particular

physical change or change in the method of operation at a stationary source; and

(ii) any other increases and decreases in actual emissions at the source that are

contemporaneous with the particular change and are otherwise credible." ARM

§17.8.801(24).

37.    The definition of an emissions increase refers to "actual emissions,"

which is a term defined in different ways for different periods of time.  For the

period of time preceding a change, "actual emissions" is defined as the average

annual emission rate during the two years preceding the change, unless the

Montana Department of Environmental Quality determines that another two year

period is more representative of normal source operations.  ARM 17.8.801(1)(a).

38.    The "actual emissions" following a change must be estimated

because they would not have occurred at the time the PSD program applicability

is supposed to occur: prior to undertaking a physical or operational change.

Montana's implementing regulations define the post-project "actual emissions"

14

by providing two options for estimating such emissions: they are either the "source-specific allowable emissions" or the "potential to emit."  ARM 17.8.801(1)(b), (c).  The choice between these two options depends on whether the unit at issue has "begun normal operations" as of the "particular date" for which the emissions are estimated. ARM §17.8.801(1)(c).

39.     "Allowable emissions" are the facility's emission rate "calculated using the maximum rated capacity of the source (unless the source is subject to federally enforceable limits which restrict the operating rate or hour of operation, or both) and the most stringent" of federally enforceable emission limits.  ARM 17.8.801(2).

40.     "Potential to emit," which applies when the facility is deemed not to have begun "normal operations" in its changed form prior to determining PSD applicability, is defined as "the maximum capacity of a stationary source to emit a pollutant under its physical and operational design," taking into account any federally enforceable "physical or operational limitation on the capacity of the source to emit a pollutant." ARM §17.8.801(25).

41.     The PSD program also provides that any "major modification shall apply BACT for each pollutant subject to regulation under the FCAA for which it would be a significant net emissions increase at the source." ARM § 17.8.819(3).  BACT is an "emissions limitation (including a visible emissions

standard) based on the maximum degree of reduction for each pollutant subject

to regulation under the federal Clean Air Act," that takes various factors into

account.  ARM § 17.8.801(6).

42.     In addition, the Montana PSD program prohibits any major

modification from causing or contributing to a violation of the NAAQS "at any

locality" downwind of the facility– unless the source provides for other

emissions reduction that compensate for the adverse impact. ARM § 17.8.1004,

ARM 17.8.820, and ARM 17.8.749(3).  The Montana PSD program also

prohibits any major modification from causing or contributing to a violation of

the maximum allowable increases over baseline concentration, also known as the

"ambient air increments," in any area.  ARM 17.8.820; ARM 17.8.804.

43.      In Montana, the federally-enforceable SIP further provides that no

person can install, modify, utilize or operate a facility without first obtaining a

Montana air quality permit.  ARM 17.8.743(1)(e) and its predecessors.  Such

Montana air quality permit must include all conditions necessary to ensure

compliance with the Federal and state Clean Air Acts and the rules adopted

thereunder, including the PSD program.

44.     Additionally, new and modified sources in Montana must install the

"maximum control capability that is technically practicable and economically

16

feasible," which can be more stringent, but never less stringent than BACT. ARM 17.8.752(1)(a).

**Enforcement Provisions**

45.     The Clean Air Act provides a cause of action for "any person" to file suit against any other person who is alleged to have violated or be in violation of an emission standard or limitation under the CAA.  42 U.S.C. § 7604(a)(1).

46.     Additionally, the Act provides a separate cause of action by any person against any other person who constructs any new or modifies any existing major facility without the required permits.  42 U.S.C. § 7604(a)(3).

47.     The Plaintiffs and Defendants in this case are all "persons" within the meaning of the Clean Air Act.  42 U.S.C. § 7602(e).

48.     An "emission standard or limitation," within the meaning of 42 U.S.C. § 7604(a)(1) is defined in 42 U.S.C. § 7604(f)(4).

49.     The Court is authorized to order injunctive relief as well as penalties in amounts up to $27,500 per day for each violation occurring before March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but before January 12, 2009, and $37,500 for each day after January 12, 2009.  28 U.S.C. § 2461; 31 U.S.C. § 3701; 40 C.F.R. Part 19.

50.     Penalties are paid to the United States Treasury, except that the Court may authorize that penalties up to $100,000 be paid into a beneficial

17

mitigation project fund used to enhance the public health or environment.  42
U.S.C. § 7604(g)(2).

## FACTUAL BACKGROUND

51.    Defendants modified the Colstrip plant at various times since
initiating operations without obtaining the required permits, without complying
with required pollution control requirements, and without making the required
demonstration that ambient air quality standards and air quality related values
are protected.

52.     Each of the physical and operational changes set forth herein would
result in significant net emission increases of sulfur dioxide, nitrogen oxide, and
particulate matter (including PM, $PM_{10}$, and $PM_{2.5}$). These changes constitute
major modifications under the CAA's Part C PSD program, 42 U.S.C.
§§7411(a)(4), 7475, 7479(2)(C), and the Montana PSD Program, ARM
§ 17.8.801(20) and its predecessors, 40 C.F.R. §52.1370(c). These changes
include:

53.    Modifying Unit 1 in 2012 by, among other changes, undertaking the
following projects: Project ID # 10015185 (Gennerex Replacement), Project ID
# 10015187 (Condenser Tube Replacement), Project ID # 10015199 (Boiler
Economizer Replacement), Project ID # 10015209 (Boiler Water Wall
Replacement), Project ID # 10017144 (Generator Rotor Rewind), Project ID #

18

10017147 (Low Pressure Turbine Overhaul), Project ID # 10017149 (Turbine/Generator Base Overhaul), Project ID # 10017154 (Air Preheater Basket Replacement), Project ID # 10017155 (Air Preheater Gearbox Replacement), Project ID # 10017156 (Boiler Coutant Slope Rebuild), and Project ID # 10017176 (Cooling Tower Structure Rebuild).  These projects were all included in "Super Project # 10009470."

54.     Modifying Unit 2 in 2011 by, among other changes, undertaking the following projects: Project ID # 10013595 (Gennerex Replacement), Project ID # 10013596 (Condenser Tube Replacement), Project ID # 10013597 (Feedwater Heater 2-6 Replacement), Project ID # 10013624 (Boiler Water Wall Replacement), Project ID # 10015184 (Turbine Generator Base Overhaul), Project ID # 10015200 (Boiler Vent Fans Replacement), Project ID # 10015201 (Boiler Coutant Slope Rebuild), Project ID # 10015206 (Boiler Superheat Lead Replacement), and Project ID # 10016802 (Bottom Ash Hopper Replacement).

55.     Modifying Unit 3 in 2011 by, among other changes, undertaking the following projects: Project ID # 10013637 (Replacement of the Low Pressure Turbine), Project ID # 10015268 (Turbine Generator Base Overhaul), Project ID # 10015269 (Generator Reliability), Project ID # 10015276 (Boiler Coutant Slope Rebuild), Project ID # 10015281 (Air Preheater Basket Replacement),

Project ID # 10015291 (Air Preheater Gearbox Rebuild), and Project ID #

10015270 (Intermediate Pressure Turbine Overhaul).

56.    Modifying Unit 4 in 2009 by, among other changes, undertaking the

following projects:  Project ID # 10012904 (LP1 & LP2 Turbine Rebuild),

Project ID # 10012231 (Low Pressure Turbine), Project ID # 10012260 (Capital

Project Support), Project ID # 10012286 (Base Turbine-Generator Overhaul),

Project ID # 10012297 (Air Preheater Basket Replacement), and Project ID #

10012242 (Boiler Water Wall Replacement).

57.    Modifying Unit 2 in 2008 by, among other changes, undertaking the

following projects:  Project ID # 10009541 (High Pressure/Intermediate Pressure

Turbine Replacement), 10009891 (Generator Rewind), 10010936

(Turbine/Generator Base Overhaul), 10010937 (Low Pressure Turbine

Overhaul), 10010944 (Boiler Safety Valve Replacement), 10010947 (Boiler

Water Wall Replacement), 10010951 (Cooling Tower Rebuild), 10111204

(Boiler Burner Front Replacement), 10011020 (Capital Project Support), and

10008826 (Plant Control System Replacement).

58.    Modifying Unit 3 in 2007 by, among other changes, undertaking the

following projects:  Project ID # 10009543 (High Pressure Turbine

Replacement), Project ID # 10009923 (Generator Reliability Unit 3), Project ID

20

# 10009924 (Low Pressure Turbine Reseal), and Project ID # 10009930 (Boiler Reheat Safety Valve).

59.    Modifying Unit 4 in 2006 by, among other changes, undertaking the following projects: Project ID # 10009289 (High Pressure Turbine Replacement), Project ID # 10007757 (Feedwater Heater Replacement, 4-7), Project ID # 10007751 (Plant Control System Upgrade, U3-4), Project ID # 10009299 (Boiler Coutant Bottom), Project ID # 10009586 (Generator Reliability), and Project ID # 10009587 (Intermediate Pressure Turbine Overhaul).

60.    Modifying Unit 1 in 2006 by, among other changes, undertaking the following projects: Project ID # 10009263 (Replacement of the High Pressure and Intermediate Pressure Turbines), Project ID # 10009489 (Boiler Rear Coutant Bottom Replacement), Project ID # 10009490 (Boiler Reheat Section Replacement), Project ID # 10009491 (Boiler Safety Valve Replacement), Project ID # 10009493 (Boiler Water Wall Replacement), Project ID # 10009496 (Feedwater Heater 1-6 Replacement), Project ID # 10009503 (Turbine Valve Overhaul), and Project ID # 10011532 (Plant Controls, Phase 1, Units1-2).

61.    Modifying Unit 3 in 2001 by, among other changes, undertaking the following projects: Replacing the reheater pendants and substantially all of the

nose arch (Work Order #'s 10007435 and 10007425) and modifying the turbine generator (Work Order # 10007422).

62.    Each of the foregoing constitutes a major modification for, among other pollutants, $SO_2$, NOx, and particulate matter.  No air quality permit has been obtained for any of these projects, and no application was submitted to revise the Title V operating permit for any of these modifications.

63.    Each day that each modified unit operates following the modifications above, the unit emits at rates that exceed BACT for $SO_2$, NOx, and particulates.

64.    Additionally, because it was a violation of the Colstrip plant's Title V permit to make a modification without applying to revise the Title V permit, and because Defendants did not identify their violation of that requirement in their annual certifications to Montana DEQ and EPA, Defendants are in continuous violation of the requirement to make accurate compliance certifications.

## CLAIMS FOR RELIEF

### Plaintiffs' First Claim for Relief

**Modifying Unit 1 in 2012 (*see* Paragraph 53) without
Obtaining a PSD Permit**

65.    Plaintiffs allege all preceding paragraphs as if set forth herein.

66.    Defendants modified Unit 1 in 2012 by making a number of changes, including the projects described in Paragraph 53 and other work associated with these changes.

67.    The changes made to Unit 1 in 2012 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

68.    Thus, Defendants' activity at Unit 1 in 2012 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

69.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 1 modification in 2012, in violation of 42 U.S.C. § 7475 and ARM 17.8.743 and 17.8.818(1).

70.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

71.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Second Claim for Relief

**Operating Unit 1 Following the Modification in 2012 (*see* Paragraph 53) Without the Required Montana Air Quality Permit**

72.     Plaintiffs allege the preceding paragraphs as if set forth herein.

73.     Because Unit 1 was modified in 2012 (*see* Paragraph 53), Defendants are obligated to obtain a permit to thereafter operate the modified plant pursuant to ARM 17.8.743(1)(e).   Defendants failed to do so, and therefore each day that the Colstrip plant operated following the 2012 modification is a violation of that requirement.

74.     Unless restrained by an order of this Court, these and similar violations of the Montana SIP will remain ongoing.

75.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Third Claim for Relief

**Operating Unit 1 Following the Modification in 2012 (*see* Paragraph 53) in Violation of Best Available Control Technology Limits**

76.      Plaintiffs allege the foregoing paragraphs as if set forth herein.

77.     The changes made to Unit 1 in 2012 (*see* Paragraph 53)  triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2012 changes.

24

78.    Each day that Unit 1 operated after the major modification in 2012, Unit 1 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

79.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

80.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Fourth Claim for Relief

### 2009 Modification of Unit 4 (*see* Paragraph 56)
### Without a PSD Permit

81.    Plaintiffs allege all preceding paragraphs as if set forth herein.

82.    Defendants modified Unit 4 in 2009 by making a number of changes, including the projects described in Paragraph 56 and other work associated with these changes.

83.    The changes made to Unit 4 in 2009 would result in a significant net emissions increase of, at least, $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

84.     Thus, Defendants' activity at Unit 4 in 2009 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

85.     Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 4 changes in 2009, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

86.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

87.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Fifth Claim for Relief

### Operating Unit 4 following the 2009 Modification (*see* Paragraph 56) Without the Required Montana Air Quality Permit

88.     Plaintiffs allege all preceding paragraphs as if set forth herein.

89.     Because Unit 4 was modified in 2009 (*see* Paragraph 56), Defendants are obligated to obtain a permit to thereafter operate the modified plant pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and

therefore each day that the modified unit operated is a violation of that requirement.

90.     Unless restrained by an order of this Court, these and similar violations of the Montana SIP will remain ongoing.

91.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

### Plaintiffs' Sixth Claim for Relief

**Operating Unit 4 following the 2009 Modification (*see* Paragraph 56) in Violation of Best Available Control Technology Limits**

92.     Plaintiffs allege all preceding paragraphs as if set forth herein.

93.     The modification of Unit 4 in 2009 (see Paragraph 56) triggered the obligation to comply with BACT for $SO_2$, NOx, and particulate matter, but Defendants have not complied with such limits following the 2009 changes.

94.     Each day that Unit 4 operated after the major modification in 2009, Unit 4 emitted pollution without BACT is a violation of ARM 17.8.819(3).

95.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

96.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Seventh Claim for Relief**

**2008 Modification of Unit 2 (*see* Paragraph 57)**
**Without a PSD Permit**

97.     Plaintiffs allege all preceding paragraphs as if set forth herein.

98.     Defendants modified Unit 2 in 2008 by making a number of changes, including the projects described in Paragraph 57 and other work associated with these changes, which would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

99.     This constituted a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

100.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 2 modification in 2008, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

101.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

102.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Eighth Claim for Relief

### Operating Unit 2 following the 2008 Modification (*see* Paragraph 57) Without the Required Montana Air Quality Permit

103.    Plaintiffs allege all preceding paragraphs as if set forth herein.

104.    Because Unit 2 was modified in 2008 (*see* Paragraph 57), Defendants are obligated to obtain a Montana Air Quality Permit pursuant to ARM 17.8.743(1)(e) and its predecessors to thereafter operate the modified unit. Defendants failed to do so, and therefore each day that the unit operated after the 2008 changes constitutes a violation.

105.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP will remain ongoing.

106.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Ninth Claim for Relief

### Operating Unit 2 Following the 2008 Modification (*see* Paragraph 57) Without Complying with Best Available Control Technology Limits

107.    Plaintiffs allege all preceding paragraphs as if set forth herein.

108.    The changes made to Unit 2 in 2008 (*see* Paragraph 57) triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following the 2008 changes.

29

109.    Each day that Unit 2 operated after the major modification in 2008, Unit 2 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

110.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

111.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Tenth Claim for Relief

### 2007 Modification of Unit 3 (*see* Paragraph 58)
### Without a PSD Permit

112.    Plaintiffs allege all preceding paragraphs as if set forth herein.

113.    Defendants modified Unit 3 in 2007 by making a number of changes, including the projects described in Paragraph 58 and other work associated with these changes.

114.    The changes to Unit 3 in 2007 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

115.     Thus, Defendants' activity at Unit 3 in 2007 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

116.     Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 3 HP turbine replacement in 2007, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

117.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

118.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

**Plaintiffs' Eleventh Claim for Relief**

**Operating Unit 3 following the 2007 Modification (*see* Paragraph 58)
Without the Required Montana Air Quality Permit**

119.     Plaintiffs allege all preceding paragraphs as if set forth herein.

120.     Because Unit 3 was modified in 2007 (*see* Paragraph 58), Defendants were required to obtain a Montana Air Quality Permit for the modification to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its

predecessors.  Defendants failed to do so, and therefore each day that Unit 3 operated since the 2007 modification violates that requirement.

121.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP will remain ongoing.

122.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twelfth Claim for Relief

### Operating Unit 3 Following the 2007 Modification (*see* Paragraph 58) Without Complying with Best Available Control Technology Limits

123.    Plaintiffs allege all preceding paragraphs as if set forth herein.

124.    The 2007 major modification of Unit 3 (*see* Paragraph 58) triggered the obligation to comply with BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), but Defendants have not complied with such limits following that modification.

125.    Each day that Unit 3 operated after the major modification in 2007, Unit 3 emitted pollution without BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

126.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

127.     Plaintiffs have a cause of action for each such violation pursuant to 42
U.S.C. § 7604(a)(1).

### Plaintiffs' Thirteenth Claim for Relief

#### 2006 Modification of Unit 4 (*see* Paragraph 59)
#### Without a PSD Permit

128.     Plaintiffs allege all preceding paragraphs as if set forth herein.

129.     Defendants modified Unit 4 in 2006 by making a number of changes,
including the projects described in Paragraph 59 and other work associated with
these changes.

130.     The changes to Unit 4 in 2006 would result in a significant net
emissions increase of $NO_x$, $SO_2$, and/or particulate matter (PM, $PM_{10}$ and $PM_{2.5}$),
within the meaning of the Montana PSD program.

131.     Thus, Defendants' activity at Unit 4 in 2006 was a major modification
for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially
other pollutants.

132.     Defendants failed to obtain an air quality permit that satisfied the
requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 4 HP turbine
replacement project in 2006, in violation of 42 U.S.C. § 7475 and ARM
17.8.743, and its predecessors, and 17.8.818(1).

133.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

134.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Fourteenth Claim for Relief

**Operating Unit 4 following the 2006 Modification (*see* Paragraph 59) Without the Required Montana Air Quality Permit**

135.    Plaintiffs allege all preceding paragraphs as if set forth herein.

136.    Because Unit 4 was modified in 2006 (*see* Paragraph 59) , Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.  Defendants failed to do so, and therefore each day since on which Defendants operated the Colstrip plant, Defendants violated that requirement.

137.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP will remain ongoing.

138.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

**Plaintiffs' Fifteenth Claim for Relief**

**Operating Unit 4 Following the 2006 Modification (*see* Paragraph 59)
Without Complying with Best Available Control Technology Limits**

139.    Plaintiffs allege all preceding paragraphs as if set forth herein.

140.    The changes made to Unit 4 in 2006 (*see* Paragraph 59) triggered the

obligation to comply with BACT emission limits, but Defendants have not

complied with such limits following the 2006 modification.

141.    Each day that Unit 4 operated after the major modification in 2006,

Unit 4 emitted pollution without BACT for $SO_2$, NOx, and particulate matter

(PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

142.    Unless restrained by an order of this Court, these and similar

violations of the PSD provisions of the Act and Montana SIP will remain

ongoing.

143.    Plaintiffs have a cause of action for each such violation pursuant to 42

U.S.C. § 7604(a)(1).

**Plaintiffs' Sixteenth Claim for Relief**

**2006 Modification of Unit 1 (*see* Paragraph 60)
Without a PSD Permit**

144.    Plaintiffs allege all preceding paragraphs as if set forth herein.

145.    Defendants modified Unit 1 in 2006 by making a number of changes, including the projects described in Paragraph 60 and other work associated with these changes.

146.    The changes to Unit 1 would result in a significant net emissions increase of $NO_x$, $SO_2$, and/or particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), within the meaning of the Montana PSD program.

147.    Thus, Defendants' activity at Unit 1 in 2006 was a major modification for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$), and potentially other pollutants.

148.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 1 HP and IP turbine replacements in 2006, in violation of 42 U.S.C. § 7475 and ARM 17.8.743, and its predecessors, and 17.8.818(1).

149.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

150.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

## Plaintiffs' Seventeenth Claim for Relief

**Operating Unit 1 following the 2006 Modification (*see* Paragraph 60)
Without the Required Montana Air Quality Permit**

151.   Plaintiffs allege all preceding paragraphs as if set forth herein.

152.   Because Unit 1 was modified in 2006 (*see* Paragraph 60), Defendants
were obligated to obtain a Montana Air Quality Permit to thereafter operate the
modified unit pursuant to ARM 17.8.743(1)(e), and its predecessors.
Defendants failed to do so, and therefore each day since Defendants have
violated that requirement.

153.   Unless restrained by an order of this Court, these and similar
violations of the Montana SIP will remain ongoing.

154.   Plaintiffs have a cause of action for each such violation pursuant to 42
U.S.C. § 7604(a)(1).

## Plaintiffs' Eighteenth Claim for Relief

**Operating Unit 1 Following the 2006 Modification (see Paragraph 60)
Without Complying with Best Available Control Technology Limits**

155.   Plaintiffs allege all preceding paragraphs as if set forth herein.

156.   The changes made to Unit 1 in 2006 (*see* Paragraph 60) triggered the
obligation to comply with BACT emission limits, but Defendants have not
complied with such limits following the 2006 changes.

37

157.     Each day that Unit 1 operated after the major modification in 2006, Unit 1 emitted pollution without best BACT for $SO_2$, NOx, and particulate matter (PM, $PM_{10}$ and $PM_{2.5}$) is a violation of ARM 17.8.819(3).

158.     Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

159.     Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

### Plaintiffs' Nineteenth Claim for Relief

**2001 Modification of Unit 3 (*see* Paragraph 61)
Without a PSD Permit**

160.     Plaintiffs allege all preceding paragraphs as if set forth herein.

161.     Defendants modified Unit 3 in 2001 by making a number of changes, including the projects described in Paragraph 61 and other work associated with these changes.

162.     The changes to Unit 3 described in Paragraph 61 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter, within the meaning of the Montana PSD program.

163.    Thus, Defendants' activity described in Paragraph 61 was a major modification for $SO_2$, NOx, and particulate matter and potentially other pollutants.

164.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 3 changes described in Paragraph 61, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and 17.8.818(1) and their predecessors.

165.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

166.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1) and (3).

**Plaintiffs' Twentieth Claim for Relief**

**Operating Unit 3 Following the 2001 Modification (*see* Paragraph 61) Without the Required Montana Air Quality Permit**

167.    Plaintiffs allege all preceding paragraphs as if set forth herein.

168.    Because Unit 3 was modified in 2001 as described in Paragraph 61, Defendants were obligated to obtain a Montana Air Quality Permit to thereafter operate the modified unit pursuant to ARM 17.8.743(1)(e) and its predecessors.

Defendants failed to do so, and therefore each day that the modified units were operated since modification violated that requirement.

169.    Unless restrained by an order of this Court, these and similar violations of the Montana SIP will remain ongoing.

170.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twenty-First Claim for Relief

**Operating Unit 3 Following the 2001 Modification (*see* Paragraph 61) Without Complying with Best Available Control Technology Limits**

171.    Plaintiffs allege all preceding paragraphs as if set forth herein.

172.    The changes made to Unit 3 in 2001 (*see* Paragraph 61) triggered the obligation to comply with BACT emission limits, but Defendants have not complied with such limits following these changes.

173.    Each day that Unit 3 operated after the major modification described in Paragraph 61,  Unit 3 emitted pollution without BACT for $SO_2$, NOx, and particulate matter is a violation of ARM 17.8.819(3) and its predecessors.

174.    The duty to operate in compliance with BACT emission limitations is ongoing.

175.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

176.    Plaintiffs have a cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(1).

## Plaintiffs' Twenty-Second Claim for Relief

### 2011 Modification of Unit 2 (*see* Paragraph 54)
### Without a PSD Permit

177.    Plaintiffs allege all preceding paragraphs as set forth herein.

178.    Defendants modified Unit 2 in 2011 by making a number of changes, including the projects described in Paragraph 54 and other work associated with these changes.

179.    The changes to Unit 2 described in Paragraph 54 would result in a significant net emissions increase of $NO_x$, $SO_2$, and particulate matter, within the meaning of the Montana PSD program.

180.    Thus, Defendants' activity described in Paragraph 54 was a major modification for $SO_2$, NOx, and particulate matter and potentially other pollutants.

181.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 2 changes

described in Paragraph 54, in violation of 42 U.S.C. § 7475, and ARM 17.8.743

and 17.8.818(1) and their predecessors.

182.    Unless restrained by an order of this Court, these and similar

violations of the PSD provisions of the Act and Montana SIP will remain

ongoing.

183.    Plaintiffs have a cause of action for each such violation pursuant to 42

U.S.C. § 7604(a)(3).

## Plaintiffs' Twenty-Third Claim for Relief

### 2011 Modification of Unit 3 (*see* Paragraph 55)
### Without a PSD Permit

184.    Plaintiffs allege all preceding paragraphs as if set forth herein.

185.    Defendants modified Unit 3 in 2011 by making a number of changes,

including the projects described in Paragraph 55 and other work associated with

these changes.

186.    The changes to Unit 3 described in Paragraph 55 would result in a

significant net emissions increase of $NO_x$, $SO_2$, and particulate matter, within the

meaning of the Montana PSD program.

187.    Thus, Defendants' activity described in Paragraph 55 was a major

modification for $SO_2$, NOx, and particulate matter and potentially other

pollutants.

42

188.    Defendants failed to obtain an air quality permit that satisfied the requirements in ARM 17.8 Subchapters 7, 8, 10 or 11, for the Unit 2 changes described in Paragraph 55, in violation of 42 U.S.C. § 7475, and ARM 17.8.743 and 17.8.818(1) and their predecessors.

189.    Unless restrained by an order of this Court, these and similar violations of the PSD provisions of the Act and Montana SIP will remain ongoing.

190.    Plaintiffs have cause of action for each such violation pursuant to 42 U.S.C. § 7604(a)(3).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

191.    Declare that Defendants have violated and are violating the Clean Air Act;

192.    Permanently enjoin Defendants from operating the Colstrip plant except in accordance with the Clean Air Act, the Montana SIP, and all federally-enforceable air quality permits;

193.    Order Defendants to obtain required permits, submit required permit applications, and submit correct compliance certifications;

194.    Order Defendants to remediate the environmental damage and ongoing impacts resulting from PPL's violations;

195.    Assess civil penalties against Defendants of $32,500 per day per violation occurring through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009, pursuant to 42 U.S.C. § 7413 and 40 C.F.R. § 19.4;

196.    Order that, pursuant to 42 U.S.C. § 7604(g)(2), $100,000.00 of the civil penalties assessed against Defendants be used in beneficial mitigation projects to enhance public health and the environment in the areas where Plaintiffs' members live, work and recreate and that are adversely impacted by Defendants' illegal emissions;

197.    Retain jurisdiction of this action to ensure compliance with the Court's Order;

198.    Award Plaintiffs their costs of litigation, including reasonable attorney fees, pursuant to 42 U.S.C. § 7604(d); and

199.    Grant such other relief as the Court deems just and proper.

Dated this 27th day of September, 2013

> Respectfully submitted,
>
> /s/ Roger Sullivan
> Roger Sullivan
>
> /s/ John Heenan
> John Heenan
>
> /s/ George Hays
> George E. Hays
>
> /s/ David Bender
> David C. Bender
>
> /s/ Aubrey Baldwin
> Aubrey E. Baldwin
>
> *Counsel for Plaintiffs*