William Bumpers (admitted *pro hac vice*)
Joshua B. Frank (admitted *pro hac vice*)
Megan H. Berge (admitted *pro hac vice*)
Christine G. Wyman (admitted *pro hac vice*)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 639-7700
Fax: (202) 639-7890

**COUNSEL FOR DEFENDANTS**

Stephen R. Brown
Garlington, Lohn & Robinson, PLLP
350 Ryman Street
Missoula, Montana  59802
Telephone:  (406) 523-2500
Fax: (406) 523-2595

**COUNSEL FOR AVISTA
CORPORATION
AND PACIFICORP**

William W. Mercer
Michael P. Manning
Holland & Hart LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana  59103-0639
Telephone:  (406) 252-2166
Fax:  (406) 252-1669

**COUNSEL  FOR  PPL  MONTANA,  LLC,
PUGET     SOUND     ENERGY     AND
PORTLAND   GENERAL   ELECTRIC
COMPANY**

Stephen D. Bell
Dorsey & Whitney LLP
Millennium Building
125 Bank Street, Suite 600
Missoula, Montana  59802-4407
Telephone: (406) 721-6025
Fax: (406) 543-0863

B. Andrew Brown (admitted *pro hac vice*)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402
Telephone: (612) 340-2600
Fax: (612) 340-2868

**COUNSEL FOR
NORTHWESTERN CORPORATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER, | ) ) ) ) | CV 13-32-BLG-DLC-JCL |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| PPL MONTANA LLC, AVISTA CORPORATION, PUGET SOUND ENERGY, PORTLAND GENERAL ELECTRIC COMPANY, NORTHWESTERN CORPORATION, PACIFICORP, | ) ) ) ) ) ) | **DEFENDANTS'   MEMORANDUM   IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT** |
| Defendants. | ) | |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................2

II.  THE PARTIAL MOTION TO DISMISS CONTINUES TO
     SUPPORT DISMISSAL OF THE MAJORITY OF PLAINTIFFS'
     CLAIMS IN THE AMENDED COMPLAINT................................................3

III. STANDARD OF REVIEW.......................................................................6

IV.  THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS
     ENTIRETY ........................................................................................6

     A.   The Third and Seventh Circuit Holdings Confirm that
          Plaintiffs' PSD Claims and BACT Claims for Conduct Prior to
          2008 are Time-Barred. ........................................................7

          1.   A PSD violation occurs at the time of construction and
               does not continue. .....................................................8

          2.   After expiration of the statute of limitations, emission are
               lawful and no injunction is proper. ...........................11

     B.   The Third and Seventh Circuit Holdings Confirm that
          Plaintiffs' BACT Claims Should Be Dismissed. ...............................12

          1.   BACT Claims are not independent claims. .............................12

          2.   This Court lacks jurisdiction over Plaintiffs' BACT
               claims. ..................................................................14

     C.   The Clean Air Act Citizen Suit Provisions Do Not Authorize
          Injunctive Relief for Plaintiffs' Alleged PSD and BACT
          Violations. ....................................................................15

     D.   Plaintiffs' Amended Complaint Fails to Allege Sufficient Facts
          to Support Their Claims. ...................................................18

          1.   Plaintiffs failed to allege any facts to support their
               allegations that multiple projects should be grouped
               together and considered a single "major modification." ..........18

2.  Plaintiffs' unspecified allegations regarding "other projects" should be dismissed from the Amended Complaint.............................................................24

V.  CONCLUSION..............................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................18, 23

*Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of
    Carpenters*,
    459 U.S. 519 (1983)..........................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................19, 22, 23, 24

*Fed. Election Comm'n v. Williams*,
    104 F.3d 237 (9th Cir. 1996) ............................................................11

*Gabelli v. SEC*,
    133 S. Ct. 1216 (2013).......................................................................10

*Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*,
    502 F.3d 1316 (11th Cir. 2007) ....................................................10, 14

*New Jersey v. Reliant Energy Mid-Atl. Power Holdings*,
    LLC, No. 07-cv-5298, 2009 WL 3234438 (E.D. Pa. Sept. 30, 2009)...............25

*Sierra Club v. Otter Tail Power Co.*,
    615 F.3d 1008 (8th Cir. 2010) ..........................................................14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................19

*United States v. EME Homer City Generation L.P.*,
    823 F. Supp. 2d 274 (W.D. Pa. 2011)...................................................18

*United States v. EME Homer City Generation, L.P.*,
    Nos. 11–4406, 11–4407, 11–4408, 2013 WL 4437219, __ F.3d __ (3d.
    Cir. Aug. 21, 2013) ..................................... 8, 9, 12, 13, 15, 16, 17, 18

*United States v. Midwest Generation, LLC*,
    720 F.3d 644 (7th Cir. 2013) .......................................................8, 9, 10, 11, 12

*United States v. U.S. Steel Corp*,
    2:12-CV-304, 2013 WL 4495665 (N.D. Ind. Aug. 21, 2013)............................14

*William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) ........................................................................22, 23

## FEDERAL STATUTES

42 U.S.C. § 7604(a) ........................................................................................14, 16

42 U.S.C. § 7604(f) ...............................................................................................14

## FEDERAL RULES AND REGULATIONS

40 C.F.R. § 52.21(b) .............................................................................................19

71 Fed. Reg. 54,235, 54,245 (Sept. 14, 2006) ..................................................20, 21

74 Fed. Reg. 2,376, 2,377 (Jan. 15, 2009) .........................................................20, 21

75 Fed. Reg. 19,567, 19,571 (April 15, 2010) ...................................................20, 21

Fed. R. Civ. P. 15(c)(1)(B) ......................................................................................4

## STATE REGULATIONS

Mont. Admin. R. 17.8.801 ................................................................................13, 19

Mont. Admin. R. 17.8.818 ......................................................................................19

## **EXHIBIT INDEX**

Exhibit A - Chart: Defendants' Arguments For Dismissal And Applicable Claims

Exhibit B - Chart: Comparison of Projects Associated with Original Complaint
         Versus Amended Complaint

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants PPL Montana, LLC, Avista Corporation, Puget Sound Energy, Inc., Portland General Electric Company, NorthWestern Corporation d/b/a/ NorthWestern Energy, and PacifiCorp (collectively "Defendants") respectfully submit this Memorandum in Support of their Motion to Dismiss the Amended Complaint.  Through this Motion, Defendants ask the Court to dismiss all claims asserted by Sierra Club and Montana Environmental Information Center (collectively "Plaintiffs") in Plaintiffs' Amended Complaint for Injunctive and Declaratory Relief and Civil Penalties ("Amended Complaint" or "AC") (Doc. 67), filed on September 27, 2013.

Because of the substantial time and resources expended by the Parties and the Court on the Partial Motion to Dismiss (Doc. 36) Defendants filed in response to the original Complaint, Defendants continue to rely on the relevant sections of their prior Partial Motion to Dismiss and file this Motion to Dismiss to elaborate on, and provide additional support for, the arguments for dismissal based on newly published case law and flaws in the Amended Complaint.[1]

---

[1] A chart of Defendants' arguments and the claims in the Amended Complaint to which they are applicable is attached as Exhibit A.  The chart both references arguments still applicable from the Partial Motion to Dismiss as well as arguments made herein.

1

## I.    INTRODUCTION

Defendants are the current owners of the Colstrip Steam Electric Station ("Colstrip" or "the Plant"),[2] a four-unit coal-fired generating plant located in Rosebud County, Montana.   On March 6, 2013, Plaintiffs initiated this action against Defendants pursuant to the citizen-suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), alleging violations of certain provisions of the Clean Air Act and the Montana State Implementation Plan ("SIP").   Compl. for Injunctive and Declaratory Relief and Civil Penalties ("Compl.") (Doc. 1).   Defendants filed a Partial Motion to Dismiss asking the Court to dismiss 36 of Plaintiffs' original 39 claims for failure to meet the requirements established by Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   *See* Defs.' Partial Mot. to Dismiss (Doc. 36).   Since briefing was completed on Defendants' Partial Motion to Dismiss in June 2013, *see* Reply in Supp. of Partial Mot. to Dismiss ("Defs.' PMTD Reply") (Doc. 52), decisions by the U.S. Courts of Appeals for the Third Circuit and the Seventh Circuit have offered additional support for Defendants' arguments for dismissal.

On September 27, 2013, Plaintiffs filed an Amended Complaint alleging two new claims associated with 16 separate projects that occurred at Colstrip in 2011.

---

[2] Ownership interest among the co-owners varies among unit, and not every co-owner owns each unit.

2

AC ¶¶ 177-190 (Doc. 67).  In addition, Plaintiffs significantly revamped twenty-one of their existing claims by revising the projects that purport to give rise to each claim – resulting in an additional 31 projects associated with these claims. Plaintiffs have withdrawn fifteen claims related to seven projects at Colstrip that occurred prior to 2001 and have withdrawn claims alleging violations of the Colstrip Title V operating permit ("Title V Claims") and violations of opacity emissions limitations ("Opacity Claim").

While the Amended Complaint contains 16 fewer "claims" as characterized by Plaintiffs, the reality is that Plaintiffs have significantly expanded the size of the case by almost tripling the number of projects purporting to give rise to each of Plaintiffs' claims from 24 projects in the original Complaint to 64 projects in the Amended Complaint.  *Compare* Compl. ¶¶ 62-72 (Doc. 1) *with* AC ¶¶ 53-61 (Doc. 67); Exhibit B (comparing projects alleged in the Complaint versus Amended Complaint).

As set forth below, all of Plaintiffs' claims the Amended Complaint must be dismissed.

## II.   THE PARTIAL MOTION TO DISMISS CONTINUES TO SUPPORT DISMISSAL OF THE MAJORITY OF PLAINTIFFS' CLAIMS IN THE AMENDED COMPLAINT

Defendants' Partial Motion to Dismiss is applicable to Plaintiffs' Amended Complaint, which asserts many of the same legal arguments as the original

Complaint.[3]  Arguments from the Partial Motion to Dismiss that are germane to the Amended Complaint are summarized below and also in Attachment A.

*Statute of Limitations & Concurrent Remedy Doctrine*: For the reasons set forth in Defendants' Partial Motion to Dismiss, Plaintiffs' PSD Claims and BACT Claims that arise from projects that occurred outside of the applicable statute of limitations are barred by the statute of limitations and the concurrent remedy doctrine.  *See* Mem. in Supp. of Defs.' Partial Mot. to Dismiss ("Defs.' PMTD Mem.") 11-21 (Doc. 37); Defs.' PMTD Reply 1-5; 7-13 (Doc. 52).  Accordingly, Claims 10, 13, 16, and 19 (PSD Claims) and Claims 12, 15, 18 and 21 (BACT Claims) must be dismissed.[4]

---

[3] Plaintiffs' claims arise from separate projects that Plaintiffs have grouped into nine alleged "modifications," which, according to Plaintiffs, triggered Defendants' obligation to: (1) obtain a preconstruction permit known as a PSD permit ("PSD Claims"); (2) comply with emissions limitations known as best available control technology ("BACT") ("BACT Claims"); and (3) obtain a separate Montana air quality permit ("MAQP") to operate the units ("MAQP Claims").  For seven of the nine "modifications," Plaintiffs allege all three types of claims. For the remaining two "modifications," Plaintiffs allege only PSD Claims.

[4] In Claims 7-9 of the Amended Complaint, Plaintiffs have added nine additional projects that occurred at Unit 2 in 2008.  *Compare* AC ¶ 57 (Doc. 67), *with* Compl. ¶ 111 (Doc. 1).   In the original Complaint, Plaintiffs included two projects occurring in 2008, which were within the limitations period based on the timing of the original Complaint.  However, with the filing of the Amended Complaint in late September 2013, Defendants believe that the nine new 2008 projects fall outside of the limitations period.  Defendants further believe that the limitations period does not relate back to the filing of the original Complaint.  Fed. R. Civ. P. 15(c)(1)(B) (limiting the relation back of an amendment to the original pleading

*BACT Claims Are Not Independent Claims*: For the reasons provided in Defendants' Partial Motion to Dismiss, Plaintiffs' BACT Claims fail to state a claim independent of the PSD permit obligation.  Defs.' PMTD Mem. 21-23 (Doc. 37); Defs.' PMTD Reply 6-8 (Doc. 52).   As a result, all of Plaintiffs' BACT Claims (Claims 3, 6, 9, 12, 15, 18, and 21) must be dismissed.

*BACT Claims Are Not Authorized*: As described in Defendants' Partial Motion to Dismiss, Plaintiffs' BACT Claims are not authorized by the Clean Air Act citizen suit provision.  Defs.' PMTD Mem. 23-25 (Doc. 37); Defs.' PMTD Reply 8-9 (Doc. 52).  Because the Court lacks jurisdiction to hear these claims, all of Plaintiffs' BACT Claims must be dismissed (Claims 3, 6, 9, 12, 15, 18, and 21).

*MAQP Claims Fail to State Actionable Conduct*: For the same reasons set forth in Defendants' Partial Motion to Dismiss, Plaintiffs' MAQP Claims fail to state a claim under the Montana regulations.  Defs.' PMTD Mem. 25-28 (Doc. 37); Defs.' PMTD Reply 13-14 (Doc. 52).   Accordingly, all of Plaintiffs' MAQP Claims must be dismissed (Claims 2, 5, 8, 11, 14, 17, and 20).

---

when the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading").   However, because Plaintiffs have not pled the timing of those additional nine projects with specificity as to the month, they are not susceptible to dismissal on a motion to dismiss.  Defendants will move for dismissal by summary judgment at a later time.

5

*Title V and Opacity Claims*:  Because Plaintiffs have withdrawn their Title V Claims and Opacity Claim through the Amended Complaint, the Court need not consider those arguments from the Partial Motion to Dismiss.  Defs.' PMTD Mem. 28-35 (Doc. 37); Defs.' PMTD Reply 14-19 (Doc. 52).

## III.  STANDARD OF REVIEW

Defendants' arguments support dismissal of Plaintiffs' Amended Complaint under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.  The standards of review for these arguments are set forth in the Partial Motion to Dismiss.  Defs.' PMTD Mem. 6-8 (Doc. 37).

## IV.  THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

Since the Parties completed briefing on the Partial Motion to Dismiss, two additional Circuit Courts have concluded that alleged violations of the PSD preconstruction program are not continuing in nature and that BACT requirements do not state an independent claim.  These decisions are discussed in Sections IV.A and IV.B below.

In addition, the Third Circuit opinion supports the argument that the Clean Air Act does not authorize injunctive relief for *any* of Plaintiffs' PSD and BACT Claims, even those within the limitations period.  This argument is set forth in Section IV.C below.

6

Finally, Plaintiffs' Amended Complaint must be dismissed for independent pleading failures. *See infra* Section IV.D. In the Amended Complaint, each of Plaintiffs' claims assumes that multiple projects may be aggregated into a single alleged violation. However, Plaintiffs have failed to plead any facts to support such an aggregation theory. In addition, by using vague wording, Plaintiffs also have failed to plead with sufficient specificity which specific projects are included in the Complaint. Plaintiffs have thus failed to meet the minimum pleading requirements set forth in the Federal Rules. All of Plaintiffs' claims must therefore be dismissed.

### A.    The Third and Seventh Circuit Holdings Confirm that Plaintiffs' PSD Claims and BACT Claims for Conduct Prior to 2008 are Time-Barred.

Plaintiffs continue to pursue multiple claims in their Amended Complaint based on projects performed before 2008 that fall well outside the applicable five year statute of limitations. Recent decisions by the Third and Seventh Circuits confirm the overwhelming majority position that the statute of limitations bars such late-filed claims.

### 1.    *A PSD violation occurs at the time of construction and does not continue.*

Defendants previously explained that Clean Air Act claims are subject to the general five-year statute of limitations in 28 U.S.C. § 2462.  Defs.' PMTD Mem. 12 (Doc. 37).  Plaintiffs do not dispute the applicability of § 2462, but contend that the failure to obtain a pre-construction PSD permit creates a new violation every day thereafter.  Pls.' Brief in Opp'n to Defs.' Partial Mot. to Dismiss ("Pls.' PMTD Opp'n") 17-18 (Doc. 47).   The Third and Seventh Circuits have now affirmed district court opinions relied on by Defendants in their briefing and rejected Plaintiffs' position.

In *United States v. Midwest Generation, LLC*, 720 F.3d 644, 647 (7th Cir. 2013), the Seventh Circuit held that § 2462 bars claims brought more than five years after construction commences on an alleged modification because "[t]he violation is complete when construction commences without a permit in hand." The court expressly rejected the government's contention that the alleged PSD violations were ongoing:  "Nothing in the text of [42 U.S.C.§] 7475 even hints at the possibility that a fresh violation occurs every day until the end of the universe if an owner that lacks a construction permit operates a completed facility." *Id.*

The Third Circuit reached the same conclusion in *United States v. EME Homer City Generation, L.P.*, Nos. 11–4406, 11–4407, 11–4408, 2013 WL 4437219, __ F.3d __, (3d. Cir. Aug. 21, 2013).  In *Homer City*, the United States

argued that the statute of limitations did not bar PSD claims because the PSD program prohibits operating a facility without BACT or a PSD permit.  *Id*. at *5. The Third Circuit agreed with "the unanimous view of the other courts of appeals that have addressed this question,"[5] and held that the PSD permitting obligation does not continue beyond construction.  *Id.* at *5-*6.  Because "the violation is complete when construction or modification commences without a permit in hand," *id*. at 6 (citing *Midwest Generation*, 720 F.3d at 647) (internal brackets omitted), the court found PSD claims brought more than five years after the alleged modification to be time-barred.  *Homer City*, 2013 WL 4437219, at *11.

---

[5] The Third and Seventh Circuits both distinguished the decision of the Sixth Circuit in *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410 (6th Cir. 2007), that Plaintiffs rely on to support their "new violation every day" contention.  Pls.' PMTD Opp'n 17 (Doc. 47); *see Midwest Generation*, 720 F.3d at 647; *Homer City*, 2013 WL 4437219, at *11.  As explained in Defendants' prior briefing, the Montana SIP does not contain language comparable to the Tennessee provision emphasized by the Sixth Circuit.  Defs.' PMTD Mem. 17 n.9 (Doc. 37); Defs.' PMTD Reply 5 (Doc. 52).  The *Midwest Generation* and *Homer City* decisions also effectively overruled certain district court decisions within their Circuits that were cited by Plaintiffs in support of their position.  *See* Pls.' PMTD Opp'n 22, 23 n.7 (Doc. 47) (citing *Sierra Club v. Dairyland Power Co-op*, 2010 WL 4294622, at *12 (W.D. Wis. 2010) and *New Jersey v. RRI Energy Mid-Atl. Power Holdings, LLC*, 2013 WL 1285456 (E.D. Pa. March 28, 2013), in support of the argument that the PSD permits are necessary as a condition of operation).

These recent decisions further demonstrate that Plaintiffs' PSD claims[6] allege only one-time violations that accrued at commencement of construction. Plaintiffs cannot sidestep § 2462[7] by characterizing their claims as renewing every day. Enforcing the statute of limitations gives force to the principles underlying the recent United States Supreme Court decision in *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), which, as the Seventh Circuit noted, "tells us not to read statutes in a way that would abolish effective time constraints on litigation." *Midwest Generation*, 720 F.3d at 647. Accordingly, Plaintiffs' amended PSD claims based on alleged modifications that commenced before 2008 are time-barred. *See also* Defs.' PMTD Mem. 11-19 (Doc. 37); Defs.' PMTD Reply 1-5; 7 (Doc. 52).

---

[6]  As explained in Section IV.B, *infra*, Plaintiffs' separate BACT claims do not allege a viable cause of action under the citizen suit provisions. However, in the event such a claim were allowed, the statute of limitations would apply equally to bar BACT claims based on activities prior to 2008. *See* Defs.' PMTD Mem. 17-19 (Doc. 37); Defs.' PMTD Reply 7 (Doc. 52); *Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*, 502 F.3d 1316, 1324 (11th Cir. 2007).

[7]  Plaintiffs' separate BACT and MAQP claims are no more than efforts to avoid application of the statute of limitations to the core activity underlying Plaintiffs' action -- the alleged failure to obtain a PSD permit. In their Amended Complaint, Plaintiffs tacitly acknowledge as much by pleading their new Claims 22 and 23 alleging modifications in 2011 only as PSD violations, and not including BACT Claims or MAQP Claims. AC ¶¶ 177-90 (Doc. 67).

### 2. *After expiration of the statute of limitations, emissions are lawful and no injunction is proper.*

As set forth in the Partial Motion to Dismiss, the concurrent remedy doctrine would apply to bar any injunctive relief for Plaintiffs' claims that are subject to the statute of limitations for civil penalties. Defs.' PMTD Mem. 19-21 (Doc. 37); Defs.' PMTD Reply 9-13 (Doc. 52); s*ee Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996). Defendants stand by these arguments.

Moreover the Seventh Circuit articulated an independent rationale for barring both injunctive relief and civil penalties for Plaintiffs' PSD Claims and BACT Claims based on projects performed before 2008. In *Midwest Generation*, the Court was confronted with PSD claims brought by United States for injunctive relief based on projects performed between 10 and 15 years prior to when the suit was filed. *Midwest Generation,* 720 F.3d at 646. After concluding that the PSD program governs pre-construction requirements and "not how the source operates after construction," *id.* at 647, the Seventh Circuit held that both civil penalties and injunctive relief were unavailable when the statute of limitations has run. *Id.* at 648. The court explained:

> Today's emissions cannot be called unlawful just because of acts that occurred more than five years before the suit began. Once the statute of limitations expired, [the owner of the plants] was entitled to proceed as if it possessed all required construction permits.

*Id.*

The same principles should apply here. Plaintiffs brought suit more than five years after the projects on which Claims 10, 12, 13, 15, 16, 18 19, and 21 are based, and Defendants can no longer be held liable for those actions.

**B.    The Third and Seventh Circuit Holdings Confirm that Plaintiffs' BACT Claims Should Be Dismissed.**

### 1.    *BACT Claims are not independent claims.*

The Third and Seventh Circuits have now joined the Eighth and Eleventh Circuits in rejecting Plaintiffs' argument that BACT is a freestanding requirement that applies regardless of whether a source obtains a PSD permit. *See* Defs.' PMTD Mem. 21-23 (Doc. 37); Defs.' PMTD Reply 6-8 (Doc. 52). Interpreting the plain language of 42 U.S.C. § 7475(a)(4), the Third Circuit concluded that "[t]he BACT requirement is simply part of § 7475's prohibition on construction -- not operation." *Homer City*, 2013 WL 4437219, at *8. The Seventh Circuit similarly described § 7475(a) as spelling out "the conditions that must be met before the permit will issue." *Midwest Generation*, 720 F.3d at 647. Because "Section 7475(a)(4) specifies what must be built, not how the source operates after construction," *id.*, the BACT provisions do not create an ongoing requirement.[8] Nor can BACT be an *independent* requirement subject to violation. Because

---

[8] Plaintiffs rely extensively for their BACT contentions on the *Dairyland* case in the Eastern District of Wisconsin, *Sierra Club v. Dairyland Power Co-op*, 2010 WL 4294622, at *5 (W.D. Wis. 2010); Pls.' PMTD Opp'n 24-25 (Doc. 47), which has been effectively overruled by the Seventh Circuit in *Midwest Generation*.

BACT cannot be determined outside of the permitting process,[9] "[w]ithout an issued PSD permit, there are no BACT emission limits to violate." *Homer City,* 2013 WL 4437219, at *9; Defs.' PMTD Mem. 22 (Doc. 37); Defs.' PMTD Reply 6 (Doc. 52).

Given the clear obstacles facing federal BACT claims, Plaintiffs base their amended BACT claims solely on a Montana SIP provision, Mont. Admin. R. 17.8.819(3), providing that a source "shall apply" BACT for each proposed emission unit where there is a major modification. *See, e.g.*, AC ¶ 78 (Doc. 67). Plaintiffs contend, based on the heavily criticized minority position of the Sixth Circuit in *Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410 (2007), that the "shall apply" language creates an independent obligation to apply BACT outside of a PSD permit. Pls.' PMTD Opp'n 24 (Doc. 47). The United States District Court for the Northern District of Indiana recently rejected the United States' identical contention under an Indiana statute that also contained the "shall apply" BACT language:

> I find the analysis of the Eighth and Eleventh Circuits much more persuasive than the Sixth Circuit approach. The "shall apply" language in Indiana's SIP can only sensibly be read to be tied to the construction process because it applies to "each *proposed* emission unit." 326 IAC 2-2-3. What this means is that if a company is

---

[9] The Montana SIP defines "best available control technology" as being determined by the Montana Department of Environmental Quality on a "case-by-case" basis for each source or modification. *See* Mont. Admin. R. 17.8.801(6).

> contemplating building a new facility or making a major modification to an existing facility -- *i.e.*, a "proposed" emission unit -- it must apply the best available control techniques.  It doesn't mean that there is an ongoing duty to apply the BACT limits independent of the permitting process.  *Sierra Club* [*v. Otter Tail Power Co.*], 615 F.3d [1008, 10]17 [(8th Cir. 2010)].  Thus, since "the duty to obtain a [NSR] permit and the duty to apply BACT are most sensibly construed as going hand-in-hand," *id.*, the failure to apply BACT is not a new violation each day the plant operates.  Rather, it is a one-time violation, simultaneous with the failure to obtain the proper NSR permitting.

*United States v. U.S. Steel Corp*, 2:12-CV-304, 2013 WL 4495665, at *7 (N.D. Ind. Aug. 21, 2013); *see also Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1016-17 (8th Cir. 2010); *Nat'l Parks*, 502 F.3d at 1325-26.  This Court should apply the same analysis to reject Plaintiffs' contention based on the essentially identical language in the Montana SIP.  *See also* Defs.' PMTD Mem. 21-23 (Doc. 37); Defs.' PMTD Reply 6-8 (Doc. 52).

### 2.    *This Court lacks jurisdiction over Plaintiffs' BACT claims.*

Plaintiffs' BACT claims also should be dismissed for lack of jurisdiction because they fail to allege a violation of an "emission standard or limitation" as required under the Clean Air Act citizen suit provisions.[10]   *See* 42 U.S.C. §§

---

[10] Defendants also moved to dismiss Plaintiffs' BACT claims in the original complaint for lack of jurisdiction because they did not constitute viable claims under the Clean Air Act citizen suit provisions cited by Plaintiffs.  42 U.S.C. § 7604(a)(1), (f)(3).  Defs.' PMTD Mem. 23-25 (Doc. 37); Defs.' PMTD Reply 8-9 (Doc. 52).  Plaintiffs asserted that they had made a mistake in their pleading and have changed the basis on which they base their alleged jurisdiction in the

14

7604(a)(1), (f)(4).  Plaintiffs contend that the BACT requirement is "freestanding" under the Montana SIP, and thus qualifies as an enforceable standard or limitation established under the SIP as referenced in § 7604(f)(4).  Pls.' PMTD Opp'n 32 (Doc. 47).  The Third Circuit recognized, however, that Plaintiffs' concept of "a freestanding BACT requirement would not survive in the real world" because "BACT determinations are products of the permitting process."  *Homer City,* 2013 WL 4437219, at *9.  MDEQ has made no BACT determination for Colstrip, so there can be no violation of an emission standard or limitation enforceable under § 7604(a)(1).  Defs.' PMTD Memo 22 (Doc. 37); Defs.' PMTD Reply 8-9 (Doc. 52).  The Court therefore lacks jurisdiction over Plaintiffs' BACT Claims brought under § 7604(a)(1).

      **C.**    **The Clean Air Act Citizen Suit Provisions Do Not Authorize Injunctive Relief for Plaintiffs' Alleged PSD and BACT Violations.**

In *Homer City*, the Third Circuit closely reviewed the statutory provisions on which the United States based its claims – 42 U.S.C. §§ 7413 and 7477 – and determined that those provisions did not authorize injunctive relief for a past

---

Amended Complaint from 7604(f)(3) to (f)(4).  Pls.' PMTD Opp'n 32-33 (Doc. 47).  Plaintiffs' revision has not resolved the jurisdictional issue, as explained in this Section.

failure to obtain a PSD permit.[11]  2013 WL 4437219, at *11-16.  Though Plaintiffs here are not the government, and therefore bring their PSD claims under the separate citizen suit provisions in § 7604(a), citizen enforcement authority is even more narrow than the authority afforded the government under § 7413.  Under the plain language of § 7604(a), this Court does not have jurisdiction to award injunctive relief for Plaintiffs' PSD or BACT claims in the Amended Complaint.

Section 7604(a) allows citizens to pursue enforcement actions against sources in only two scenarios potentially relevant here:  (1) against any person who is alleged to have violated "an emission standard or limitation," 42 U.S.C. § 7604(a)(1), and (2) against any person who proposes to construct any new or modified major emitting facility without a PSD permit, *id.* § 7604(a)(3).  The specific provision on which a citizen claim is based is important, because § 7604(a) further limits a district court's jurisdiction to award relief for certain types of claims:  "The district courts shall have jurisdiction . . . to enforce such an emission standard or limitation, . . . and to apply any appropriate civil penalties."  *Id*. § 7604(a).  Civil penalties therefore may be applied (where the statute of limitation has not run) for claims under either § 7604(a)(1) or (a)(3), but the court

---

[11] The Third Circuit specifically held that § 7413 did not authorize injunctive relief for a wholly past, completed violation, such as failure to obtain a pre-construction PSD permit.  *Homer City*, 2013 WL 4437219, at *12 (finding that § 7413 "cannot be read so broadly as to authorize an injunction for completed violations").

has jurisdiction to impose injunctive relief only for a claim under § 7604(a)(1) to enforce an emission standard or limitation. *Cf. Homer City,* 2013 WL 4437219, at *12 (identifying jurisdictional limitations on a district court's ability to grant injunctive relief under § 7413).

Though Plaintiffs cite both § 7604(a)(1) and (a)(3) as the basis for most of their PSD claims,[12] *see, e.g.,* AC ¶ 71 (Doc. 67), these claims do not allege a violation of an "emission standard or limitation" as required under § 7604(a)(1). The Third Circuit addressed this issue directly in *Homer City,* confirming that a failure to obtain a PSD permit is not a violation of an "emission standard or limitation," as defined in 7604(f)(4). *Homer City,* 2013 WL 4437219, at *7. "In other words, just because the PSD program requires a source to obtain a permit that sets some operating conditions does not mean that the PSD program requires a source without a permit to comply with operating conditions." *Id.* Moreover, as explained above, the BACT requirement does not establish an independent emission standard or limitation that is enforceable outside of the permitting process. *See supra* Section IV.B.1. Because Plaintiffs' PSD Claims and BACT

---

[12] Of particular note, Plaintiffs have dropped any reference to § 7604(a)(1) in adding new Claims 22 and 23 to the Amended Complaint alleging PSD violations based on 2011 activities. Plaintiffs cite only to § 7604(a)(3) as the basis for those claims. *See* AC ¶¶ 183, 190 (Doc. 67).

Claims do not allege violations of an emission standard or limitation, this Court has no jurisdiction under § 7604(a) to award injunctive relief for those claims.[13]

### D. Plaintiffs' Amended Complaint Fails to Allege Sufficient Facts to Support Their Claims.

#### 1. *Plaintiffs failed to allege any facts to support their allegations that multiple projects should be grouped together and considered a single "major modification."*

The Amended Complaint arbitrarily combines sixty-four individual equipment repair and replacement projects into nine alleged "modifications."  AC ¶¶ 53-61 (Doc. 67).  Plaintiffs contend that each of the nine combined, or aggregated, "modifications" was a "major modification," giving rise to their PSD, BACT, and MAQP Claims.  *Id.*  But the Amended Complaint is devoid of *any* factual basis for aggregating the various projects together and fails to allege why the combined projects should be considered a single physical change or modification under the PSD rules.  As such, it fails to state a claim that is plausible on its face and further fails to provide Defendants adequate notice of the bases for Plaintiffs' claims.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a

---

[13] The potential award of injunctive relief for a completed PSD violation also raises equitable considerations that should bar such relief here.  This case mirrors the situation addressed by the district court in the *Homer City* case:  "[E]ven if injunctive relief to remedy past harms is within the Court's authority, such relief is not warranted for the PSD violations alleged in this case - a failure to obtain a preconstruction permit, followed by continued normal operations of a grandfathered facility."  *United States v. EME Homer City Generation L.P.*, 823 F. Supp. 2d 274, 291 (W.D. Pa. 2011).

motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Twombly,* 550 U.S. at 555 (a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal citation omitted); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (The court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences.").

This pleading failure is critical.  Whether and why the projects were separate or combined is essential to Plaintiffs' claims.  To prove a "major modification," Plaintiffs must show there was (1) a physical change that (2) the Defendants should have expected to cause a significant net emissions increase.[14]  Mont. Admin. R. §§ 17.8.801(20), 17.8.818; 40 C.F.R. § 52.21(b)(23).  Plaintiffs have defined each physical change to include multiple projects.  But projects can only be combined or "aggregated" for PSD purposes when objective facts show they are interconnected.

-------------------------

[14] While not relevant to a motion to dismiss, prior to performing individual projects identified in the Amended Complaint, Defendants analyzed emissions expectations and concluded such individual projects would not cause a significant emissions increase.  Defendants undertook this analysis even though Defendants believed the projects were routine repair, maintenance, and/or replacement, and thus not "physical changes" under the applicable regulations.

*See, e.g.,* 74 Fed. Reg. 2,376, 2,377-78 (Jan. 15, 2009).  The Amended Complaint does not plead any such facts.

EPA has repeatedly explained in guidance documents that separate projects cannot be grouped together for PSD purposes *without an objective factual basis for concluding they are interconnected.*  71 Fed. Reg. 54,235, 54,245 (Sept. 14, 2006) ("EPA used 'objective indicia' to identify" projects that should be aggregated.); 74 Fed. Reg. at 2,378 ("whether a physical or operational change is dependent on another for its viability is still a relevant factor in assessing whether the changes should be aggregated."); *Id*. ("Activities at a source should be aggregated when . . . there [is] an apparent interconnection . . . ."); 75 Fed. Reg. 19,567, 19,571 (April 15, 2010) ("Historically, EPA has analyzed the question of whether nominally-separate changes are one change by using a case-by-case review of all relevant and objective factors that looks for 'indicia' or indicators, of these changes being one common aggregate change.").[15]  The touchstones of EPA's pronouncements are

───────────────

[15] EPA's aggregation policy is currently set forth in guidance, not regulations.  75 Fed. Reg. at 19,568.  In 2009, EPA issued a final rule that would "better explain the NSR Aggregation policy" by publishing it in the Federal Register ("the 2009 Rule").  74 Fed. Reg. at 2,381.  In 2010, before the 2009 Rule went into effect, EPA accepted a request for reconsideration and placed the 2009 Rule on administrative stay pending EPA's review and any subsequent court challenge to the Rule (the "2010 reconsideration notice").  75 Fed. Reg. at 19,568.  EPA has not finished its reconsideration.  However, it provided in-depth discussions of its current and historic aggregation guidance in the 2006 proposal that lead to the

that (a) aggregation is only appropriate when relevant and objective factors demonstrate that nominally-separate projects are interconnected or interdependent, and (b) the timing of the projects alone is not enough.[16]  75 Fed. Reg. at 19,571; 74 Fed. Reg. at 2,380.

Plaintiffs have failed to allege interconnection, interdependence, or any facts that would support aggregating multiple projects into a single physical change that could be "*a* major modification."  For example, Paragraph 57, which is referenced in Claims 7, 8, and 9, alleges that Defendants modified Unit 2 in 2008 by:

> among other changes, undertaking the following projects: Project ID # 10009541 (High Pressure/Intermediate Pressure Turbine Replacement), 10009891 (Generator Rewind), 10010936 (Turbine/Generator Base Overhaul), 10010937 (Low Pressure Turbine Overhaul), 10010944 (Boiler Safety Valve Replacement), 10010947 (Boiler Water Wall Replacement), 10010951 (Cooling Tower Rebuild), 10111204 (Boiler Burner Front Replacement), 10011020

---

2009 Rule, 71 Fed. Reg. at 54,244-245, the 2009 Rule, 74 Fed. Reg. at 2,377-379, and the 2010 Reconsideration Notice, 75 Fed. Reg. at 19,570-571.

[16] *See, e.g.,* 74 Fed. Reg. at 2,379:  "A company's decision to do a series of activities at the same time–*e.g.*, during a conventional scheduled outage, 'turnaround' or 'annual shutdown'–should not be viewed as evidence of their technical or economic relatedness.  In fact, absent an evaluation of the technical or economic relationship among the activities, the only presumption that should be gleaned from the practice of utilities, refineries, and other types of industry to do many activities during normally scheduled outages is that it is efficient and cost-effective to undertake multiple activities at the same time.  Some of these activities will, in fact, be unrelated, but are done simultaneously simply because it is easier to make these changes at a time when the source is not operating.  These activities should not be automatically aggregated."

(Capital Project Support), and 10008826 (Plant Control System Replacement).

Thereafter, in Claim 7, Plaintiffs allege that "Defendants modified Unit 2 in 2008 by making a number of changes, including the projects described in Paragraph 57 … which would result in a significant net emissions increase…." AC ¶ 98 (Doc. 67).  Plaintiffs then allege "*This* constituted a major modification…." AC ¶ 99 (Doc. 67) (emphasis added).  The remaining PSD Claims are pled in a similar way.  *See, e.g.*, AC ¶ 68 (Doc. 67) ("Thus, Defendants' activity at Unit 1 in 2012 was *a* major modification ....") (emphasis added).  Plaintiffs' MAQP Claims and BACT Claims contain similar flaws.  *See, e.g.*, AC ¶ 73 (Doc. 67) ("each day that the Colstrip plant operated following *the* 2012 modification") (emphasis added); ¶ 78 ("Each day that Unit 1 operated after *the* major modification in 2012 ....") (emphasis added).  Plaintiffs allege not a single fact to justify combining the multiple, separate projects as a single alleged modification, and the Amended Complaint itself states that each project has its own project ID number and involves different components.  As such, their allegations that multiple projects constitute one large aggregated "modification" fail to "raise a right to relief above the speculative level."  *Twombly,* 544 U.S. at 555; *William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) ("Something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people with

the right to do so representing an *in terrorem* increment of the settlement value.")
(internal citation omitted).

Instead, Plaintiffs leave it to Defendants and the Court to guess why
Plaintiffs aggregated the projects together and why Plaintiffs allege they are a
single physical change.[17]  This "leave them all guessing" approach fails to satisfy
the most basic pleading standards.  *See Ashcroft*, 556 U.S. at 678 ("To survive a
motion to dismiss, a complaint must contain sufficient factual material, accepted as
true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*,
550 U.S. at 570; *Gilley Enterprises, Inc.*, 588 F.3d at 659 (It is insufficient that a
complaint "could be read" to encompass a claim, it must allege sufficient facts to
give the defendant fair notice of basis for that claim).  Because all of Plaintiffs'
claims rely on their improperly pleaded "modification" allegations, they should all
be dismissed.

---

[17] Allowing this form of improper pleading is likely to cause great confusion in the
case going forward.  By avoiding setting forth the facts supporting their Claims,
Plaintiffs later (*e.g.*, through expert reports) may try to present the projects
separately as major modifications or may seek to aggregate them in some different
combination to prove a major modification.  By rejecting this vague and improper
pleading, the Court can ensure that Plaintiffs cannot reinvent their case outside of
the pleadings.

### 2. Plaintiffs' unspecified allegations regarding "other projects" should be dismissed from the Amended Complaint.

All of Plaintiffs' claims include vague references to unspecified projects or changes that purportedly form the basis for their claims. For example, Claim 4 alleges that Defendants modified Unit 4 by making a number of changes, "*including* the projects described in Paragraph 56." AC ¶ 82 (Doc. 67) (emphasis added). Paragraph 56, in turn, alleges Defendants undertook, "among other changes," six specific projects in 2009. Plaintiffs plead all the claims using the same or similar vague references to other projects. *Id*. ¶¶ 66, 73, 77, 82, 89, 93, 98, 104, 108, 113, 120, 124, 129, 136, 140, 145, 152, 156, 161, 168, 172, 178, 185. These non-specific allegations are devoid of factual information that would provide Defendants notice of the basis and grounds for Plaintiffs' allegations and epitomize the type of "speculative" pleading disapproved by the Supreme Court in *Twombly*. 550 U.S. at 554 ("Factual allegations must be enough to raise a right to relief above a speculative level . . . .") (internal citation omitted).

Plaintiffs should not be allowed to exploit these open-ended allegations through a subsequent "fishing expedition" that would substantially expand the scope and expense this case. *See Twombly*, 550 U.S. at 556 (noting that basic deficiencies in pleading should "be exposed at the point of minimum expenditure of time and money by the parties and the court.") (internal citation omitted); *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459

24

U.S. 519, 528 n.17 (1983) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").  And Plaintiffs should not be allowed to exploit such vagueness to reinvent their case, *e.g.*, through expert reports, at a later time.  *See supra* Note 17.

Similarly vague references to projects not specifically identified in the complaint have been dismissed by other courts on this basis.  *See New Jersey v. Reliant Energy Mid-Atl. Power Holdings*, LLC, No. 07-cv-5298, 2009 WL 3234438, at *19 (E.D. Pa. Sept. 30, 2009).  *Reliant* involved a nearly identical situation.  The plaintiffs alleged PSD claims that, in addition to specific projects, included "other modifications" that the plaintiffs failed to identify.  *Id.* at *19.  The court held that such vague references to unspecified projects failed to give the defendants fair notice of the alleged violations and dismissed all claims purportedly arising from unidentified projects or modifications.  *Id.* at *19-20.  Just like *Reliant,* Plaintiffs' allegations purport to include "other projects" and "other changes."  This Court should similarly dismiss and treat as stricken any claims alleged to be based on the unidentified projects or changes.

## V.    CONCLUSION

For the foregoing reasons, and the reasons provided in Defendants' Partial Motion to Dismiss, the Court should dismiss all of Plaintiffs' claims for relief contained in the Amended Complaint.

Dated this 11th day of October, 2013.


/s/ *William W. Mercer*
William W. Mercer

**COUNSEL FOR PPL MONTANA, LLC, PUGET SOUND ENERGY AND PORTLAND GENERAL ELECTRIC COMPANY**


/s/ *Stephen R. Brown*
Stephen R. Brown

**COUNSEL FOR AVISTA CORPORATION AND PACIFICORP**


/s/ *Stephen D. Bell*
Stephen D. Bell

**COUNSEL FOR NORTHWESTERN CORPORATION**


/s/ *Joshua B. Frank*
Joshua B. Frank (admitted *pro hac vice*)

**COUNSEL FOR DEFENDANTS**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this Brief complies with the requirements of Rule 7.1(d)(2).  The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch.  The total word count is 6,243 excluding caption, certificate of compliance, signature block, tables of contents and authorities, and exhibit index.  The undersigned relies on the word count of the word processing system used to prepare this document.

*/s/ William W. Mercer*
William W. Mercer

28