John Heenan
Bishop & Heenan
3970 Avenue D, Suite A
Billings, Montana    59102
(406) 839-9091
john@bishopandheenan.com

Roger Sullivan
McGarvey, Heberling, Sullivan
      & McGarvey, P.C.
745 South Main Street
Kalispell, Montana   59901-5341
(406) 752-5566
RSullivan@McGarveyLaw.com

George E. Hays (*admitted pro hac vice*)
236 West Portal Avenue, #110
San Francisco, CA   94127
(415) 566-5414
georgehays@mindspring.com

David C. Bender (*admitted pro hac vice*)
McGillivray Westerberg & Bender LLC
211 S. Paterson Street, Ste 320
Madison, WI    53703
(608) 310−3560
bender@mwbattorneys.com

Aubrey E. Baldwin (*admitted pro hac vice*)
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR 97219
Office: (503) 768-6929
abaldwin@lclark.edu

Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br><br>          Plaintiffs,<br><br>     v.<br><br>PPL MONTANA LLC, AVISTA CORP., PUGET SOUND ENERGY, PORTLAND GENERAL ELECTRIC CO., NORTHWESTERN CORP., and PACIFICORP,<br><br>          Defendants. | Case No. 1:13-cv-00032-DLC-JCL<br><br>PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................1

ARGUMENT ..............................................................................2

    I.    The Recent Decisions by the Third and Seventh Circuits Do Not Cure the Faulty Basis of the Defendants' Statute of Limitations Related Arguments. ..............................................................................2

        A.    The Defendants' Statute of Limitations Argument is Flawed Because it Fails to Recognize that the Montana State Implementation Plan Prohibits Defendants From Operating a Modified Major Source Like Colstrip Without a Montana Air Quality Permit Containing Prevention of Significant Deterioration Requirements.....................................................................3

        B.    Neither *Midwest Generation* Nor *Homer City* Time-Bars Plaintiffs' Pre-2008 Claims. .......................................................7

        C.    Montana's State Implementation Plan Independently Prohibits Major Modifications from Operating Without Emission Limits Based Upon Best Available Control Technology. Consequently, this Claim Is Not Time-Barred......................................................8

    II.    Defendants' Arguments Seeking to Bar Plaintiffs' Efforts to Obtain Injunctive Relief Must Be Rejected. ........................................................9

        A.    The Defendants' Concurrent Remedy Doctrine Arguments Continue to Misapprehend the Nature of that Doctrine.................10

        B.    The Seventh Circuit's Conclusion in Midwest Generation that Section 2862 Bars Claims for Injunctive Relief Is Lacks Support in Established Law. ...........................................................11

C.    Defendants' Argument that the Clean Air Act Does Not Authorize Injunctive Relief for Plaintiffs' Alleged Prevention of Significant Deterioration and Best Available Control Technology Violations Misreads the Act. ..........................................................................12

III.   Defendants' Various Challenges to the Sufficiency of Plaintiffs' Pleading under *Iqbal* and *Twombly* Must Fail Because the Complaint Satisfies Fed. R. Civ. P. 8. .......................................................................16

A.    *Iqbal* and *Twombly* Did Not Fundamentally Alter the Notice Pleading Standard in the Federal Rules of Civil Procedure and the Court Should Reject Defendants' Arguments that Plaintiffs are Required to Plead with More Specificity. .......................................16

B.    Plaintiffs Have Alleged Sufficient Facts to Put Defendants on Notice of the Claims and the Grounds upon which They Rest. ......18

C.    Plaintiffs Need Not List Every Actionable Violation in their Complaint ........................................................................................24

CONCLUSION ...........................................................................................26

CERTIFICATE OF COMPLIANCE .........................................................28

ii

# TABLE OF AUTHORITIES

**Cases**

*A.E. ex rel. Hernandez v. County of Tulare*,
    666 F.3d 631 (9th Cir. 2012) ........................................................................24

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2nd Cir. 2010)........................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................1, 16, 17, 21

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007).................................... 1, 16, 17, 20, 22-25,

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,
    305 F.3d 943 (9th Cir. 2002) ........................................................................26

*Conservation Law Foundation v. Federal Highway Administration*,
    24 F.3d 1465 (1st Cir. 1994) ........................................................................14

*Cope v. Anderson*,
    331 U.S. 461 (1947)........................................................................10

*Fed. Election Comm'n v. Williams*,
    104 F.3d 237 (9th Cir. 1996) ........................................................................10

*Hughes v. Reed*,
    46 F.2d 435 (10th Cir. 1931) ........................................................................11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ........................................................................17

*Nat'l Org. for Women v. Scheidler*,
    510 U.S. 249 (1994)........................................................................21

*Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*,
        480 F.3d 410 (6th Cir. 2007) ........................................................................6, 8

*New Jersey v. Reliant Energy Mid-Atl. Power Holdings,*
        *LLC*, No. 07-CV-5298, 2009 WL 3234438 (E.D. Pa. Sept. 30, 2009) ........25

*OSU Student Alliance v. Ray*,
        699 F.3d 1053 (9th Cir. 2012),
        *cert. denied,* 2013 WL 1808554 (Oct. 7, 2013) ...........................................21

*Robert and Shellan Isackson Family Trust v. Fireman's Fund Insurance Co.*,
        No. CV 13-115-M-DLC, 2013 WL 5492946 (D. Mont. Sept. 30, 2013) .....20

*Russell v. Todd*,
        309 U.S. 280 (1940)...................................................................................10

*Sierra Club v. Dairyland Power Coop.*,
        Case 10-cv-303-bbc, 2010 U.S. Dist. LEXIS 112817,
        2010 WL 4294622 (W.D.Wis., Oct. 21, 2010) .............................................9

*Sierra Club v. Portland General Elec. Co.*,
        663 F. Supp. 2d 983 (D. Or. 2009).......................................................5, 8, 25

*Stimson Lumber Co. v. International Paper Co.*,
        2010 No. CV 10-79-M-DWM-JCL, WL 5186752
        (D. Mont. Dec. 10, 2010)................................................................................22

*United States v. EME Homer City Generation, L.P.*,
        727 F.3d 274 (3d. Cir. 2013) ..............................................................3, 7, 8

*United States v. Midwest Generation, LLC*,
        720 F.3d 644 (7th Cir. 2013) ........................................................3, 7, 8, 11

*United States v. Miljus*,
        Civ. No. 06-1832-PK, 2008 WL 3539946 (D. Or. Aug. 11, 2008) .............21

iv

**Statutes**

28 U.S.C. § 2462 .................................................................................10

42 U.S.C. § 7475 .........................................................................7, 12, 14, 15

42 U.S.C. § 7602(k) ...........................................................................13

42 U.S.C. § 7602(l) ............................................................................14

42 U.S.C. § 7604(a)(1) .................................................................9, 12, 16

42 U.S.C. § 7604(a)(3) ........................................................................13, 15

42 U.S.C. § 7604(f)(1) ........................................................................13, 14

42 U.S.C. § 7604(f)(4) ...................................................................3, 9, 13, 14

**Rules and Regulations**

Fed. R. Civ. P. 8 ..........................................................1, 16, 17, 19, 20, 25

Fed. R. Civ. P. 16 ...............................................................................25

Mont. Admin. R. 17.8.743(1) ...............................................................4, 15

Mont. Admin. R. 17.801(20) ..................................................................18

**Other Sources**

5 Charles Alan Wright & Arthur R. Miller,
   Federal Practice and Procedure (3d ed. 2004).............................................19

1 Pomeroy's Equity Jurisprudence (5th ed.) § 138.................................................11

**Exhibits**

Exhibit A - Plaintiffs Third Request for Documents and Things .................21

# INTRODUCTION

Plaintiffs Montana Environmental Information Center and Sierra Club respectfully request that Defendants' Motion to Dismiss the Amended Complaint be denied.  The Defendants motion focuses on two major issues: the statute of limitations and the pleading requirements of Fed. R. Civ. P. 8 as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Regarding the first issue, Plaintiffs thoroughly explained why none of their claims are time barred in their response, Dkt. # 47, to Defendants' first motion to dismiss.  Accordingly, Plaintiffs' response here builds off of their earlier arguments and is presented in the nature of a Sur-Reply.  As for Defendants' new arguments based on *Iqbal* and *Twombly*, Defendants' motion is based on a fundamental misunderstanding of the holding of those two cases and as such, must be rejected.

Plaintiffs note that in response to the first motion to dismiss, Plaintiffs included an explanation of what this case is about.  *See* Dkt. # 47 at 1 – 9.  In the interest of brevity, that discussion is not repeated here.  The focus of the case remains on Defendants' illegal operation of the Colstrip plant after making unpermitted major medications at each of the four Colstrip units.  The Amended

1

Complaint has significantly narrowed the scope of the case. Plaintiffs have eliminated their opacity claims as well as their claims based on the Defendants' violations of the Colstrip Title V permit. Furthermore, Plaintiffs have eliminated all of their claims based on the Defendants' modifications to the Colstrip plant that occurred prior to 2000. Through initial discovery, Plaintiffs have learned that Defendants made major modifications at all four of the Colstrip since the year 2000, making litigation of Defendants' earlier modifications superfluous. Now that Plaintiffs have had an opportunity to review some of Defendants' project documents, Plaintiffs have been able to frame the Amended Complaint around Defendants' Work Order numbers, providing more specific information to the Defendants about precisely which projects have triggered Prevention of Significant Deterioration applicability. Thus, the streamlined Amended Complaint reduces the number of claims in this case from 39 to 23 and narrows the focus of the case from twelve major projects to nine.

## ARGUMENT

**I.    The Recent Decisions by the Third and Seventh Circuits Do Not Cure the Faulty Basis of the Defendants' Statute of Limitations Related Arguments.**

The Defendants have moved to dismiss Plaintiffs' Prevention of Significant Deterioration claims for modifications that began more than five years ago (Claims

2

10, 12, 13, 15, 16, 18, 19 & 21) as well as all of the Best Available Control

Technology claims (Claims 3, 6, 9, 12, 15, 18 & 21).   The Defendants previously

made these arguments in their original motion to dismiss, and now they attempt to

bolster their arguments by relying on two recently decided cases, *United States v.*

*Midwest Generation, LLC*, 720 F.3d 644 (7th Cir. 2013) and *United States v. EME*

*Homer City Generation, L.P.*, 727 F.3d 274 (3d. Cir. 2013).  As shown below,

neither of these cases remedies the flaws in Defendants' arguments on these issues.

> A.   <u>The Defendants' Statute of Limitations Argument is Flawed Because
> it Fails to Recognize that the Montana State Implementation Plan
> Prohibits Defendants From Operating a Modified Major Source Like
> Colstrip Without a Montana Air Quality Permit Containing Prevention
> of Significant Deterioration Requirements</u>.

As Plaintiffs pointed out in their original Motion to Dismiss Response, Dkt.

# 47 at 12-13, Congress has authorized citizens to bring actions for violations of

"*any* requirement to obtain a permit as a condition of operations which is in effect .

. .  under an applicable implementation plan."  42 U.S.C. § 7604(f)(4).  Under the

"applicable implementation plan" in Montana, one may not *modify* or *operate* a

source like Colstrip without a Montana Air Quality Permit.  Dkt. # 47 at 14-17.

Moreover, in Montana, a Prevention of Significant Deterioration permit **is** a

Montana Air Quality Permit.  *Id*. at 21.  Accordingly, in Montana, if a company

has made a major modification to its source, triggering Prevention of Significant

3

Deterioration requirements, without obtaining a Montana Air Quality Permit containing Prevention of Significant Deterioration requirements, each day the company operates that source without the requisite permit violates the Montana State Implementation Plan and the Clean Air Act.  Dkt. # 47 at 18-21.  Therefore, none of Plaintiffs' pre-2008 claims are time-barred, though Plaintiffs' acknowledge that penalties can only be assessed for days of operation without the requisite permit from January 6, 2008 forward.

With the filing of this latest motion, Defendants have now made five filings addressing the statute of limitations issue (Dkt. #'s 37, 52, 58, 62, and 70).  None provide a cogent or persuasive rebuttal to Plaintiffs' argument laid out above, nor could they.

First, in their original motion to dismiss, Dkt. # 37, Defendants argued that although the Montana Implementation Plan requires that a permit be obtained for a modification, it is not illegal for a plant to operate without that modification-related permit.  Dkt. # 37 at 25-28.  *See also* Defendants' Reply, Dkt. # 52 at 13-14.  That argument, however, is contrary to the plain language of Mont. Admin. R. 17.8.743(1), which provides that: "a person may not construct, install, *modify, or operate* any of the following without first obtaining a Montana air quality permit…"  As Plaintiffs have explained, *see* Dkt. # 47 at 14-17, it makes no sense

4

to acknowledge that Section 17.8.743(1) requires a new Montana Air Quality Permit for each modification, but interpret the same provision to excuse operation without that new permit as long as the owner operates the facility under some older, obsolete permit. The new permit accounting for the modification governs operation of the facility post-project. If an owner could operate the facility without that modification-related permit, there is no point to requiring the permit to be obtained at all.

Second, in their Reply to the original motion to dismiss, Defendants argue that Plaintiffs' argument should be disregarded because a Montana Air Quality Permit "is merely the 'permitting vehicle for the [PSD] Program,'" incorporating "substantive requirements without imposing additional PSD obligations." Dkt. # 52, at 5. Defendants are wrong, but whether additional substantive obligations would be added is irrelevant. The point is, there is no such thing in Montana as a Prevention of Significant Deterioration permit that stands alone from a Montana Air Quality Permit. They are one and the same. Thus, the situation in Montana is very similar to the situation faced by the district court in Oregon in *Sierra Club v. Portland General Elec. Co.* 663 F. Supp. 2d 983, 988 (D. Or. 2009). In Oregon, the permitting vehicle for the Prevention of Significant Deterioration program is an Air Contaminant Discharge Permit ("ACDP"). *Id.* As the court put it, "[a]n

ACDP is a PSD permit in Oregon." *Id*.  Because the Oregon Implementation Plan provides that "a PSD permit, or an ACDP, is necessary for both the construction and operation of the source," *id*. at 992-93, the court concluded that Plaintiffs' claims were not time-barred.  *Id.* at 994.  The Montana Implementation Plan compels a similar result here.

In their most recent motion to dismiss, Defendants only tangentially touch upon this critical argument by attempting to distinguish the Sixth Circuit case, *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth*., 480 F.3d 410 (6th Cir. 2007), that recognized that if the implementation plan makes *operating* without a Prevention of Significant Deterioration permit a violation, then plaintiffs' claims would not be time-barred.  *See* Dkt. # 70 at 9, n. 5.  Defendants' argument is that "the Montana SIP does not contain language comparable to the Tennessee provision emphasized by the Sixth Circuit." *Id.*  The question to ask, however, is not whether the plans contain different language, but rather whether each state plan makes operation without that state's version of a Prevention of Significant Deterioration permit illegal.  As explained in *Nat'l Parks,* 480 F.3d at 419 and above, both the Tennessee and Montana Plans do make such operation illegal.

6

**B.** **Neither *Midwest Generation* Nor *Homer City* Time-Bars Plaintiffs'**
**Pre-2008 Claims**.

In their current motion to dismiss, Dkt. # 70 at 8-10, the Defendants rely

heavily on recent Seventh and Third Circuit decisions addressing application of the

statute of limitations in the Prevention of Significant Deterioration context.

Neither decision addresses the situation presented in this case: where the applicable

implementation plan requires the state's version of a Prevention of Significant

Deterioration permit to both construct *and* operate.  In the Seventh Circuit case,

*United States v. Midwest Generation, LLC*, 720 F.3d 644, 647-48 (7th Cir. 2013),

the court specifically did not decide whether the Illinois Implementation Plan

requires a source to have a Prevention of Significant Deterioration permit in order

to operate.  *Id*. ("All we have for decision is a claim directly under § 7475.").

Similarly, in the Third Circuit case, the Court noted that:

> Pennsylvania's SIP merely parallels the Clean Air Act's PSD requirements
> and does nothing to transform the PSD permitting requirements into
> operating conditions.

*United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 290 (3d. Cir.

2013).  The court there added:

> The Pennsylvania SIP's omission of any language imposing an operational
> duty to obtain an approved plan (or PSD permit) aligns this case with the
> Eighth and Eleventh Circuits' decisions, both of which refused to infer
> ongoing obligations from SIPs with similar language.

7

*Id.*

In summary, because the Montana Implementation Plan *does* impose the duty to have a Montana Air Quality Permit containing Prevention of Significant Deterioration requirements as a condition of operation, this case is like *Nat'l Parks*, 480 F.3d 410 and *Portland General Elec.*, 663 F. Supp. 2d 983. Therefore, claims 10, 12, 13, 15, 16, 18, 19 & 21in the Amended Complaint should not be dismissed on statute of limitations grounds.

   C.   <u>Montana's State Implementation Plan Independently Prohibits Major Modifications from Operating Without Emission Limits Based Upon Best Available Control Technology. Consequently, this Claim Is Not Time-Barred.</u>

Unlike the issue presented above, Plaintiffs acknowledge that were this case brought in the Third or Seventh Circuits, their Best Available Control Technology claims (Claims 3, 6, 9, 12, 15, 18 & 21), would be foreclosed if based on 42 U.S.C. § 7475(a)(3). For the reasons stated the Response, Dkt. # 47 at 23-26, however, the recent rulings in *Midwest Generation* and *Homer City* on this issue are not persuasive authority. Moreover, each state implementation plan must be reviewed independently to determine whether it requires compliance with Best Available Control Technology as an ongoing obligation independent of a Prevention of Significant Deterioration permit. *See, e.g., Nat'l Parks*, 480 F.3d at 418 (finding that Tennessee implementation plan requires compliance with BACT as an

8

independent ongoing requirement); *Sierra Club v. Dairyland Power Coop.*,  Case 10-cv-303-bbc, 2010 U.S. Dist. LEXIS 112817, *13-*14, 2010 WL 4294622 (W.D.Wis., Oct. 21, 2010) (finding Wisconsin implementation plan imposes BACT as an ongoing requirement).

As for Defendants' novel argument that the Court has no jurisdiction to address the Best Available Control Technology claims, Dkt. # 70 at 14-15, even though the issues presented here have been litigated around the country, Defendants have not cited one case to support their theory, nor could they.  Section 7604(a)(1) explicitly authorizes Citizens to bring actions for violations of "an emission standard or limitation," and Section 7604(f)(4) defines that phrase to include "any other standard, limitation, or schedule established under . . . any applicable State implementation plan."  Since the Best Available Control Technology requirement has been established in the Montana Implementation Plan, this Court has jurisdiction to address violations of that requirement.

## II.   <u>Defendants' Arguments Seeking to Bar Plaintiffs' Efforts to Obtain Injunctive Relief Must Be Rejected.</u>

In this motion, Defendants make a number of meritless arguments related to Plaintiffs' claims for injunctive relief.  Each is addressed in turn below.

A.   The Defendants' Concurrent Remedy Doctrine Arguments Continue to Misapprehend the Nature of that Doctrine.

Assuming, for the sake of argument, that Plaintiffs' penalty claims for the pre-2008 modifications are barred by 28 U.S.C. § 2462, the concurrent remedy doctrine would not prohibit Plaintiffs from obtaining injunctive relief.  In this motion, the Defendants say that they stand by their earlier arguments regarding the concurrent remedy doctrine.  Dkt. # 70 at 11.  In their Reply Brief to the original Motion to Dismiss, Dkt. # 52, the Defendants continue to rely on *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) as determinative, even though *Williams* relies on Supreme Court authority in *Cope v. Anderson*, 331 U.S. 461, 464 (1947), yet as Plaintiffs previously explained, Dkt. # 47 at 27-31, the Supreme Court opinions in *Cope* and *Russell v. Todd*, 309 U.S. 280, 289 (1940) would not apply the statute of limitations to bar Plaintiffs' injunctive relief claims.

The Defendants continue to insist that the concurrent remedy doctrine applies whenever both the legal and equitable relief sought arise from the same set of facts.  Dkt. # 52 at 11.  This assertion misapprehends the nature of equitable jurisdiction.

> Where the jurisdiction of law and equity are concurrent, the applicable statute of limitations of the state governs, and not the equitable doctrine of laches.  There is some confusion in the authorities upon the point, **growing out of a failure to distinguish a purely equitable action** against corporate officers, as to enforce a trust, **and a legal action** seeking money damages for

10

a breach of statutory or common-law duty, **brought in equity for convenience**.  **It is only in the latter case that concurrent jurisdiction exists**.

*Hughes v. Reed*, 46 F.2d 435, 438 (10th Cir. 1931)(emphasis added).

"Exclusive" equity jurisdiction was exercised when the remedy was one equity courts alone could confer, even where legal remedies were also available for the same violation.  1 Pomeroy's Equity Jurisprudence (5th ed.) § 138.

> Cases in which the remedy sought and obtained is one which equity courts alone are able to confer must, upon any consistent system of classification, belong to the exclusive jurisdiction of equity, even though the primary right, estate, or interest of the party is one which courts of law recognize, and for the violation of which they give some remedy.  Thus a suit to compel the specific performance of a contract falls under the exclusive jurisdiction of equity, although a legal right also arises from the contract, and courts of law will give the remedy of damages for its violation.

*Id*.

Injunctive relief has always arisen only in equity jurisdiction.  *Id.* at §§ 136 and 138.  That is why only equitable defenses such as laches are available to contest a claim for injunctive relief.

B.    The Seventh Circuit's Conclusion in Midwest Generation that Section 2862 Bars Claims for Injunctive Relief Lacks Support in Established Law.

Defendants, Dkt. # 70 at 11, rely on *Midwest Generation,* 720 F.3d at 648 for the "independent" proposition that once the statute of limitations has run, the Plaintiff may not seek injunctive relief.  The proposition is "independent" because

11

it is completely unsupported in the opinion with any rationale, and it is contrary to every other decision that has examined the issue. *See* Dkt. # 47 at 30 for a partial listing of cases. That is why those courts that have found injunctive relief claims time-barred, albeit incorrectly, have had to turn to the concurrent remedy doctrine.

C.  <u>Defendants' Argument that the Clean Air Act Does Not Authorize Injunctive Relief for Plaintiffs' Alleged Prevention of Significant Deterioration and Best Available Control Technology Violations Misreads the Act</u>.

Defendants argue, Dkt. # 70 at 15-18, that the Clean Air Act does not authorize Plaintiffs to obtain injunctive relief for Prevention of Significant Deterioration and Best Available Control Technology violations. This argument is laced with errors. Below, Plaintiffs explain why citizens are entitled to seek injunctive relief in these cases, and then Plaintiffs explain the Defendants' errors.

First, the Act's citizen suit provision allows the district court to impose an injunction in citizen suits over prevention of significant deterioration violations, regardless of whether that action is one directly enforcing the Act itself (i.e. 42 U.S.C. § 7475) or through enforcement through the State Implementation Plan. As Defendants acknowledge, the Act's citizen suit provision, 42 U.S.C. § 7604(a) allows citizens to bring actions against anyone is in violation of an "an emission standard or limitation," subsection (a)(1), or "who proposes to construct or constructs any new or modified major emitting facility without a permit,"

12

subsection (a)(3).  The provision then specifically provides the District Court with

jurisdiction "to enforce such an emission standard or limitation."  *Id*.  Section

7604(f) then defines "emission standard or limitation under this chapter" to include

a number of items including an "emission limitation, standard of performance or

emission standard," § 7604(f)(1);  "any other standard, limitation, or schedule

established under . . . any applicable State implementation plan," § 7604(f)(4); and

"and any requirement to obtain a permit as a condition of operations," *id*.

The Act then defines "emission limitation" and "emission standard" to

include:

> [A] requirement **established by the State or the Administrator** which
> limits the quantity, rate, or concentration of emissions of air pollutants on a
> continuous basis, **including any requirement relating to the operation or
> maintenance of a source to assure continuous emission reduction**.

42 U.S.C. § 7602(k) (emphasis added).  Thus, this definition includes emission

reduction rules established by EPA or by States through State Implementation

Plans

The Act defines "standard of performance" to include some identical

language to the "emission limitation" definition:

> The term "standard of performance" means a requirement of continuous
> emission reduction, **including any requirement relating to the operation
> or maintenance of a source to assure continuous emission reduction**.

13

42 U.S.C. § 7602(l) (emphasis added).  Thus, "standards of performance" are identical in nature to "emission limitations," except that "standards of performance" need not be established by a State or EPA.  They can be free-standing obligations arising from the Clean Air Act itself.

The importance of these definitions is this: enforcement of Prevention of Significant Deterioration provisions through State Implementation plans is enforcement of "emission limitations."  Enforcement of statutory Prevention of Significant Deterioration provisions, such as 42 U.S.C. § 7475, is enforcement of "standards of performance."  Both emission limitations and standards of performance are "emission standard[s] or limitation[s] under this chapter," *see* 42 U.S.C. § 7604(f)(1), and therefore district courts have jurisdiction to enforce them. *See, e.g., Conservation Law Foundation v. Federal Highway Administration*, 24 F.3d 1465, 1477 (1st Cir. 1994) (finding that a Clean Air Act statutory requirement that transportation projects contribute to annual emission reductions is a "standard of performance").

The Defendants may argue that Section 7475 is not a standard of performance, relying on *Homer City*, 727 F.3d at 285-86.  Defendants assert that this case stands for the proposition that "failure to obtain a PSD permit is not a violation of an "emission standard or limitation," as defined in 7604(f)(4)."  Dkt. #

14

70 at 17.  The *Homer City* court never says that; rather, it says it could not find a freestanding requirement in Pennsylvania providing that one must have a Prevention of Significant Deterioration permit as a condition of operations.  Even though the *Homer City* court did not find in the Act itself a provision prohibiting operation of a Prevention of Significant Deterioration source without a Prevention of Significant Deterioration permit, even that court would surely not contest that Section 7475 *relates to* "the operation or maintenance of a source," since how a facility is constructed will ultimately relate to how it is operates and how it is maintained.

It is important to note that even if this argument has any legitimacy, it would properly affect only claims 22 and 23, which only mention Section 7604(a)(3) as the basis for jurisdiction.  All of Plaintiffs' other claims, as Plaintiffs have explained throughout this brief and its prior response to the motions to dismiss, specifically seek to enforce requirements imposed by the Montana State Implementation Plan (including Mont. Admin. R. 17.8.743(1), which specifically provides that: "a person may not construct . . . without first obtaining a Montana air quality permit."  With respect to Claims 22 and 23, both of which involve projects that occurred in 2011, if the Court does not accept that bringing an action under Section 7475 involves the enforcement of a "standard of performance, " then

Plaintiffs seek leave to amend the complaint to specifically state that these claims are also brought under Section 7604(a)(1).

### III. Defendants' Various Challenges to the Sufficiency of Plaintiffs' Pleading under *Iqbal* and *Twombly* Must Fail Because the Complaint Satisfies Fed. R. Civ. P. 8.

Defendants' motion to dismiss argues that Plaintiffs' Amended Complaint fails to satisfy the pleading requirements of Fed. R. Civ. P. 8 as interpreted by the Supreme Court in *Iqbal* and *Twombly*.  Defendants' challenges to the sufficiency of the Amended Complaint must fail for three reasons.  First, *Twombly* and *Iqbal* did not alter the liberal notice pleading standard as expressed in Fed. R. Civ. P. 8. Second, Plaintiffs' allegations are sufficient to satisfy this standard, as expressed in Fed. R. Civ. P. 8 and *Twombly* and its progeny, because the allegations contain sufficient facts to put Defendants on notice of Plaintiffs' claims.  Third, Defendants' motion to dismiss related but unknown potential claims is inappropriate given the rules allowing post-complaint and pre-trial discovery. Thus, this court should not dismiss Plaintiffs' claims.

> A. *Iqbal* and *Twombly* Did Not Fundamentally Alter the Notice Pleading Standard in the Federal Rules of Civil Procedure and the Court Should Reject Defendants' Arguments that Plaintiffs are Required to Plead with More Specificity.

Fed. R. Civ. P. 8 sets out the longstanding notice pleading standard for federal courts, and *Iqbal* and *Twombly* did not alter the underlying standard.  All

16

that is required at the pleading stage is "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. Pro. 8(a)(2).  Although

in order "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual material, accepted as true, to 'state a claim to relief that is plausible on its

face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *(quoting Bell Atl. Corp v.

Twombly*, 550 U.S. 544, 570 (2007), the pleading standard does not require

"detailed factual allegations."  *Id.*  The pleading only need state "enough fact[s] to

raise a reasonable expectation that discovery will reveal evidence of the

[misconduct alleged]."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007).

These cases do not require particularized or "heightened fact pleading of

specifics."  *Id.* at 570.  Plaintiffs are only required to give "fair notice of what the

. . . claim is and the grounds upon which it rests."  *Id.* at 555.  "Dismissal under

Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.

Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Plaintiffs have set

forth adequate facts that, if taken as true, state a plausible claim upon which relief

should be granted and provide adequate notice to Defendants regarding the basis

for the claims. Therefore, this court should not dismiss Plaintiffs' claims.

17

B.    <u>Plaintiffs Have Alleged Sufficient Facts To Put Defendants on Notice
of the Claims and the Grounds Upon Which They Rest.</u>

The crux of Defendants' argument is that Plaintiffs have failed to allege

specific facts to support Plaintiffs' aggregation of multiple projects that would

result in a "major modification."  Dkt. # 70 at 21.  However, aggregation is not

even a necessary element of Plaintiffs' claims.  Indeed, as Defendants

acknowledge, although EPA issued a rule regarding aggregation in 2009, it was

quickly withdrawn before it ever went into effect.  Dkt. # 70 at 20, n. 15.

Nevertheless, now Defendants want the complaint dismissed because Plaintiffs

have not provided sufficient facts regarding a withdrawn rule.

Moreover, as Defendants themselves acknowledge, "a 'major modification'

is 'any physical change in, or change in the method of operation of, a major

stationary source that would result in a significant net emissions increase" of any

regulated pollutant.'"  Dkt. # 37 at 3 (quoting Mont. Admin. R. 801(20)).  Thus,

Plaintiffs only need to allege that Defendants have made a physical or operational

change that would result in a significant net emissions increase.  Plaintiffs have

done so, specifically identifying by Work Order number the changes made by the

Defendants.  Plaintiffs believe that each of those changes, standing alone, would

result in a significant net emissions increase.  Plaintiffs need allege no more.

18

Plaintiffs have gone on, however, in their Amended Complaint and grouped certain Work Orders together based, in part, upon when they were completed and their understanding of power plant engineering. The types of specific facts that Defendants find lacking go beyond the minimum pleading requirements under Fed. R. Civ. P. 8. Defendants' arguments attempt "to raise the bar" for Plaintiffs' complaint and contradict Rule 8's requirement for a "short and plain statement" showing the claimant is entitled to relief. Wright & Miller's Federal Practice and Procedure treatise explains the purpose behind the "short and plain statement" requirement in Rule 8(a) and how the rule relates to the level of detail necessary for a complaint:

> It was the design of the rulemakers that the discovery procedures should give the parties an opportunity for securing an elaboration of the allegations and that process and not the pleadings bears the burden of filling in the details of the dispute for the parties and the court.

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 (3d ed. 2004) (hereinafter Wright & Miller). That interpretation of the federal rules makes sense, particularly in the context of citizen suit Clean Air Act cases where the owners and operators of the facilities are in control of the relevant information. *See, e.g.*, Wright & Miller § 1217 (noting that what constitutes a "short and plain statement" of a party's claim for relief depends on the "nature of the action, the relief sought, and the respective positions of the parties in terms

19

of the availability of information.").  The level of specificity sought by Defendants

is precisely the type of information that should be addressed in discovery, and not

in a complaint.  *See, e.g., Twombly*, 550 U.S. at 555 (noting that stating a claim

upon which relief can be granted means that a complaint must contain enough

factual matter to raise a reasonable expectation that discovery will reveal evidence

of a legal violation).

     Defendants state that Plaintiffs failed to allege interconnection or any facts

that would support aggregating multiple projects together.  Dkt. # 70 at 21.

Plaintiffs clearly allege that the various projects taken as a whole result in a "major

modification," Am. Compl. ¶¶ 65–118 (Dkt. # 67).  Alleging that projects should

be aggregated is, by definition, an assertion that the projects are interconnected.

*See Robert and Shellan Isackson Family Trust v. Fireman's Fund Insurance Co.*,

No. CV 13-115-M-DLC, 2013 WL 5492946, at *2 (D. Mont. Sept. 30, 2013)

(alleging Fireman's refusal to defend was wrongful was sufficient to meet the

pleading standards of Fed. R. Civ. P. 8 because "[a]n alleged breach of contract is,

by definition, an assertion of wrongful conduct.").  It is this general allegation, not

the specific facts of how the projects are related, that the liberal pleading standard

of Fed. R. Civ. P. 8 requires.  At the motion to dismiss stage, these general

allegations embrace the specific facts necessary to prove the claims on the merits.

*U.S. v. Miljus*, Civ. No. 06-1832-PK, 2008 WL 3539946, at *2 (D. Or. Aug. 11, 2008) (*citing Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (a court may "presume that general allegations embrace those specific facts necessary to support the claim").

Moreover, Plaintiffs have provided facts to give notice to Defendants about why these projects should be aggregated. The Amended Complaint makes various claims of major modifications based upon the years in which groups of projects occurred. This provides Defendants notice that the timing of the projects in part lead Plaintiffs to believe, at least initially, that these Projects are interconnected.[1] Even though the timing of the projects may not be enough on its own for Plaintiffs to prove the connection, this information provides one benchmark that courts may use to assess whether projects are substantially related. Where the claim is plausible, the Plaintiffs failure to prove the case on the pleadings does not warrant dismissal. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012), *cert. denied*, 2013 WL 1808554 (Oct. 7, 2013) (*citing Iqbal*, 556 U.S. at 677 (2009).

_____

[1] The discovery process in this case also provides more information both to Plaintiffs and Defendants for the basis of aggregating various groups of projects. For example, in Plaintiffs Third Request for Documents and Things, Plaintiffs requested information regarding projects grouped together as one claim because they were completed on the same day. *See* Plaintiffs Third Request for Documents and Things # 29, attached as Exhibit A.

21

Thus, Defendants are aware of at least some of the facts that lead Plaintiffs to believe that these projects should be aggregated.

The specific facts that Defendants appear to want from Plaintiffs are likely in the exclusive control of Defendants.  As a result, Plaintiffs could not allege anything other than the general allegation that the projects together amount to a "major modification" at this early stage in the proceedings.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010) (noting the *Twombly* plausibility standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant"); *Stimson Lumber Co. v. International Paper Co.*, 2010 No. CV 10-79-M-DWM-JCL, WL 5186752, at *2 (D. Mont. Dec. 10, 2010) (facts peculiarly within Defendant's control may be pled based on information and belief).

For example, Plaintiffs' Complaint makes general allegations that Defendant's overhauled Unit 1 in 2012 by replacing the economizer, the condenser, V-Bottom tubes, a generator-exciter, 3 Induced Draft (ID) fans as well as re-wrapping the wire of the rotor of the generator and replacing two cells of the

cooling tower.[2]  Compl. ¶ 62 (Dkt. # 1).  Plaintiffs amended their complaint in order to drop some of their claims and add new ones.  However, Plaintiffs preserved the claim for modifications to Unit 1 in 2012 and included more specific facts including the individual project numbers of the various changes and that these individual changes were part of "Super Project # 10009470."  Am. Compl. ¶ 53 (Dkt. # 67).  The fact that these smaller projects were all part of a super project was only revealed to Plaintiffs due to discovery that happened between the filing of their Complaint and their Amended Complaint.  This example demonstrates the need for discovery in order to put forth the facts necessary to ultimately prove that the various projects are related because these facts are in Defendants' exclusive control.  Defendants are aware of the general allegations that these projects should be aggregated, Defendants have possession and control of information relating to how these projects may in fact be interconnected, and they are aware of the factors EPA uses to determine whether projects should be aggregated.  Therefore, Defendants have sufficient notice of Plaintiffs claims and know the grounds for which these claims are based.

---

[2] Apparently Defendants found these allegations to be specific enough to provide them with notice of the claims and the grounds upon which they stood because Defendants' first motion to dismiss did not claim that Plaintiffs had failed to allege sufficient facts under *Twombly*.  *See generally* Dkt. #37.

23

Additionally, Defendants declare that because Plaintiffs did not give more specific facts in the Amended Complaint, they are left guessing why Plaintiffs think these projects are interconnected, implying that they will not have fair notice of how to defend themselves against these claims.  Dkt. # 70 at 23.  This contention is disingenuous since Plaintiffs have given facts on why these projects are interconnected, and Defendants are in the best position to know why these projects would be interconnected.  Therefore, Defendants have knowledge in their possession on how to best defend against these claims.  *See A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("[A]llegations in a complaint or counterclaim ... must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.")

Because the specific facts necessary to prove Plaintiffs' claims on the merits are peculiarly within Defendants possession and control, and because Plaintiffs have pleaded sufficient facts to put Defendants on notice and be able to effectively defend themselves, this court should not dismiss Plaintiffs' claims.

C.   Plaintiffs Need Not List Every Actionable Violation in their Complaint.

Finally, Defendant relies on *Twombly* in asking the Court to strike allegations in the Complaint concerning "other projects" that Defendants may have made at the Colstrip facility and to bar Plaintiffs from conducting discovery

24

regarding these projects or changes.  Dkt. # 70 at 24–25.  Nothing from *Twombly* or any other cases from the Ninth Circuit supports these arguments.  In fact, the Court in *Twombly* specifically held that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  550 U.S. 544, 563 (2007).

Defendants' arguments turn Fed. R. Civ. P. 8 and the rules allowing post-complaint and pre-trial discovery on their head.  A complaint is simply not the equivalent of a final pretrial order under Fed. R. Civ. P. 16.  The allegations Defendants seek to strike actually go beyond the requirements of notice pleading and put Defendants on notice that Plaintiffs believe discovery may disclose additional legal violations.

Defendants claim that dismissing claims based on "other projects" would reduce the scope of the case.  Dkt. # 70 at 24.  Defendants rely on one case from the district court of Pennsylvania in support of their motion.  Dkt. # 70 at 25 (*citing New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC*, No. 07-CV-5298, 2009 WL 3234438, at *19 (E.D. Pa. Sept. 30, 2009)).  However, this case does not support what Defendants actually want—a reduction in the scope of discovery.  In *Reliant*, even though the court dismissed claims based upon "other modifications," it did so with the understanding that Plaintiffs could seek leave to file supplemental

25

pleadings pursuant to Fed. R. Civ. P. 15(d), "if appropriate after engaging in discovery." No. 07-CV-5298, 2009 WL 3234438, at *19 (E.D. Pa. Sept. 30, 2009); *see also Sierra Club v. Portland General Elec. Co*, 663 F.Supp.2d 983, 995 (D. Or. 2009) *(citing Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002) (holding that a citizen plaintiff may include additional violations in a Clean Water Act suit once they are discovered)).

Accordingly, there is absolutely nothing improper about including such allegations in the Complaint or about conducting discovery before trial to identify additional projects and/or violations.

## CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss should be denied.

Dated this 8th day of November, 2013

<div style="margin-left:40%">

Respectfully submitted,
/s/ Roger Sullivan
Roger Sullivan

/s/ John Heenan
John Heenan

/s/ George Hays
George E. Hays

/s/ David Bender
David C. Bender

</div>

<div style="text-align:center">26</div>

<u>/s/ Aubrey Baldwin</u>
Aubrey E. Baldwin

*Counsel for Plaintiffs*

27

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this Brief complies with the requirements of Rule 7.1(d)(2).  The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch. The total word count is 5831 excluding caption, certificate of compliance, signature block, tables of contents and authorities, and exhibit index. The undersigned relies on the word count of the word processing system used to prepare this document.

/s/ George E. Hays
George E. Hays