William Bumpers (admitted *pro hac vice*)
Joshua B. Frank (admitted *pro hac vice*)
Megan H. Berge (admitted *pro hac vice*)
Christine G. Wyman (admitted *pro hac vice*)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 639-7700
Fax: (202) 639-7890
**COUNSEL FOR DEFENDANTS**

Stephen R. Brown
Garlington, Lohn & Robinson, PLLP
350 Ryman Street
Missoula, Montana  59802
Telephone:  (406) 523-2500
Fax: (406) 523-2595

**COUNSEL FOR AVISTA CORPORATION
AND PACIFICORP**

William W. Mercer
Michael P. Manning
Holland & Hart LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana  59103-0639
Telephone:  (406) 252-2166
Fax:  (406) 252-1669
**COUNSEL FOR PPL MONTANA, LLC, PUGET SOUND ENERGY AND PORTLAND GENERAL ELECTRIC COMPANY**

Stephen D. Bell
Dorsey & Whitney LLP
Millennium Building
125 Bank Street, Suite 600
Missoula, Montana  59802-4407
Telephone: (406) 721-6025
Fax: (406) 543-0863

B. Andrew Brown (admitted *pro hac vice*)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402
Telephone: (612) 340-2600
Fax: (612) 340-2868

**COUNSEL FOR NORTHWESTERN CORPORATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SIERRA CLUB and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br><br>      Plaintiffs,<br><br>vs.<br><br>PPL MONTANA LLC, AVISTA CORPORATION, PUGET SOUND ENERGY, PORTLAND GENERAL ELECTRIC COMPANY, NORTHWESTERN CORPORATION, PACIFICORP,<br><br>      Defendants. | CV 13-32-BLG-DLC-JCL<br><br><br><br><br><br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT** |

# **TABLE OF CONTENTS**

I. ARGUMENT ................................................................................................ 1

    A. Under the Montana SIP, A PSD Violation Occurs At The Time Of Construction And Does Not Continue. .......................................... 1

    B. The Requirement to Apply BACT Through a PSD Permit Cannot Support an Independent Claim. ........................................... 3

    C. Plaintiffs Cannot Obtain Injunctive Relief On Their PSD And BACT Claims. ................................................................................... 4

        1. Plaintiffs' injunctive relief claims are barred by the concurrent remedy doctrine. ............................................... 4

        2. Injunctive relief is not available after the statute of limitations expires. ................................................................ 5

        3. The citizen suit provisions do not authorize injunctive relief for Plaintiffs' PSD and BACT claims. ............................ 6

    D. Plaintiffs Fail To Allege Sufficient Facts Supporting Their Claims. ...... 7

        1. Plaintiffs' aggregation of physical changes is not plausible on its face. ................................................................ 8

        2. The Complaint fails to give Defendants notice of the claims against them. ............................................................. 10

II. CONCLUSION ........................................................................................... 14

# **EXHIBIT INDEX**

Exhibit A - Plaintiffs' Response to Defendants' First Set of Interrogatories (dated Oct. 21, 2013)

i

Plaintiffs cannot overcome the ever-growing weight of authority rejecting their positions on statute of limitations, BACT as an independent claim and the availability of injunctive relief for both time-barred and non-time-barred claims. Plaintiffs offer nothing but misinterpretations of the Montana regulations to support their strained positions. Plaintiffs further fail to properly plead their claims and to provide Defendants with notice of the allegations against them. Plaintiffs' Amended Complaint must be dismissed.

## I. ARGUMENT

### A. Under the Montana SIP, A PSD Violation Occurs At The Time Of Construction And Does Not Continue.

Plaintiffs fail to distinguish their pre-2008 PSD and BACT Claims from the claims dismissed in *United States v. Midwest Generation, LLC,* 720 F.3d 644 (7th Cir. 2013), and *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274 (3d Cir. 2013). Plaintiffs' effort to evade those opinions is based on two assumptions concerning the Montana State Implementation Plan ("SIP"): (1) that the duties to obtain a Montana Air Quality Permit ("MAQP") and a PSD Permit are "one and the same," Plaintiffs' Brief in Opposition (Doc. 74) ("Opp'n") at 5, and (2) that the Montana SIP requires Defendants to obtain a PSD permit to "both construct and operate" a modification, *id.* at 7. Both of those assumptions are wrong.

First, the duties to obtain an MAQP and a PSD Permit are not "one and the same." The Montana SIP recognizes separate PSD requirements in Subchapter 8 ("Prevention of Significant Deterioration of Air Quality") and MAQP requirements in Subchapter 7 ("Permit, Construction, and Operation of Air Contaminant Sources"). Plaintiffs recognize that distinction by alleging separate PSD and MAQP Claims. If there were, as Plaintiffs assert, a single duty to obtain an MAQP containing PSD requirements, Opp'n at 3, then there could only be a single violation for failing to do so. Plaintiffs conflate the MAQP and PSD requirements in an attempt to align this case with *National Parks Conservation Ass'n v. Tennessee Valley Authority*, 480 F.3d 410 (6th Cir. 2007) ("*TVA*"), the only circuit decision finding an ongoing duty to obtain a PSD permit. But the *TVA* court relied on a unique Tennessee SIP provision establishing that the duty to obtain a construction permit is "ongoing, even post-construction." *Id.* at 419 (citing SIP language allowing a construction permit to issue *after* construction is completed). The Montana SIP does not contain any such language.[1] As Plaintiffs acknowledge, the Montana PSD regulations are "modeled upon EPA regulations," Pls.' Opp'n to Partial Mot. to Dismiss (Doc. 47) at 6, and the Third, Seventh, Eighth and Eleventh

---

[1] In *Sierra Club v. Portland General Electric Co.*, the court also highlighted express post-project permitting requirements not found in the Montana SIP. 663 F. Supp. 2d 983, 992 (D. Or. 2009) (citing Oregon SIP provision imposing ongoing compliance responsibilities after approval to construct).

Circuits all hold that no post-construction PSD permit obligations exist under the EPA regulations.

Second, the Montana SIP does not require Defendants to obtain a PSD permit to "both construct and operate" a modification. Opp'n at 7. Plaintiffs' argument rests not on text in Subchapter 8 (the PSD regulations), but in Subchapter 7. *See id.* at 4 (citing Mont. Admin. R. ("ARM") 17.8.743(1)). Plaintiffs' argument that the Montana PSD regulations require a permit to operate a modification is not supported by the regulations' plain language. *See* Defs.' Mem. in Supp. of Partial Mot. to Dismiss at 25-28 (Doc. 37) ("PMTD").

**B.    The Requirement to Apply BACT Through a PSD Permit Cannot Support an Independent Claim.**

The Third, Seventh, Eighth and Eleventh Circuits have rejected Plaintiffs' contention that BACT is a freestanding requirement. *See* Defs' Mem. in Supp. of Mot. to Dismiss (Doc. 70) ("MTD") at 12. The Montana SIP requires the same outcome here. ARM 17.8.819(3) provides that a source "shall apply" BACT for each *proposed* emission unit where there is a major modification. This language – which mirrors the EPA regulations, 40 C.F.R. §52.21(j)(3) – has been rejected in numerous cases as a basis for enforcing an independent BACT obligation. *See* PMTD at 18 (Doc. 37); *see also United States v. U.S. Steel Corp.*, 2013 WL 4495665, at *7 (N.D. Ind. Aug. 21, 2013) (summarizing circuit court decisions and

3

holding that the "'shall apply' language . . . doesn't mean that there is an ongoing duty to apply the BACT limits independent of the permitting process").

Further, there is no jurisdictional basis for Plaintiffs' BACT Claims. Plaintiffs allege these claims as violations of "an emission standard or limitation" under 42 U.S.C. §§7604(a)(1) and 7604(f)(4). Opp'n at 9. But BACT is not an emission standard or limitation in Montana until it is determined by MDEQ, *see* ARM 17.8.801(6), and no such determination has been made for the Colstrip units. "Without an issued PSD permit, there are no BACT emission limits to violate." *EME Homer City*, 727 F.3d at 288.

### C. Plaintiffs Cannot Obtain Injunctive Relief On Their PSD And BACT Claims.

#### 1. Plaintiffs' injunctive relief claims are barred by the concurrent remedy doctrine.

Plaintiffs' attempt to avoid application of the concurrent remedy doctrine, Opp'n at 10-11, is precluded by *Federal Election Commission v. Williams*, 104 F.3d 237 (9th Cir. 1996). PMTD at 20-21 (Doc. 37); Defs.' PMTD Reply at 9-10 (Doc. 52). In *Williams*, the Ninth Circuit made clear that when "the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both." 104 F.3d at 240 (relying on *Cope v. Anderson*, 331 U.S. 461, 464 (1947)). Here, because Plaintiffs seek to vindicate a single right, the statute of limitations applies to both Plaintiffs' legal and equitable claims. *See Russell v.*

*Todd,* 309 U.S. 280, 289 (1940) ("[W]hen the [equity] jurisdiction of the federal court is concurrent with that of law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations."); *Sierra Club v. Otter Tail*, 615 F.3d, 1008, 1018 (8th Cir. 2010) ("Numerous federal courts have understood [*Russell*] to bar equitable relief wherever time barred legal remedies would have been available to vindicate the same right.").

### 2. Injunctive relief is not available after the statute of limitations expires.

In *Midwest Generation*, the Seventh Circuit dismissed PSD claims for injunctive relief brought after the statute of limitations expired because there was no continuing violation to be remedied. 720 F.3d at 646-47. Plaintiffs describe Chief Judge Easterbrook's opinion as "completely unsupported . . . with any rationale." Opp'n at 12. The opinion demonstrates otherwise: "[E]nduring consequences of acts that precede the statute of limitations are not independently wrongful." *Midwest Generation*, 720 F.3d at 648 (citing Supreme Court precedent). Failing to obtain a PSD permit is not a continuing violation, so no claim for relief survives after the limitations period expires. *Id.* ("Today's emissions cannot be called unlawful just because of acts that occurred more than five years before the suit began.").

### 3. The citizen suit provisions do not authorize injunctive relief for Plaintiffs' PSD and BACT claims.

Even for Plaintiffs' PSD and BACT claims filed within the limitations period, this Court lacks jurisdiction to award injunctive relief. The citizen suit provision, 42 U.S.C. §7604(a), authorizes civil penalty and injunctive relief claims for violation of an emission standard or limitation under subsection (a)(1), but allows only civil penalties for failure to obtain a pre-construction PSD permit under subsection (a)(3). 42 U.S.C. §7604(a) (limiting a court's jurisdiction to enforcing an "emission standard or limitation"). Plaintiffs pled claims 22 and 23 only under subsection (a)(3), Opp'n at 15-16, so those claims must be dismissed to the extent they seek injunctive relief.[2]

Plaintiffs' remaining PSD and BACT claims pled under subsection (a)(1) also fail to provide jurisdiction for injunctive relief because they do not allege a violation of an "emission standard or limitation" as required by the statute. Section 7604(f) provides the controlling definition of the term "emission standard or limitation" ("For purposes of this section, 'emission standard or limitation under this chapter' means . . ."). Plaintiffs' Amended Complaint, ¶ 48 (Doc. 67), narrowed their allegations under subsection (a)(1) to "emission standard[s] or

---

[2] Plaintiffs may not re-plead through briefing. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("new allegations contained in the . . . opposition motion . . . are irrelevant for Rule 12(b)(6) purposes"). Even if the claims were recast under section 7604(a)(1), this Court would lack jurisdiction to award injunctive relief, as discussed below.

limitation[s]" as "defined in 42 U.S.C. §7604(f)(4)." In *EME Homer City*, the Third Circuit found that failure to obtain a PSD permit did not fall within the requirements identified in §7604(f)(4). This finding was not limited to the Pennsylvania SIP, as Plaintiffs contend, Opp'n at 15, but reflected the court's analysis of the definitions in §7604(a)(1) and (f)(4). *See* 727 F.3d at 285-86.

Plaintiffs stray beyond their pleading in an effort to find a jurisdictional basis for their injunctive relief claims. Plaintiffs specifically pled their PSD claims as authorized only under §7604(f)(4),[3] but now ask the Court to find jurisdiction under §7604(f)(1). Opp'n at 14. Plaintiffs also point to the general definitions of "emissions limitation" and "standard of performance" in §7602(k) and (l) to speculate that the Third Circuit could not have meant what it said in *EME Homer City*. Opp'n at 13-14. This contention is directly refuted by the Third Circuit's analysis. *See* 727 F.3d at 286 ("[J]ust because the PSD program requires a source to obtain a permit that sets some operating conditions does not mean that the PSD program requires a source without a permit to comply with operating conditions.").

### D.   Plaintiffs Fail To Allege Sufficient Facts Supporting Their Claims.

Plaintiffs' Opposition confirms the fundamental inadequacy of their pleading. While Plaintiffs may await discovery to uncover facts to support their

---

[3] Plaintiffs emphasized their reliance on §7604(f)(4) as the basis for their claims under §7604(a)(1) in their Opposition to Defendants' first motion to dismiss (Doc. No. 47), at 32-33.

allegations, they cannot await discovery to *determine what their allegations are*. Plaintiffs argue that they need not plead the specific "physical change" that they allege triggered Defendants' PSD obligations, *see* Opp'n at 18, instead requiring Defendants to guess at which of the myriad combinations of the 64 projects at issue Plaintiffs will settle on as the purported violation. Plaintiffs prefer to wait to define their claims until it is most advantageous for them, even as late as the Rule 16 pretrial order. *Id.* at 25. Plaintiffs' "hide-the-ball" tactic is impermissible and patently unfair; it violates notice pleading and deprives Defendants the ability to reasonably defend themselves.

### 1. Plaintiffs' aggregation of physical changes is not plausible on its face.

The cornerstone of each of Plaintiffs' claims is the definition of the work that is alleged to have triggered PSD requirements, because PSD requirements are triggered only if there is "a physical change" (*i.e.*, a project undertaken at a unit) that "would result in" a significant increase in emissions. *See* ARM 17.8.801(2), 17.8.818. Plaintiffs bear the burden of demonstrating that a physical change has taken place. Therefore, they must define each project that they believe constituted a physical change that caused a significant increase in emissions.[4] Each of

---

[4] Plaintiffs argue that "aggregation is not even a necessary element of Plaintiffs' claims." Opp'n at 18. Yet where Plaintiffs contend that nominally-separate projects should nevertheless be treated as a single "physical change," this contention is false. Plaintiffs must allege and prove that there was a "physical

8

Plaintiffs' claims in the Amended Complaint lists a number of separate projects that have no apparent relationship beyond having been completed during the same maintenance outage. But EPA has made clear that timing alone is not sufficient to treat nominally separate projects as if they are a single physical change. *See* MTD at 21 n.16 (Doc. 70).[5]

Plaintiffs concede they must prove the projects are "substantially related" before they may be treated as a single physical change. Opp'n at 21. But the Amended Complaint lacks allegations of *any* relationship, let alone a substantial relationship, among the listed projects. There is not even a general allegation upon which to presume that there are specific facts that will come to light to support it. *See* Opp'n at 21; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." (quotation omitted)). While Plaintiffs need not "prove" their case on the pleadings, they must set forth grounds that if accepted as true would entitle them to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief'" not "labels and

---

change," and where they combine nominally-separate projects into one, they must plead some plausible basis for doing so.

[5] Plaintiffs' assertion that "Defendants want the complaint dismissed because Plaintiffs have not provided sufficient facts regarding a withdrawn rule" is wrong. *See* Opp'n at 18. The current aggregation requirements are explained in EPA guidance, which were discussed in-depth in EPA's withdrawn aggregation rule. *See* MTD at 20 n.15 (Doc. 70). That guidance addresses the ambiguity in the term "physical change" used in the PSD regulations.

conclusions."); *In Re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court cannot accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true). Here, Plaintiffs ask the Court to conclude their claims are "plausible" based only on the timing of the projects, which even Plaintiffs agree may not be enough. Opp'n at 21.

### 2. The Complaint fails to give Defendants notice of the claims against them.

Plaintiffs contend that they need not define their claims because "Defendants are in the best position to know why these projects would be interconnected" and "have knowledge in their possession on how to best defend against these claims." Opp'n at 24. Defendants have ample facts to show there is no relationship between these projects other than their timing.[6] But Plaintiffs miss the point: Defendants cannot defend against claims that have not been defined.

Every aspect of this case depends on the definition of each physical change alleged to trigger PSD requirements. Although the Amended Complaint includes 64 separate projects, Plaintiffs have grouped them – for now – into nine alleged physical changes, based solely on the unit outage in which they were done. Defendants noted their concern that Plaintiffs may later try to allege that each of the 64 projects or some other project combinations were major modifications. *See*

---

[6] Plaintiffs' "example" of referring to the Unit 1 2012 outage as a "Super Project," Opp'n at 22-23, which merely parrots irrelevant accounting nomenclature, is the only such reference in the Amended Complaint.

10

MTD at 23 n.17 (Doc. 70). Plaintiffs have validated that concern, asserting their "belief" that each of the 64 projects "standing alone, would result in a significant net emissions increase." Opp'n at 18. Though they plead only nine aggregated modifications, Plaintiffs want flexibility to reconstitute those alleged physical changes multiple ways and multiple times through the course of the litigation. For example, Plaintiffs' first claim includes 11 separate projects. Plaintiffs currently group those 11 projects as one aggregated alleged physical change, but there are literally thousands of ways Plaintiffs could seek to aggregate those projects (*e.g.*, aggregate projects 1 and 2 and treat the remainder separately; aggregate projects 1, 2 and 4, and treat the remainder separately, and so on). Defendants have no way of knowing what the claims are – and defending against them – unless they are properly alleged by Plaintiffs.

Plaintiffs' resistance to striking references to "other projects" in the Amended Complaint exacerbates the problem. Opp'n at 24-26. Plaintiffs seek to reserve for themselves the right to add new projects at their discretion without additional pleading. *Reliant* rejected similarly vague language because it fails to give Defendants notice of the claims being brought against them. *New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC*, No. 07-cv-5298, 2009 WL 3234438, at *19 (E.D. Pa. Sept. 30, 2009). Like similar plants across the country, Colstrip has undertaken thousands of projects since it began operating, and

Defendants gave Plaintiffs lists of them in discovery. If Plaintiffs wish to contend that "other projects" should be added to the Complaint, they must do so through timely pleading. Neither Defendants nor the Court should be left to guess which projects are in and which are out.

Plaintiffs wrongly argue that Defendants are seeking "a reduction in the scope of discovery." Opp'n at 25-26. To the contrary, Defendants seek to avoid the constant threat of redefinition of the case outside of the pleadings. The arguments regarding many key issues for summary judgment and trial will be fleshed out in expert reports. Under the current schedule, Defendants must present expert reports first for issues on which they bear the burden of proof. Order at 2 (Doc. 61). To develop their defenses through those expert reports, Defendants must know well in advance which specific projects Plaintiffs allege are physical changes that caused a significant emissions increase. For example, a threshold issue that must be established is whether the projects fall outside of the PSD "physical change" definition because they are routine maintenance, repair and replacement. This determination is made on an individual basis for each project. If Plaintiffs can retain carte blanche to define and redefine (and even add to) the projects as they wish, Defendants' experts will be forced to evaluate the projects as aggregated into nine alleged modifications, as 64 alleged modifications, and

potentially other permutations that Plaintiffs may later suggest. It is simply not fair to keep Defendants in the dark about the claims being brought against them.

Discovery from Defendants to Plaintiffs is not the answer to this problem, s*ee* Opp'n at 23. First, Plaintiffs have refused to respond to discovery on this issue. Second, discovery responses generally may be amended without leave of court. Indeed, Defendants already asked Plaintiffs to explain their factual and legal bases for aggregating projects and were told to await expert reports. *See, e.g.,* Plaintiffs' Response to Interrogatory No. 2, Attached as Exhibit A (claiming "work product" protection and refusing to respond as "premature" because "Plaintiffs are not obligated to disclose such expert testimony until April 4, 2014.").[7] Waiting until expert reports is not a workable solution where Defendants bear the burden of presenting some expert reports first (such as on the routine maintenance issue), not to mention the overall burden of defending against unknown claims. *See Campana v. Eller*, 755 F.2d 212, 215 (1st Cir. 1985) ("[I]t of course is axiomatic that a defendant is entitled to know the nature and extent of the claim being made against him.").

Because the Amended Complaint fails to give Defendants notice of the claims being brought against them, it must be dismissed. At the very least, the

---

[7] The scope of the alleged claims cannot be subject to the work product doctrine as Defendants "are entitled to know the factual basis for the claims which have been brought against them." *Roberts v. Heim*, 130 F.R.D. 424, 426 (N.D. Cal. 1989).

Plaintiffs should be restricted to pursuing the claims as pled – *i.e.*, nine alleged modifications – and should be required to seek leave to file an amended complaint if they wish to make claims regarding the projects individually, to aggregate projects in some other way, or to add new projects to the case.

## II.     CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss the Amended Complaint.

Dated this 22nd day of November, 2013.

/s/ William W. Mercer
William W. Mercer

**COUNSEL FOR PPL MONTANA, LLC, PUGET SOUND ENERGY AND PORTLAND GENERAL ELECTRIC COMPANY**


/s/ Stephen R. Brown
Stephen R. Brown

**COUNSEL FOR AVISTA CORPORATION AND PACIFICORP**


/s/ Stephen D. Bell
Stephen D. Bell

**COUNSEL FOR NORTHWESTERN CORPORATION**


/s/ Joshua B. Frank
Joshua B. Frank (admitted *pro hac vice*)

**COUNSEL FOR DEFENDANTS**

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this Brief complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch. The total word count is 3,249 excluding caption, certificate of compliance and signature block. The undersigned relies on the word count of the word processing system used to prepare this document.

/s/ William W. Mercer

William W. Mercer